**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ | ) | |
| | ) | |
| | ) | |
| **IN RE APPLE REITs LITIGATION** | ) | **No. 11-cv-02919-KAM-JO** |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**THE APPLE REITS MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

Elizabeth F. Edwards
McGUIREWOODS LLP
One James Center
901 East Cary St.
Richmond, VA 23219-4030
Tel.: (804) 775-4390
eedwards@mcguirewoods.com

Charles Wm. McIntyre
McGUIREWOODS LLP
Washington Square
2001 K St. N.W. Suite 400
Washington, D.C. 20006-1040
Tel.: (202) 857-1742
cmcintyre@mcguirewoods.com

Marshall Beil
McGUIREWOODS LLP
1345 Avenue of the Americas, 7th Floor
New York, NY 10105-0106
Tel.: (212) 548-2100
mbeil@mcguirewoods.com

*Attorneys for Defendants Apple REIT Six,*
*Inc., Apple REIT Seven, Inc.,  Apple REIT*
*Eight, Inc., Apple REIT Nine, Inc., and*
*Apple REIT Ten, Inc.*

April 18, 2012

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ......................................................................................................... 6

I.     PLAINTIFFS FAIL TO STATE ANY CLAIM UNDER SECTIONS 11
OR 12 OF THE 1933 ACT................................................................ 6

      A.    The Complaint Fails to Allege Any Actionable Material
Misrepresentation or Omission............................................... 7

          1.    The Offering Documents fully disclosed the Apple REITs'
investment objectives, and claims that those objectives
were not met are inactionable as a matter of law ........................... 7

          2.    The Offering Documents fully disclosed the actual payment
of distributions from sources other than operating income ............ 9

          3.    Plaintiffs' allegations concerning price or value of the
Apple REIT shares fail to state a claim ....................................... 12

          4.    Statements concerning the past performance of earlier
Apple REITs were accurate and accompanied by sufficient
cautionary language..................................................................... 14

          5.    Plaintiffs' remaining allegations amount to claims of
corporate mismanagement which are not actionable under
the federal securities laws............................................................ 16

      B.    The Complaint Demonstrates that Plaintiffs Suffered No
Cognizable Loss ................................................................... 17

      C.    The Complaint Establishes the Affirmative Defense of the Absence
of Loss Causation ................................................................. 18

II.    THE COMMON LAW CLAIMS ARE DEFECTIVE AND SUBJECT TO
AFFIRMATIVE DEFENSES ....................................................... 20

      A.    Count Seven Does Not Sufficiently Allege that the Apple REITs
Aided and Abetted DLA's Breach of Fiduciary Duties to Its
Customers ............................................................................ 20

      B.    The Unjust Enrichment Claim Is Barred As a Matter of Law................. 21

      C.    Plaintiffs Fail to State a Claim for Negligence...................................... 22

          1.    The Apple REITs Cannot Be Vicariously Liable for Any
Statements by DLA Which Contradict the Offering
Documents .................................................................................. 22

          2.    The Economic Loss Rule bars Plaintiffs' negligence claims ....... 26

D.    Plaintiffs Lack Standing to Assert Common Law Claims Against
Apple REITs in which They Did Not Invest ........................................27

III.   PLAINTIFFS' STATE SECURITIES LAW CLAIMS ARE
INADEQUATE AS A MATTER OF LAW .......................................................27

A.    The State Securities Law Claims Against Apple REIT Ten Should
Be Dismissed Because Neither Plaintiff Berger Nor Plaintiff
Williams Invested in Apple REIT Ten .....................................................27

B.    The Complaint Fails to Allege Any Actionable Material
Misrepresentation ....................................................................................28

C.    Plaintiff Burger's CUSA § 36b-5 Claim Only Applies to
Investment Advisors. ................................................................................28

D.    Plaintiffs' Florida Securities Act Claim in Count 13 Fails Because
Plaintiff Has Not Alleged "Justifiable Reliance." ..................................29

IV.   PLAINTIFFS' SECTION 12(A)(2) CLAIMS AGAINST APPLE REIT
NINE, AND BREACH OF FIDUCIARY DUTY, AIDING AND
ABETTING A BREACH OF FIDUCIARY DUTY, AND STATE
SECURITIES LAW CLAIMS ARE TIME-BARRED ......................................30

A.    Plaintiffs' Section 12(a)(2) Claims Against Apple REIT Nine Are
Time-Barred for Failure to Sue Within One Year of Being Able to
Reasonably Discover the Facts Constituting the Violation .....................30

B.    Plaintiffs' Section 12(a)(2) Claims for Shares Purchased Before
June 17, 2008 Are Barred by the Statute of Repose ...............................32

C.    The Breach of Fiduciary Duty and State Securities Claims Have
Two-Year Statutes of Limitations and Also Are Time-Barred ...............33

CONCLUSION ................................................................................................................34

CERTIFICATE OF SERVICE ........................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Labaton, Sucharow & Rudoff, LLP*,
  2009 U.S. Dist. LEXIS 35085 (S.D.N.Y. Mar. 30, 2009)......................................24

*Amorosa v. AOL Time Warner, Inc.*,
  409 Fed. Appx. 412 (2d Cir. 2011) ......................................................................26

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ...........................................................................................8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................7

*Brainard v. Am. Skandia Life Assurance Corp.*,
  432 F.3d 655 (6th Cir. 2005) ................................................................................25

*Camden Asset Mgmt., L.P. v. Sunbeam Corp.*,
  2001 U.S. Dist. LEXIS 11022 (S.D. Fla. July 3, 2001) .......................................30

*Castlerock Mgmt. Ltd. v. Ultralife Batteries, Inc.*,
  114 F. Supp. 2d 316 (D.N.J. 2000)........................................................................12

*Charas v. Sand Tech. Sys. Int'l, Inc.*,
  1992 U.S. Dist. LEXIS 15227 (S.D.N.Y. Oct. 7, 1992)........................................17

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
  70 N.Y.2d 382, 516 N.E.2d 190 (N.Y. 1987)........................................................22

*Commercial Union Assurance Co. PLC v. Milken*,
  17 F.3d 608 (2d Cir. 1994) ...................................................................................17

*County of Suffolk v. Long Island Lighting Co.*,
  728 F.2d 52 (2d Cir. 1984) ...................................................................................26

*Diamond "S" Dev. Corp. v. Mercantile Bank*,
  989 So. 2d 696 (Fla. Dist. Ct. App. 2008).............................................................22

*Dodds v. CIGNA Sec., Inc.*,
  12 F.3d 346 (2d Cir. 1993) ...............................................................................31, 32

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
  66 F.3d 604 (3d Cir. 1995) ...................................................................................26

*E.F. Hutton & Co. v. Rousseff,*
    537 So.2d 978 (Fla. 1989) ...............................................................................29

*Epirus Capital Mgmt., LLC v. Citigroup, Inc.,*
    2010 U.S. Dist. LEXIS 42200 (S.D.N.Y. Apr. 28, 2010) ................................10, 19

*Fait v. Regions Fin. Corp,*
    655 F.3d 105 (2d Cir. 2011) ............................................................................8, 13

*Feinman v. Schulman Berlin & Davis,*
    677 F. Supp. 168 (S.D.N.Y. 1988) ........................................................................24

*Field v. Trump,*
    850 F.2d 938 (2d Cir. 1988) .................................................................................16

*First Union Brokerage v. Milos,*
    717 F. Supp. 1519 (S.D. Fla. 1989) ......................................................................29

*Gagne v. Vaccaro,*
    766 A.2d 416 (Conn. 2001) ..................................................................................22

*Greenburg v. Pro Shares Trust,*
    2011 N.J. Super. Unpub. LEXIS 1789 at *21 (N.J. Super Ct. App. Div. July 7, 2011). ........24

*Halperin v. eBanker USA.com, Inc.,*
    295 F.3d 352 (2d Cir. 2002) ................................................................................10

*Highland Capital Mgmt. LP v. Schneider,*
    607 F.3d 322 (2d Cir. 2010) ................................................................................23

*Hydro Investors, Inc. v. Trafalgar Power, Inc.,*
    227 F.3d 8 (2d Cir. 2000) ....................................................................................26

*IDT Corp. v. Morgan Stanley Dean Witter & Co.,*
    12 N.Y.3d 132, 907 N.E.2d 268 (2009) ...............................................................22

*In re Alliance N. Am. Gov't Income Trust, Inc. Sec. Litig,*
    1996 U.S. Dist. LEXIS 14209 (S.D.N.Y. Sept. 27, 1996) .......................................9

*In re Allied Capital Corp. Sec. Litig.,*
    2003 U.S. Dist. LEXIS, 6962 (S.D.N.Y. Apr. 21, 2003) ........................................14

*In re Barclays Bank PLD Sec. Litig.,*
    2011 WL 3158 (S.D.N.Y. Jan. 5, 2011) ................................................................13

*In re Bear Stearns Mortgage Pass-Through Certificates Litig.,*
    2012 WL 1076216 (S.D.N.Y. Mar. 30, 2012) .......................................................30

*In re Citigroup Auction Rate Sec. Litig.*,
    700 F. Supp. 2d 294 (S.D.N.Y. 2009) ................................................................. 14

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................... 17

*In re Daou Systems, Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ............................................................................. 17

*In re Direxion Shares ETF Trust*,
    2012 WL 259384 (S.D.N.Y. Jan. 27, 2012) ........................................................ 31

*In re Donna Karan Int'l Sec. Litig.*,
    1998 U.S. Dist. LEXIS 22435 (E.D.N.Y. Aug. 14, 1998) ......................... 8, 16, 17

*In re Duke Energy Corp. Sec. Litig.*,
    282 F. Supp. 2d 158 (S.D.N.Y. 2003) .................................................................. 16

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
    705 F. Supp. 2d 86 (D. Mass. 2010) .................................................................... 26

*In re Focus Media Holding Ltd. Litig.*,
    701 F. Supp. 2d 534 (S.D.N.Y. 2010) ................................................................... 6

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) .................................................................. 18

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) .................................................................. 18

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    704 F. Supp. 2d 378 (S.D.N.Y. 2010) ........................................................... 11, 14

*In re Metlife Demutualization Litig.*,
    624 F. Supp. 2d 232 (E.D.N.Y. 2009) .................................................................. 17

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010) .................................................................................. 6

*In re Revco Sec. Litig.*,
    2012 U.S. Dist. LEXIS 19915 (S.D.N.Y. Feb. 10, 2012) ..................................... 20

*In re Sahlen & Assoc., Sec. Litig.*,
    773 F. Supp. 342 (S.D. Fla. 1991) ....................................................................... 29

*In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*,
    774 F. Supp. 2d 584 (S.D.N.Y. 2011) .................................................................. 19

*In re Towers Fin. Corp. Noteholders Litig.*,
   1996 U.S. Dist. LEXIS 22674 (S.D.N.Y. May 30, 1996) ...................................... 25

*In re UBS Auction Rate Secs. Litig.*,
   2010 U.S. Dist. LEXIS 59024 (S.D.N.Y. June 10, 2010) ........................................ 11, 14, 24

*In re Van Wagoner Funds, Inc.*,
   382 F. Supp. 2d 1173 (N.D. Cal. 2004) .................................................................. 14

*Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*,
   891 So. 2d 532 (Fla. 2004) ....................................................................................... 26

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech.*,
   2011 U.S. Dist. LEXIS 26625 (D. Nev. Mar. 15, 2011) ....................................... 15

*Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.*,
   620 F.3d 137 (2d Cir. 2010) .................................................................................... 18

*Joffee v. Lehman Bros. Inc.*,
   209 F. App. 80 (2d Cir. 2006 .................................................................................. 12

*Jones v. Shooshan*,
   2012 U.S. Dist. LEXIS 26512 (E.D. Va. Feb. 29, 2012) ...................................... 33

*Kashner Davidson Secs. Corp. v. Desrosiers*,
   689 So. 2d 1106 (Fla. Dist. Ct. App. 2d Dist. 1997) ............................................ 29

*KNK Enters., Inc. v. Harriman Enters., Inc.*,
   33 A.D.3d 872 (N.Y. App. Div. 2006) .................................................................... 24

*Krause v. Forex Exch. Mkt., Inc.*,
   356 F. Supp. 2d 332 (S.D.N.Y. 2005) .................................................................... 20, 21

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) .................................................................................... 20

*Lobiondo v. O'Callaghan*,
   357 N.J.Super. 488, 815 A.2d 1013 (N.J.Super. Ct. App. Div. 2003) .................. 25

*Meaney v. Connecticut Hosp. Ass'n, Inc.*,
   735 A.2d 813 (Conn. 1999) ...................................................................................... 22

*N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Grp., PLC*,
   720 F. Supp. 2d 254 (S.D.N.Y. 2010) .................................................................... 10, 12

*NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   743 F. Supp. 2d 288 (S.D.N.Y. 2010) .................................................................... 18

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
   442 F.3d 101 (2d Cir. 2006) .................................................................... 22

*Ocean Commc'ns, Inc. v. Bubeck*,
   956 So.2d 1222 (Fla. Ct. App. 2007) ...................................................... 22

*ODP, LLC v. Shelterlogic, LLC*,
   2007 Conn. Super. LEXIS 3482 (Conn. Super. Ct. 2007) ...................... 26

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
   98 F.3d 2 (2d Cir. 1996) .......................................................................... 6

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998) ...................................................................... 18

*Pontiac Gen. Emp. Ret. Sys. v. MBIA, Inc.*,
   637 F.2d 169 (2d Cir. 2011) .................................................................... 30

*Randall v. Loftsgaarden*,
   478 U.S. 647 (1986) ................................................................................ 26

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) .................................................................... 15

*Rose v. ADT Sec. Svcs., Inc.*,
   989 So. 2d 1244 (Fla. App. 2008) ........................................................... 24

*Ryan v. Fed. Express Corp.*,
   78 F.3d 123 (3d Cir. 1996) ...................................................................... 21

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977) ........................................................................... 8, 16

*SEC v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996) .................................................................. 6

*Shaw v. Digital Equip. Corp.*,
   82 F.3d 1194 (1st Cir. 1996) ................................................................... 16

*Shinn v. Champion Mortg. Co.*,
   2010 U.S. Dist. LEXIS 9944 (D.N.J. Feb. 5, 2010) ............................... 21

*Smith v. CAN Fin. Corp.*,
   2003 U.S. Dist. LEXIS 28240 (W.D. Va. Nov. 28, 2003) ...................... 33

*Staehr v. Hartford Fin. Servs. Group, Inc.*,
   547 F.3d 406 (2d Cir. 2008) .................................................................... 31

*Tsereteli v. Residential Asset Securitization Trust 2006-A8,*
    692 F. Supp. 2d 387 (S.D.N.Y. 2010) ...................................................... 13

*Updike, Kelly & Spellacy, P.C. v. Beckett,*
    269 Conn. 613 (Conn. 2004) ................................................................. 25

*Van Orman v. Am. Ins. Co.,*
    680 F.2d 301 (3d Cir. 1982) ............................................................ 21, 22

*Va. Bankshares v. Sandberg,*
    501 U.S. 1083 (1991) ............................................................................ 8

*Villazon v. Prudential Health Care Plan, Inc.,*
    843 So.2d 842 (Fla. 2003) .................................................................... 25

## STATUTES

15 U.S.C. § 77k(a) ...................................................................................... 6

15 U.S.C. § 77l .......................................................................................... 6

15 U.S.C. § 77m ................................................................................... 30, 32

15 U.S.C. § 78u-4 ....................................................................................... 1

15 U.S.C. § 78u-4(b)(2) ............................................................................. 16

Conn. Gen. Stat. § 36b-5 ....................................................................... 28, 29

Conn. Gen. Stat. § 36b-29(f) ....................................................................... 33

Fla. Stat. § 95.11 ...................................................................................... 33

## OTHER AUTHORITIES

Fed. R. Evid. P. Rules 12(b)(6) ..................................................................... 1

Fed. R. Evid. P. Rule 8 ........................................................................... 1, 20

Fed. R. Evid. P. Rule 9(b)......................................................................... 1, 20

Fed. R. Evid. P. Rule 10b-5 ................................................................... 12, 29

Defendants Apple REIT Six, Inc., Apple REIT Seven, Inc., Apple REIT Eight, Inc., Apple REIT Nine, Inc., and Apple REIT Ten, Inc. (collectively, the "Apple REITs"), by counsel, respectfully submit this memorandum of law in support of their motion to dismiss the Consolidated Complaint (the "Complaint" or "Compl."), pursuant to Rules 12(b)(6), 9(b) and 8 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.  The Apple REITs also join and incorporate by reference the arguments made by the Apple REIT Individual and Affiliate Defendants and David Lerner Associates, Inc. and David Lerner, and will not repeat those arguments here.[1]

## PRELIMINARY STATEMENT

The five defendant real estate investment trusts ("REITs"), the Apple REITs, were formed from 2004 through 2010.  For each Apple REIT, initial investors purchased shares in a company that had no real estate assets at the time of their investment.  The investors' purchase money was pooled together and used by the REIT to invest in income-producing commercial real estate, primarily hotels. (Compl. ¶¶ 6, 71).  Each investor received one share or unit for each $11 invested.[2]  Because the REIT initially had no assets (and therefore no value), the Offering Documents[3] explained that the per unit price was "arbitrarily set."  The Offering Documents also repeatedly disclosed that the REIT shares would not be listed for trading on any exchange and

---

[1] The Memorandum of Law of the Apple REIT Directors, Officers and Affiliates in Support of Their Motion to Dismiss the Consolidated Complaint is incorporated herein by reference and referred to herein as "Apple REIT Indiv. Defs. Memo."  The DLA Defendants' Memorandum of Law in Support of Motion to Dismiss is incorporated herein by reference and referred to herein as "DLA Memo."  The Declaration of Kenneth I. Schacter filed in Support of the DLA Defendants' Motion to Dismiss is referred to herein as "Schacter Decl."

[2] The initial 5% of the units were sold for $10.50 per unit or share.

[3] "Offering Documents" are any documents the Apple REIT filed with the SEC and which are incorporated into the Complaint.  They include Prospectuses and Subscription Agreements (filed with the SEC as exhibits to prospectuses) filed in connection with Apple REITs Six, Seven, Eight, Nine and Ten, as well as certain 10-K and 10-Q filings.  (*See* Compl. ¶ 82 and Appendices A-E).

there was no secondary market for the shares, so they would be illiquid. As Plaintiffs acknowledge, "[i]nvestors in non-traded REITs generally expect to hold their shares for a five to seven year term." (Compl. ¶ 3). In addition, during the term of their investments, REIT shareholders generally receive regular distributions, and Plaintiffs admit that they have received regular distributions from the Apple REITs. (Compl. ¶ 8).

Each REIT offering was registered with the Securities and Exchange Commission ("SEC") and sold pursuant to a prospectus[4] through managing-dealer and "best efforts" underwriter, David Lerner Associates, Inc. ("DLA"). (Comp. ¶¶ 5, 21). Each investor executed a subscription agreement acknowledging receipt of the Prospectus and confirming the investor's understanding that their Apple REIT shares would be governed by the terms of the Prospectus.[5] Each Prospectus contained a detailed description of the investment and its risks. The cover of each Prospectus highlighted for the investor:

> **Consider carefully the Risk Factors beginning on Page __ of this prospectus. This offering involves material risks and investment considerations including:**
>
> - There will be no public trading market for our Units for an indefinite period of time, if ever. Therefore, the Units will be highly illiquid and very difficult to trade.
> . . .
> - We own no properties at this time and we have not identified any properties to purchase. This is a "blind pool" offering and, therefore, investors will have to rely upon the ability of Glade M. Knight and his affiliates to acquire a suitable portfolio of properties.
> - We may be unable to generate sufficient cash for distributions. If our properties do not generate sufficient revenue to meet operating expenses, our cash flow and our ability to make distributions to shareholders may be adversely affected. Our distributions to our shareholders may not be sourced from cash generated from operations but from offering proceeds

---

[4] Copies of the Prospectuses for Apple REITs Six through Ten are attached as Exhibits A – E to the Declaration of Elizabeth F. Edwards filed herewith. The declaration is referred to herein as "Edwards Decl."

[5] The Subscription Agreement for each Apple REIT is attached to the Prospectus for that REIT as Appendix A. *See* Edwards Decl. Exhs. A-E at Appx. A.

> or the proceeds of indebtedness and this will decrease our distributions in the future.  There is no limit on the amount of distributions that can be funded from offering or financing proceeds.
> - We have no restriction on changes in our investment and financing policies. . . .

(Edwards Decl. Exh. A – E at 1, *emphasis in originals*).

Investors in the Apple REITs received precisely the investments that were disclosed in the respective prospectuses – shares of long-term, illiquid investments in a pool of primarily hotel properties.

All Apple REIT shareholders received regular distributions since their initial investments, which for all Plaintiffs were made several years before the Complaint was filed. (Compl. ¶¶ 15-18).  By the spring of 2011, the Apple REITs were in various stages of their life cycles, but none had yet reached a liquidity event.  Then, on May 27, 2011, the Financial Industry Regulatory Authority ("FINRA") filed a complaint against DLA, alleging that DLA violated various FINRA rules in connection with its marketing of Apple REIT shares.[6]  Plaintiffs quickly filed suits against not only DLA, but also against the Apple REITs, their directors and senior officers and several affiliated companies that provide real estate and management services.  These suits have now been consolidated into this action, and Plaintiffs have filed a single Consolidated Complaint.

Plaintiffs assert multiple federal securities law, common law, and state securities claims.  Although the Complaint is long, and Plaintiffs' legal theories many, a review of the claims, the various defendants, and the law, makes one thing clear:  Plaintiffs do not and cannot state any viable cause of action, and their claims should be dismissed.

---

[6] FINRA has no jurisdiction over the Apple REITs or the Apple REIT Individual Defendants or Affiliates.  Plaintiffs do not contend otherwise.

First and foremost, not one Plaintiff has suffered any loss.  Plaintiffs continue to hold their illiquid shares in the Apple REITs.  The "blind pool" their purchases created has been invested primarily in hotel properties, Plaintiffs have received regular distributions, and no liquidity event has yet occurred.  Plaintiffs' claim of "loss in value" is nothing but smoke and mirrors:  shares in non-traded REITs, like the Apple REITs, are not traded on any exchange. There can be no loss in the shares' market value because the value is not set by any market.  An exchange exposes shares to market demand, and this demand – or lack thereof – dictates the price or "value" of the shares.  *Non-traded* shares, however, like the Apple REITs, are not subject to shifts in demand. Their value comes not from a market-driven share price, but from the value of the underlying real property assets.

Second, and equally significant, Plaintiffs cannot point to a single actionable misstatement or omission in the Offering Documents.  Plaintiffs attempt to base their securities law claims on disclosures about the Apple REITs' investment objectives to "maximize shareholder value" and the "arbitrary" price of the Apple REIT shares, as well as about the source of the distributions paid to Plaintiffs and the past performance of earlier Apple REITs.  As discussed in Section I, the disclosures about these subjects were complete and accurate.  To the extent Plaintiffs attempt to claim that the disclosures about the investment objectives to maximize shareholder value misstated a true objective of losing investor money, such allegations are simply incredible and implausible and do not support Plaintiffs' claims.  The Offering Documents are replete with statements about the arbitrary share price and source of distributions (both prospective and historic).  Indeed, most of Plaintiffs' allegations boil down to nothing more than claims of corporate mismanagement or forward-looking statements, none of which are actionable under the Federal Securities Laws.

But even if Plaintiffs could state a claim based upon some misstatement or omission in the Offering Documents, such a claim would still fail.  Because there is no market for the Apple REIT shares to react to any alleged misrepresentations, there can be no connection between a misrepresentation and a decrease in value of the shares.  Accordingly, the lack of loss causation (or negative causation) is established from the face of Plaintiffs' Complaint and compels dismissal.

Plaintiffs' common law claims also fail.  Plaintiffs claim that the Apple REITs aided and abetted DLA's purported breach of fiduciary duty.  For the reasons set forth in the DLA Memo, Plaintiffs' breach of fiduciary duty claim against DLA is not actionable, and accordingly, there was no actionable "breach" to aid and abet.  In addition, Plaintiffs do not allege that any Apple REIT had "actual knowledge" of a breach of fiduciary duty by DLA or took any particular action to actively participate in any such breach.  Plaintiffs' unjust enrichment claims cannot proceed because there can be no such claim based on an implied contract theory when an express contract (here, the Subscription Agreements) governs the relationship of the parties.  Furthermore, Plaintiffs do not allege that any Apple REIT was "enriched" or received any "unjust" benefit from Plaintiffs.  Finally, Plaintiffs' negligence claim is barred by the economic loss rule and, in addition, is inactionable since the Apple REITs cannot be vicariously liable for any statements by DLA which contradict the Offering Documents.

This action is nothing more than a knee-jerk reaction to the FINRA Complaint against DLA.  However, the FINRA allegations of rules violations against DLA do not give rise to civil liability on the part of the Apple REITs.  This suit is precisely the type of action the PSLRA was enacted to deter.  For the reasons stated in this Memorandum, as well as in the Memoranda filed

by the Apple REIT Directors, Officers and Affiliates and by DLA, this action should be dismissed.

## ARGUMENT

### I.   PLAINTIFFS FAIL TO STATE ANY CLAIM UNDER SECTIONS 11 OR 12 OF THE 1933 ACT.

The Complaint purports to assert claims under Section 11 of the Securities Act of 1933 ("1933 Act") (Count 1) against Apple REIT Ten and under Section 12(a)(2) of the 1933 Act (Count 2) against Apple REITs Nine and Ten.  Section 11 imposes liability on issuers and signers of a registration statement and on underwriters, among others, if the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."[7]  15 U.S.C. § 77k(a); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010).  To state a claim, Plaintiffs "must plead a misstatement or omission of a material fact" by the Defendants.  *In re Focus Media Holding Ltd. Litig.*, 701 F. Supp. 2d 534, 539 (S.D.N.Y. 2010).  The test for materiality is "whether defendants' representations, taken together and in context, would have misled a reasonable investor."  *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996).  Section 12(a)(2) imposes liability under similar circumstances on issuers or sellers of securities by means of a prospectus.  15 U.S.C. § 77*l*(a)(2); *see also In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 359.

---

[7] To state a claim under Section 11, the plaintiff must allege that: "(1) she purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3) the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'"  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010) (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996)).

Plaintiffs allege violations of Sections 11 and 12(a)(2) in connection with alleged misstatements and omissions in the Apple REIT Nine and Ten Offering Documents. (Compl. ¶¶ 201-19). In their Complaint, Plaintiffs point to four categories of alleged "false or misleading statements." In paragraph 10, Plaintiffs allege that they "have determined that Defendants misrepresented the investment objectives of the Apple REITs, the dividend payment policy of the Apple REITs, and the value of their Apple REIT investments." (*Id.* ¶ 10). Plaintiffs' Appendix F includes the three categories from paragraph 10 and adds "statements about prior REITs" as a fourth category of purported misstatements. (*Id.* Appx. F at 104).

None of these statements is actionable. The statements Plaintiffs identify concern information that was fully and completely disclosed or are not otherwise actionable as a matter of law because they are merely forward-looking statements or are allegations of corporate mismanagement bootstrapped onto federal securities law claims. Accordingly, Plaintiffs' Section 11 and 12(a)(2) claims against Apple REITs Nine and Ten should be dismissed.

**A. The Complaint Fails to Allege Any Actionable Material Misrepresentation or Omission.**

**1. The Offering Documents fully disclosed the Apple REITs' investment objectives, and claims that those objectives were not met are inactionable as a matter of law.**

The stated objectives of Apple REIT Nine and Apple REIT Ten were to "maximize shareholder value by maintaining long-term growth in cash distributions to our shareholders." (Compl. ¶ 6). Plaintiffs allege that the Offering Documents "misrepresented the investment objectives of the Apple REITs." (Compl. ¶ 10; Appx. F). Plaintiffs' theory is that the Apple REITs "investment objective" was not to "maximize shareholder value" but rather was "to acquire properties at prices that ensured Apple REIT investors would lose a substantial portion of their principal" and to "deplete capital." (Compl. ¶¶10, 12). Plaintiffs' dubious theory is that

7

each Apple REITs' investment objective from the outset was to reduce, rather than maximize

shareholder value. (*Id.*)  Such a far-fetched theory is implausible on its face and cannot sustain

Plaintiffs' claims.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must

allege "enough facts to state a claim to relief that is plausible on its face."); *see also Ashcroft v.

Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Moreover, the Apple REITs' statements of investment objective were not objective

statements of fact, but rather were subjective statements about their intentions.  "[W]hen a

plaintiff asserts a claim under section 11 or 12 based upon a belief or opinion alleged to have

been communicated by a defendant, liability lies only to the extent that the statement was both

objectively false and disbelieved by the defendant at the time it was expressed."  *Fait v. Regions

Fin. Corp,* 655 F.3d 105, 110 (2d Cir. 2011) (*citing Va. Bankshares v. Sandberg*, 501 U.S. 1083,

1095-96 (1991)).  The Complaint does not plausibly claim that the statements about investment

objectives were either objectively false or disbelieved when the statements were made.  Rather,

Plaintiffs only plausible allegation is that the Apple REITs failed to follow their stated

objectives.  (Compl. ¶ 10).  This is a classic allegation of corporate mismanagement, which is not

actionable under the 1933 Act as a matter of law.  *See In re Donna Karan Int'l Sec. Litig.*, No.

97–CV–2011, 1998 U.S. Dist. LEXIS 22435, at *25 (E.D.N.Y. Aug. 14, 1998) ("[A]llegations

constituting nothing more than assertions of general mismanagement, or nondisclosures of

mismanagement, cannot support claims under . . . §§ 11 and 12 of the Securities Act")

(collecting cases applying *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 473-79 (1977) to Section

11 and Section 12 securities claims).

Obviously aware of the fatal flaws in their allegations, Plaintiffs attempt to recharacterize

their investment-objective allegations as other than corporate mismanagement when they allege

that "[t]he failure of the Apple REITs to follow their stated investment objectives was not the result of mismanagement or changes in investment objectives . . . [i]nstead, at all relevant times the Apple REITs operated in a manner inconsistent with their stated investment objectives." (Compl. ¶ 10). This characterization does not work. At the time the investment objectives were disclosed, the Apple REITs had raised no capital and were not yet in a position to invest. Therefore, the stated objective could only be a statement of future intention, and the alleged failure later to invest in accordance with the objective is a classic allegation of mismanagement.

Additionally, the alleged misstatements about the investment objectives are plainly forward-looking. Courts have long recognized that the "investment objective is not the type of statement that a reasonable investor would consider important in deciding whether or not to invest." *In re Alliance N. Am. Gov't Income Trust, Inc. Sec. Litig*, No. 95-CV-330, 1996 U.S. Dist. LEXIS 14209, at *12 (S.D.N.Y. Sept. 27, 1996); *id.* ("The investment objective announces the goal of the Fund, rather than a promise to investors [and is] not actionable under the securities laws."). Thus, the alleged misstatements about investment objectives are not actionable under Sections 11 or 12(a)(2) of the 1933 Act.

### 2. The Offering Documents fully disclosed the actual payment of distributions from sources other than operating income.

Plaintiffs contend that the Apple REITs "misrepresented . . . the dividend payment policy" by failing to disclose the likelihood that the Apple REITs would not pay distributions out of operating income, but rather through borrowing or return of investor capital. (Compl. ¶ 10; *id.,* Appx. F at 99-103). But that is precisely what the Apple REITs disclosed. For example, the prospectuses disclose that dividend distributions may be sourced by debt and a return of investor capital, that doing so will negatively impact investor returns, and that the Apple REITs may, due to economic conditions affecting the hotel industry, be unable to make distributions at all.

9

(Edwards Decl. Exh. D at 28-29, Exh. E at 16, 26; *see also* Schacter Decl. Exh. G).  Specifically, the prospectuses declare that "***Our distributions to our shareholders may not be sourced from our cash generated from operations but from offering proceeds or indebtedness and this will decrease our distributions in the future; furthermore, we cannot guarantee that investors will receive any specific return on their investment***."  (Edwards Decl. Exh. E at 16 (emphasis in original); *see also id.,* Exh. D at 28).[8]  The Prospectuses also specifically disclosed that distributions from prior REITs were, in fact, made from sources other than operations, such as debt or offering proceeds. (*See, e.g.,* Edwards Decl. Exh. D at Table III (Operating Results of Prior Programs)).

These repeated disclosures eviscerate Plaintiffs' claim that the potential sources of the Apple REIT distributions were not fully disclosed.  *See Halperin v. eBanker USA.com, Inc*., 295 F.3d 352, 360 (2d Cir. 2002) (offering documents that repeatedly disclosed risks that were allegedly concealed "not only bespeak caution, they shout it from the rooftops"); *N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Grp., PLC*, 720 F. Supp. 2d 254, 271 (S.D.N.Y. 2010) (finding representations not misleading where "the Offering Documents 'warn investors of exactly the risk the plaintiffs claim [were] not disclosed'"); *Epirus Capital Mgmt., LLC v. Citigroup, Inc.*, No. 09-cv-2594 (SHS), 2010 U.S. Dist. LEXIS 42200, at *16 (S.D.N.Y. Apr. 28, 2010) ("[T]his allegation fails to state a claim because such facts were disclosed explicitly to plaintiffs in the Offering Circular provided to plaintiffs prior to their investment.").

Indeed, Plaintiffs themselves acknowledge the explicit disclosures in the Offering Documents explaining that distributions may be paid out from sources other than operating income.  (*See* Compl. ¶ 107).  Plaintiffs attempt to avoid the effect of these disclosures by

---

[8] Similar disclosure language appears in the Prospectuses for Apple REIT Six (Edwards Decl. Exh. A at 44), Apple REIT Seven (*id.,* Exh. B at 24) and Apple REIT Eight (*id.,* Exh. C at 24).

claiming they were "misled" because the warnings only referred to an uncertain possibility that distributions would be paid from sources other than income. Plaintiffs complain that the Apple REITs' disclosures only stated that distributions "may" – rather than "would" – be sourced by a return of capital.

Plaintiffs' claim is wholly illogical. How could the Apple REITs know, with certainty, at the time the prospectuses were issued, the exact nature of their income stream for years into the future when the properties had not even been identified or purchased?

Also, courts have repeatedly held that Plaintiffs' "may/would" theory is insupportable. *See In re UBS Auction Rate Secs. Litig.*, No. 08-cv-2967, 2010 U.S. Dist. LEXIS 59024, at *55-56 (S.D.N.Y. June 10, 2010) (where the defendants disclosed in offering documents that they "may" enter support bids for auction rate securities, allegations that defendant in fact placed support bids in "every" auction were insufficient to establish securities fraud under Section 10(b) of the 1934 Act); *see also In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 391-394 (S.D.N.Y. 2010).

The Apple REITs not only disclosed the possibility that future distributions would be paid from sources other than income, they also disclosed the full extent to which this had happened historically. For example, the Form 10-K and 10-Q filings for Apple REITs Nine and Ten specifically disclosed that distributions were paid from sources other than operating income, the amount and source of those distributions, and the effect of such distributions on each Apple REIT's ability to acquire investment properties. Among the scores of disclosures regarding the source of distributions,[9] the Apple REITs informed investors that:

---

[9] The Apple REIT Offering Documents disclosed over 120 times the source of investor distributions. (*See* Schacter Decl. Exh. G at 8-56).

- "Distributions since the initial capitalization through September 30, 2008 totaled approximately $5.7 million . . . [and] cash generated from operations was approximately $1.3 million. . . . *[T]he difference between distributions paid and cash generated from operations has been funded from proceeds from the offering of Units . . . ."* (Edwards Decl. Exh. F at 19) (emphasis added);

- Distributions during the first six months of 2011 totaled approximately $7.6 million . . . [and] cash used in operations was approximately $3.5 million . . . [and] *distributions paid [during the first quarter of 2011] have been funded from proceeds from the on-going best-efforts offering of Units . . . ."* (*Id.* Exh. G at 22) (emphasis added).

Plaintiffs can make no credible argument that the Apple REITs concealed the frequency that distributions were paid from sources other than income. *See Joffee v. Lehman Bros. Inc.*, 209 F. App. 80, 81 (2d Cir. 2006) (affirming dismissal of a Rule 10b-5 claim when "all of the facts which plaintiffs allege were concealed were, in fact, revealed in various public filings"); *N.J. Carpenters Vacation Fund*, 720 F. Supp. 2d at 271 (dismissing §§ 11 and 12 claims because representations were not misleading where "the Offering Documents warn investors of exactly the risk the plaintiffs claim were not disclosed"); *Castlerock Mgmt. Ltd. v. Ultralife Batteries, Inc.*, 114 F. Supp. 2d 316, 325 (D.N.J. 2000) (dismissing §§ 11 and 12 claims when "the exact production problems that form the foundation of Plaintiffs' Second Amended Complaint were the subject of explicit cautionary language in the Prospectus.").  In fact, the Apple REITs disclosed this information clearly and frequently.  Plaintiffs' claims based on alleged misrepresentations about the dividend payment policy should be dismissed.

### 3. Plaintiffs' allegations concerning price or value of the Apple REIT shares fail to state a claim.

Plaintiffs claim that the Apple REITs misrepresented information concerning the price or value of Apple REIT shares.  According to Plaintiffs, the statement in the Offering Documents that "[t]he per-Unit offering prices have been established arbitrarily by us and may not reflect the true value of the Units" is misleading because "[T]he prices were not established arbitrarily."

(Compl., Appx. F at 103).  However, Plaintiffs acknowledge that the Apple REITs were "structured as 'blind pool' offerings, in which Plaintiffs committed their money before knowing what properties the REITs would purchase with the net offering proceeds."  (Compl. ¶ 6). Because the REITs had no assets or investments at the time the price was set, the price could only be arbitrary.

Of equal importance, statements of value are not matters of fact and a complaint must plausibly allege subjective falsity to state a claim.  *See* Section I(A)(1), *supra; Fait,* 655 F.3d at 110; *In re Barclays Bank PLD Sec. Litig.,* 2011 WL 3158 *8 (S.D.N.Y. Jan. 5, 2011); *Tsereteli v. Residential Asset Securitization Trust 2006-A8,* 692 F. Supp. 2d 387, 393 (S.D.N.Y. 2010). Plaintiffs do not allege that the Apple REITs did not believe that the $11 per share price was "arbitrary" and "may not reflect the true value of the Units."

Plaintiffs further assert that the prices were "kept at a consistent $11 for all of the REITs for marketing purposes, to compete with other non-traded REITs, and to maintain the illusion that the value of the shares was $11."  (Compl., Appx. F at 103).  Not only is this allegation implausible in light of the disclosures that the price "***may not reflect the true value of the Units,***" and "***investors may be paying more for a Unit than the Unit is actually worth,***"[10] but is also based solely on speculation.  Plaintiffs' chart comparing the price of the Apple REITs and certain other non-traded REITs shows nothing other than that certain non-traded REITs hand-picked by Plaintiffs are similarly priced to the Apple REITs.  (Compl. ¶ 113).  In addition, the prospectuses plainly disclose that "We will not attempt to calculate our net asset value on a regular basis.  Accordingly, investors will not have reliable information on the net fair value of the assets owned by us."  (Edwards Decl. Exh. E at 17; *id.,* Exh. D at 19; *see also* Compl., Appx.

_____

[10] (*See* Edwards Decl. Exh. E at 26; *id.* Exh. D at 28 (emphases in originals); *see also* Compl. ¶ 109, *and* Schacter Decl. G at 57-60).

13

F *and* Schecter Decl. Exh. G).  Moreover, the 10-Ks for the Apple REITs disclose in detail the valuation policies of the Apple REITs, and further state that such valuations were based on the $11 per-share offering price of the units.[11]  Disclosure of valuation policies such as the Apple REITs defeats any claim that such policies were misleading.  *See In re Van Wagoner Funds, Inc.*, 382 F. Supp. 2d 1173, 1182 (N.D. Cal. 2004) ("Because [defendant's] valuation policies were public . . . the [plaintiffs] have not alleged that [defendant] concealed any facts from investors"); *see also In re Allied Capital Corp. Sec. Litig.,* No. 02 Civ. 3812, 2003 U.S. Dist. LEXIS, 6962 at *14-15 (S.D.N.Y. Apr. 21, 2003).

Finally, Plaintiffs also challenge the warning in the Offering Documents that Apple REIT shareholders' "original investment . . . *might*" decline if the Units became publicly listed as misleading because, in Plaintiffs' words, "[i]t was a *certainty* that the value of the shares would decline." (*See* Compl., Appx. F at 103-04 (emphasis added), *and* Compl. ¶ 114).  Plaintiffs' attempt to create a misrepresentation out of the word "might" is legally untenable.  *UBS*, 2010 U.S. Dist. LEXIS 59024 at *58-59; *Merrill Lynch*, 704 F. Supp. 2d at 392-93; *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 306-07 (S.D.N.Y. 2009).  In any event, Plaintiffs do not allege that the shares have ever become publicly traded or that the price has declined.  Nor could they, since the shares "are not registered for trading on any exchange." (Compl. ¶ 3).

For these reasons, Plaintiffs' claims based on alleged misrepresentations of the Apple REIT shares' price or value should be dismissed.

### 4.   Statements concerning the past performance of earlier Apple REITs were accurate and accompanied by sufficient cautionary language.

Plaintiffs do not challenge the accuracy of the information presented in the Offering Documents for Apple REITs Nine and Ten concerning the past performance of the earlier Apple

---

[11] *See, e.g.,* Edwards Decl. Exh. J at 13, Exh. K at 13; *see also* Schacter Decl. Exh. G at 57-60.

REITs.  They contend that the information about the prior Apple REITs should have disclosed "that the earlier REITs have never been able to pay distributions from operating income and are instead relying on borrowing and the return of capital."  (Compl., Appx. F at 104).  In fact, the sources of the earlier Apple REITs' distributions were regularly disclosed in their 10-K and 10-Q filings.  (*See* Schacter Decl. Exh. G at 8-56).

Plaintiffs also take issue with the accompanying warning that the statements of past performance "should not be considered to be indicative of our capitalizations or operations" and are "not necessarily indicative of our future results."  (Compl., Appx. F at 105).  Plaintiffs complain that the statements were "not meaningful or prominent compared to the statements about the prior REITs."  (*Id.*)  Plaintiffs overlook the prominent statements in the Prospectuses—the first listed risk factor—"*We have no operating history and we can give no assurance of success.*" (Edwards Decl. Exh. E at 15; Edwards Decl. Exh. D at 17(emphases in originals); *see also* Schacter Decl. Exh. G)).

Moreover, courts have recognized that warnings nearly identical to those in the Apple REIT Offering Documents immunize a defendant from liability in connection with accurate statements of past performance.  *See, e.g.*, *Rombach v. Chang*, 355 F.3d 164, 175-76 (2d Cir. 2004) (holding that warnings in a registration statement, including that past performance was not necessarily indicative of future results, "contained sufficient cautionary language to bespeak caution and trigger the safe harbor provision of the PSLRA," even if such warnings were "formulaic"); *see also Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech.*, No. 3:09-CV-419-ECR-RAM, 2011 U.S. Dist. LEXIS 26625, at *12 n.1. (D. Nev. Mar. 15, 2011) (statements accompanied by cautionary language warning that "historical results are not necessarily indicative of future prospects" and that "reported results should not be considered an

indication of future performance" were "protected by the PSLRA's safe harbor for forward-looking statements").

Because the Apple REITs' disclosures of the performance of earlier REITs was accurate *and* accompanied by warnings bringing them within the PSLRA's safe-harbor provisions, they are inactionable as a matter of law, and Plaintiffs' claims arising from these disclosures should be dismissed.

> **5.      Plaintiffs' remaining allegations amount to claims of corporate mismanagement which are not actionable under the federal securities laws.**

Plaintiffs' allegations are replete with complaints about the hotels purchased by the Apple REITs, including that they did not generate sufficient income, their cap rates were too low and the purchase prices were too high.  (Compl. ¶¶ 120-140, 150-160, 165-66).  These allegations are merely claims of mismanagement, which are not actionable under the federal securities laws.

Under *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462 (1977), and its progeny, claims of mismanagement cannot be bootstrapped into federal securities law claims.  In *Santa Fe*, the Supreme Court held that the antifraud provisions of the federal securities laws do not "regulate transactions which constitute no more than internal corporate mismanagement." *Id*. at 479.  The holding and reasoning of *Santa Fe* apply equally to claims arising under Sections 11 and 12(a)(2). *See In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158, 160 (S.D.N.Y. 2003).

Courts have repeatedly made clear that claims of mismanagement or breach of fiduciary duty are not actionable under the federal securities laws. *See, e.g., Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1206 (1st Cir. 1996) (superseded on other grounds by 15 U.S.C. § 78u-4(b)(2)) ("To the extent that the [plaintiffs' Section 11] claim comprises allegations of mismanagement, it is not cognizable under the securities laws."); *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp.

2d at 160 ("allegations of 'garden-variety mismanagement . . .' do not state a claim under federal securities laws") (quoting *Field v. Trump*, 850 F.2d 938, 948 (2d Cir. 1988)); *Donna Karan*, 1998 U.S. Dist. LEXIS 22435 at *25 and n.8.  In fact, claims of mismanagement are common law breach of fiduciary duty claims against the wrongdoing officers or directors.  Such allegations do not state a violation of federal securities laws.  *See*, *id.*; *see also Charas v. Sand Tech. Sys. Int'l, Inc.*, No. 90 Civ. 5638 (JFK), 1992 U.S. Dist. LEXIS 15227, at *20 (S.D.N.Y. Oct. 7, 1992) (holding that "allegations of breaches of fiduciary duty and corporate mismanagement do not state federal claims under section 10(b) or section 11" and dismissing complaint).  To the extent that the claims in this action are based on allegations of corporate mismanagement, they should be dismissed.

### B.    The Complaint Demonstrates that Plaintiffs Suffered No Cognizable Loss.

Significantly, Plaintiffs' allegations demonstrate that they have not suffered any loss – a fact that is fatal to their claims.  Plaintiffs allege that they purchased Apple REIT shares at a "fixed price" of $11 per share, "received regular distributions on their investments," and continue to hold their shares.  (Compl. ¶¶ 8, 15-19).  Plaintiffs concede that non-traded REITs such as the Apple REITs are not publicly traded and "investors depend on the sale of properties or listing [the shares for trading on an exchange] for the return of their principal" – none of which has yet occurred.  (Compl. ¶ 3).  Plaintiffs nowhere allege that they have lost any money or allege any way in which they have suffered any loss.

In order to proceed with the lawsuit, Plaintiffs must "show that they 'suffered compensable damages.'"  *In re Metlife Demutualization Litig.*, 624 F. Supp. 2d 232, 271 (E.D.N.Y. 2009) (quoting *Commercial Union Assurance Co. PLC v. Milken*, 17 F.3d 608, 615 (2d Cir. 1994)); *see also In re Countrywide Fin. Corp. Sec. Litig.,* 588 F. Supp. 2d 1132, 1183 (C.D. Cal. 2008) (noting that loss causation was not an element, but adding that "[s]ome

cognizable loss, however, must be alleged") (citing *In re Daou Systems, Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005)).  Because Plaintiffs have not have suffered *any* loss, their Section 11 and 12 claims should be dismissed.  *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 347 (S.D.N.Y. 2003) ("If a plaintiff has no conceivable damages under Section 11, she cannot state a claim upon which relief can be granted and her Section 11 claims must be dismissed.").

> **C.   The Complaint Establishes the Affirmative Defense of the Absence of Loss Causation.**

Although loss causation is not an element of a Section 11 or 12 claim, the absence of loss causation is an affirmative defense that, like other affirmative defenses, can be adjudicated on a motion to dismiss.  *See, e.g., Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (if a defense is apparent on the face of the complaint, the affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6)).

While Sections 11 and 12 of the 1933 Act do not require the plaintiff to plead loss causation, a defendant can defeat a 1933 Act claim on a motion to dismiss if he can show that the alleged "loss" sustained by the plaintiff was not caused by the alleged misrepresentations or omissions.  *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) (affirming dismissal of Section 11 and 12 securities claims because it was apparent on the face of plaintiffs' complaint that the alleged decline in stock price and plaintiffs' resulting losses could not be attributed to defendants' alleged failure to disclose); *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 743 F. Supp. 2d 288, 291 (S.D.N.Y. 2010) ("Although [plaintiff] is not required to plead damages under Section 11, it fails to state a claim if the allegations of the complaint do not support any conceivable statutory damages."); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 254 (S.D.N.Y. 2003).  Because it is plain

from Plaintiffs' Complaint that no identified statement by any Apple REIT Defendant could have or did cause any investor any losses, the federal securities claims should be dismissed.

In order for an alleged misstatement to be actionable, "the disclosure of the facts hidden by the alleged material misstatement . . . must negatively affect the value of the security." *In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 590 (S.D.N.Y. 2011). "[W]here the [fund's net asset value, a statutorily-defined formula that depends on the value of underlying securities] does not react to . . . any misstatements in the Fund's prospectus, no connection between the alleged material misstatement and a diminution in the security's value has been or could be alleged," and the Section 11 and 12 claims must be dismissed. *Id.* at 596. In this case, Plaintiffs' theory is that the "true facts" were disclosed in the FINRA Complaint; however, these disclosures could not have negatively affected the value of the Apple REIT shares because there is no market for Apple REIT shares to react to such news. Moreover, as in *State Street*, the value of the Apple REITs does not depend on the fixed "price" of its shares, but on the value of the income-producing real estate the Apple REITs purchased. Plaintiffs have not and cannot allege that the FINRA Complaint disclosures of the purported misstatements in the Offering Documents affected or could affect the value of those underlying assets.

The alleged misrepresentations regarding the Units' arbitrary "price" or "value" − as opposed to the value of the underlying assets − can have no effect on the Unit price. *See State St. Corp.,* 774 F. Supp. 2d at 590-91. Here, if the value of the underlying assets has declined, it is due to the downturn in the economy causing depreciation of the properties and is not the result of disclosure of hidden facts. *Epirus Capital Mgmt.,* 2010 U.S. Dist. LEXIS 42200, at *15-16 ("While great clairvoyance may have predicted the upcoming market difficulties, failure to make

such predictions does not constitute fraud.").  Accordingly, Plaintiffs' Complaint establishes

Defendants' negative causation defense, and the Sections 11 and 12 claims should be dismissed.

## II.   THE COMMON LAW CLAIMS ARE DEFECTIVE AND SUBJECT TO AFFIRMATIVE DEFENSES.

Plaintiffs assert three counts raising state common law claims against the Apple REITs:

Count 7 for aiding and abetting alleged breaches of fiduciary duty; Count 8 for unjust

enrichment; and Count 9 for negligence.  None of these counts states a claim,[12] and all should be

dismissed.

### A.   Count Seven Does Not Sufficiently Allege that the Apple REITs Aided and Abetted DLA's Breach of Fiduciary Duties to Its Customers.

The only claim in Count 7 asserted against the Apple REITs is the claim that these

companies aided and abetted DLA's alleged breach of fiduciary duties.[13]  (Compl. ¶ 243).  For

the reasons stated in the Apple REIT Indiv. Defs. Memo, Section II, the allegations in Count 7

are insufficient to state a claim against the Apple REITs.  There is no allegation that any of the

five different Apple REITs sued in this claim took any particular action to aid or encourage

DLA's alleged breach.  Simply alleging knowledge of the breaches of fiduciary duty in a

conclusory fashion is not sufficient.  *In re Refco Sec. Litig.*, 2012 U.S. Dist. LEXIS 19915, at

*66 n.11 (rejecting argument that simply alleging that participants "knew about and understood"

---

[12] To the extent that Plaintiffs' common law claims sound in fraud, they are subject to the Rule 9(b) pleading standard.  *See Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 338-339 (S.D.N.Y. 2005) (to the extent that claims sound in fraud, they are subject to the requirement of Rule 9(b) that fraud be pleaded with particularity).  As such, Plaintiffs' conclusory allegations are wholly inadequate and fail to even survive Rule 8 scrutiny.  *Kyrs v. Surgue (In re Refco Inc. Sec. Litig.)*, No. 07 MDL 1902 (JSA), 2012 U.S. Dist. LEXIS 19915 (S.D.N.Y. Feb. 10, 2012).

[13] Plaintiffs allege that "The Apple REIT Entity Defendants aided and abetted the Individual Defendants' breach of fiduciary duties," (Compl. ¶ 242), and define the Entity Defendants to include the Apple REITs. (Compl. ¶52).  To the extent that Plaintiffs seek to assert claims against the Apple REITs for aiding and abetting their directors' alleged breaches of fiduciary duties, any such claims should be dismissed for the reasons stated in the Apple REIT Indiv. Defs Memo at Section II(C).

the breaches of fiduciary duty was a sufficient allegation under Rule 9(b) or Rule 8); *see also*

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006) (rejecting conclusory allegations

that defendant had knowledge of breach); *Krause*, 356 F. Supp. 2d at 339 (plaintiff must allege

aider-abettor's actual knowledge).  Plaintiffs' allegations fail to adequately plead that the Apple

REITs had actual knowledge of the breach of fiduciary duty alleged to have been committed by

the DLA Defendants, much less that they participated in the breach.  Accordingly, Plaintiffs'

claim against the Apple REITs for aiding and abetting DLA's alleged breach of fiduciary duty

should be dismissed.

**B.      The Unjust Enrichment Claim Is Barred As a Matter of Law.**

For the reasons stated in the Apple REIT Indiv. Defs. Memo, Section II(D), Plaintiffs

have not alleged that any Apple REIT obtained any unjust benefit at the Plaintiffs' expense, and

Count Eight should be dismissed as to the Apple REITs.

In addition, there can be no claim based on an implied contract theory such as unjust

enrichment when an express contract governs the relationship of the parties.  "When a valid and

unrescinded express contract between the parties exists, courts will not permit recovery pursuant

to the theory of unjust enrichment." *Shinn v. Champion Mortg. Co.*, No. 09-cv-00013, 2010 U.S.

Dist. LEXIS 9944, at *15 (D.N.J. Feb. 5, 2010); *Ryan v. Fed. Express Corp.*, 78 F.3d 123, 127

(3d Cir. 1996); *see also Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)

("[R]ecovery under unjust enrichment may not be had when a valid, unrescinded contract

governs the rights of the parties.").  In this case, each Plaintiff invested in the Apple REITs

subject to Subscription Agreements with the Apple REITs.  (*See* Edwards Decl. Exhs. A – E at

Appx. A).   Therefore, Plaintiffs' claims concerning the Apple REITs are governed by the

Subscription Agreements.  (*See id.*)  Because Plaintiffs' claims against the Apple REITs are

governed by express contracts, recovery from any unjust enrichment claim is barred, and the

21

claims should be dismissed.  *See, e.g., Shinn*, 2010 U.S. Dist. LEXIS 9944, at *15; *Ryan*, 78 F.3d at 127; *Van Orman*, 680 F.2d at 310.[14]  Accordingly, the express contracts between the Plaintiffs and the Apple REITs bars any unjust enrichment claims, and the claims against the Apple REITs in Count 8 should be dismissed.

### C.    Plaintiffs Fail to State a Claim for Negligence.

#### 1.    The Apple REITs Cannot Be Vicariously Liable for Any Statements by DLA Which Contradict the Offering Documents.

Plaintiffs allege that DLA was negligent in selling Apple REIT shares and that the Apple REITs are jointly and severally liable for the DLA Defendants' alleged negligence "because the DLA Defendants were agents of and acting within the scope of their agency with the Apple REIT Defendants when they offered and sold the Apple REITs."  (Compl. ¶ 255).  As an initial matter, for the reasons stated in the DLA Memo in Section IV, Plaintiffs have not stated a negligence claim against DLA.  Accordingly the claim in Count 9 should be dismissed.

In addition, Plaintiffs were informed of the scope of DLA's authority, and any reliance

---

[14] While each Plaintiff's claims will be governed by the law of his state of residence (*see* Apple REIT Indiv. Defs. Memo. at Section II(A)), the rule is the same in Connecticut, Florida, and New York as in New Jersey.  In Connecticut, it is well established "that 'an express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter."  *Meaney v. Connecticut Hosp. Ass'n, Inc.*, 735 A.2d 813, 823 (Conn. 1999). Accordingly, under Connecticut law, the "lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment."  *Gagne v. Vaccaro*, 766 A.2d 416, 424 (Conn. 2001).  Similarly, "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008); *see also Ocean Commc'ns, Inc. v. Bubeck*, 956 So.2d 1222, 1225 (Fla. Ct. App. 2007).  In New York, a claim for "unjust enrichment lies as a quasi-contract claim," *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142, 907 N.E.2d 268, 274 (2009), and may be brought only where the subject matter of that claim is not subject to an express contract.  *Id.* at 142; *see also New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 118 (2d Cir. 2006) ("where a valid agreement exists between the parties, an action in quantum meruit to prevent unjust enrichment ordinarily is not available."); *see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

Plaintiffs placed on DLA's statements that exceeded that authority was unreasonable as a matter of law.  The Offering Documents informed Plaintiffs that "**No dealer, salesman or other person has been authorized to give any information or to make any representations other than those contained in this prospectus . . . and, if given or made, any other information or representations must not be relied on**." (Edwards Decl. Exhs. A – E, back covers (emphasis in originals)).

Also, as Plaintiffs allege, there are agency agreements which run between DLA and the Apple REITs.  (Compl. ¶ 21; *see also,* Edwards Decl. Exh. M (Agency Agreements for Apple REITs Six, Seven, Eight, Nine and Ten)).  In the Agency Agreements, which are public documents and expressly referenced in the Complaint at paragraph 184, DLA agreed that "[i]nsofar as the distribution of the offering is within your control and not the Company's . . . the distribution of the offering will comply with the terms of the Prospectus, the Act, the Securities Exchange Act of 1934 and the securities laws (including applicable suitability standards, if any) of all jurisdictions in which you offer the Units or whose laws are applicable to your offering of the Units, and all rules promulgated under such Acts and laws, and all applicable rules of the FINRA."  (*See* Edwards Decl. Exh. M (REIT Nine Agency Agreement at ¶ 5); *see also id.* at Agency Agreements for Apple REITs Six, Seven, Eight and Ten).  Thus, Plaintiffs were on notice of the scope of DLA's agency and could not reasonably have relied on any statements DLA allegedly made that are limited or contradicted by the Offering Documents.

A principal is only liable for its agent's actions that are within the scope of the agent's actual or apparent authority.  *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010).  Actual authority is the authority granted to an agent by the principal.  *Id*.  Apparent authority exists only when a *principal's* actions cause a third party to reasonably believe that the

agent has actual authority to bind the principal.  *Adams v. Labaton, Sucharow & Rudoff, LLP*, 07 Civ. 7017, 2009 U.S. Dist. LEXIS 35085, at *11 (S.D.N.Y. Mar. 30, 2009).  A third party, such as the Plaintiffs here, attempting to establish the apparent authority of an agent to make representations on behalf of a principal must show that (1) the principal was responsible for the agent's appearance of authority and that (2) the third party reasonably relied on the agent's representations.  *Id.* at *9-10.

Here, the scope of DLA's authority is that which was granted under the Agency Agreements and Offering Documents.  (*See* Edwards Decl. Exh. M; *see also*, *id.* Exh. A – E, back covers).  Any statements DLA made exceeding that grant were not within its actual or apparent authority.  Plaintiffs were on notice that DLA was not "authorized to give any information or to make any representations other than those contained in" the Offering Documents.  *Id.*  Plaintiffs could not justifiably rely on statements by DLA in conflict with statements in the Offering Documents, since through minimal diligence they could have discovered the truth.  *See, e.g., Greenburg v. Pro Shares Trust*, Dkt. No. 0759, 2011 N.J. Super. Unpub. LEXIS 1789, at *21 (N.J. Super. Ct., App. Div. July 7, 2011); *KNK Enters., Inc. v. Harriman Enters., Inc.*, 33 A.D.3d 872, 872 (N.Y. App. Div. 2006); *Rose v. ADT Sec. Svcs., Inc.*, 989 So. 2d 1244, 1248 (Fla. App. 2008).

In fact, an investor's reliance on statements contradicted by offering documents is unreasonable as a matter of law.  *See, e.g., Feinman v. Schulman Berlin & Davis*, 677 F. Supp. 168, 170 (S.D.N.Y. 1988); *see also In re UBS Auction Rate Sec. Litig.*, 2010 U.S. Dist. LEXIS 59024, at *72-73 (S.D.N.Y. June 10, 2010) ("[T]he prospectus is the single most important document and perhaps the primary resource an investor should consult in seeking information. Furthermore, prospectuses are easily accessible to investors. . . .  In today's world it is unrealistic

to argue that documents available on the SEC website are not readily accessible to the investing

public.").  It is also unreasonable for an investor to rely on external statements when the offering

documents themselves contradict those statements in part by stating that only representations

therein can be relied upon.  *See In re Towers Fin. Corp. Noteholders Litig.*, No. 93 Civ. 0810,

1996 U.S. Dist. LEXIS 22674, *51 (S.D.N.Y. May 30, 1996).  Reliance on outside statements

that contradict those in Offering Documents is unreasonable even when the outside statements

are clear or written.  *Id.* (noting that even an explicit, written statement in a letter could not be

relied upon given the contradictory statements in the offering memoranda).[15]

Plaintiffs were on notice of the scope of DLA's actual authority.  As such, they could not

reasonably rely on apparent authority.  Moreover, any claim of apparent authority must be

grounded in representations by the principal, not by the agent.  *See Updike, Kelly & Spellacy,*

*P.C. v. Beckett*, 269 Conn. 613, 639, n.19 (Conn. 2004); *Lobiondo v. O'Callaghan*, 357

N.J.Super. 488, 815 A.2d 1013, 1019 (N.J.Super. Ct. App. Div. 2003); *Villazon v. Prudential*

*Health Care Plan, Inc.*, 843 So.2d 842, 855 (Fla. 2003).  Here, the limited scope of the agency

status of DLA was made plain in the prospectus.  Nothing allegedly said or done by DLA can

change that.  Therefore, Plaintiffs' claims of derivative liability for DLA's alleged negligence

should be dismissed.

---

[15] In *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 661 (6th Cir. 2005), investors
filed a claim against the seller of annuity contracts under the theory that the broker acted as its
agent in giving bad investment advice about the annuity contracts.  The court looked at the scope
of a broker's actual and apparent authority to act for a seller.  *Id.* at 662-63.  First, the court
found that the actual agency relationship between the parties was limited to the selling of
insurance products.  *Id.* at 662.  The prospectus provided to investors, which investors noted that
they received by signing applications, expressly noted this limited relationship.  *Id.* at 658-59.
The court also found that the broker acted without apparent authority, relying in part, on the fact
that the seller "expressly distanced itself from any investment decisions via a number of binding
documents, such as the Prospectus . . . ."  *Id.* at 663.

##### 2.   The Economic Loss Rule bars Plaintiffs' negligence claims.

New York, New Jersey, Connecticut and Florida all have adopted the economic loss rule

and recognize that the rule bars recovery of purely economic loss in negligence actions. *Hydro*

*Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 19 (2d Cir. 2000); *Duquesne Light Co. v.*

*Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995); *ODP, LLC v. Shelterlogic, LLC*,

2007 Conn. Super. LEXIS 3482, *4 (Conn. Super. Ct. 2007); *Indemnity Ins. Co. of N. Am. v. Am.*

*Aviation, Inc.*, 891 So. 2d 532, 536-37 (Fla. 2004). The economic loss rule holds that purely

economic losses, without property damage or personal injury, are not recoverable in a negligence

action. *See, e.g., Hydro Investors*, 227 F.3d at 19. A claimant suffering purely financial losses is

restricted to an action in contract for the benefit of its bargain. *Id*; *see also County of Suffolk v.*

*Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984) ("New York law holds that a

negligence action seeking recovery for economic loss will not lie"); *ODP,* 2007 Conn. Super.

LEXIS 3482 at *4 ("The economic loss doctrine is a judicially created doctrine which bars

recovery in tort where the relationship between the parties is contractual and the only losses

alleged are economic"); *Indemnity Ins.*, 891 So. 2d at 536-37 (a plaintiff in contractual privity

with a defendant cannot recover in tort for solely economic damages arising out of the breach of

the contract).

Under any applicable law, there can be no recovery of purely economic losses on a

negligence theory. Any losses Plaintiffs suffered are economic, not personal injury or property

damage. *See Randall v. Loftsgaarden*, 478 U.S. 647, 654 (1986) (remedy under Section 12(2) is

for net economic loss); *Amorosa v. AOL Time Warner, Inc.*, 409 Fed. Appx. 412, 416 (2d Cir.

2011) (Section 11 claim is for plaintiff' economic loss); *In re Evergreen Ultra Short*

*Opportunities Fund Sec. Litig.*, 705 F. Supp. 2d 86, 94 (D. Mass. 2010) (Section 11 and 12

claims require causal link with plaintiffs' economic loss). Therefore, even if Plaintiffs had laid a

factual basis for Count Nine, it should still be dismissed because such recovery is barred by the economic loss rule.

> **D.    Plaintiffs Lack Standing to Assert Common Law Claims Against Apple REITs in which They Did Not Invest.**

Plaintiffs lack standing to assert many of their common law claims.  All Plaintiffs other than the Kronbergs assert claims against Apple REITs in which they have never owned shares. While Plaintiff Marvin Bendavid owns shares of Apple REIT Nine and Ten, he asserts state common law claims against all of the Apple REIT Defendants, including Apple REITs Six, Seven, and Eight.  (Compl. ¶¶ 16, 239-255).  Accordingly, Plaintiff Bendavid's claims in Counts 7, 8 and 9 against Apple REITs Six, Seven and Eight should be dismissed.

Similarly, Plaintiffs Laura Berger, Barbara Shefsky, and William Murray own only Apple REIT Eight and Nine shares, however they also assert state common law claims against Apple REITs Six, Seven, and Ten.  (Compl. ¶¶ 17-19, 239-255).  Because they lack standing, and could not possibly have suffered a loss related to Apple REITs Six, Seven and Ten, the claims in Counts 7, 8 and 9 asserted by Plaintiffs Berger, Shefsky, and Murray should be dismissed as to Apple REITs Six, Seven and Ten.

**III.   PLAINTIFFS' STATE SECURITIES LAW CLAIMS ARE INADEQUATE AS A MATTER OF LAW**

> **A.    The State Securities Law Claims Against Apple REIT Ten Should Be Dismissed Because Neither Plaintiff Berger Nor Plaintiff Williams Invested in Apple REIT Ten.**

Plaintiff Berger, the only Plaintiff asserting claims under the Connecticut Uniform Securities Act ("CUSA"), brings her CUSA claims in Counts 10, 11 and 12 against Apple REIT Ten – *a REIT in which she has never invested.*  (Compl. at ¶ 17 ("Ms. Berger purchased Apple REIT Eight shares . . . and Apple REIT Nine shares . . .)).  Likewise, Plaintiff Murray, the only Plaintiff asserting Florida Securities Act claims, only invested in Apple REIT Eight and Apple

REIT Nine, yet he asserts a Florida state securities claim against Apple REIT Ten in Count 13. (Compl. ¶¶ 276-281; *compare* Compl. ¶ 19 ("Mr. Murray purchased Apple REIT Eight shares . . . and purchased Apple REIT Nine shares . . ."). Plaintiffs Berger and Murray simply cannot maintain causes of action against a REIT in which they did not invest. Because Plaintiff Berger has no grounds to assert Connecticut securities law claims against Apple REIT Ten, and Plaintiff Murray has no ground to assert Florida securities law claims against Apple REIT Ten, the claims against Apple REIT Ten in Counts 10, 11, 12 and 13 should be dismissed.

**B.     The Complaint Fails to Allege Any Actionable Material Misrepresentation.**

Each of the state securities law claims in Counts 10-13 is based upon the same alleged "misrepresentations" asserted in support of the federal securities law claims in Counts 1-3. For the same reasons that these purported "misrepresentations" are not actionable in Counts 1-3 (*see* Section I (A), *supra*), they also fail as a matter of law to support the claims in Counts 10-13.

**C.     Plaintiff Burger's CUSA § 36b-5 Claim Only Applies to Investment Advisors.**

CUSA § 36b-5 applies only to "investment advisors" and their agents. Conn. Gen. Stat. § 36b-5. One of the elements of § 36b-5(a) is that a person liable under the section must directly or indirectly "receive[] compensation or other remuneration for advising another person as to the value of securities or their purchase or sale." *Id*. The Apple REITs, however, are not "investment advisors," nor do they solicit "advisory business" on behalf of investment advisors.

Plaintiffs Berger has failed to make any specific factual allegations that Apple REIT Eight, Apple REIT Nine or Apple REIT Ten provided such advisory services or received compensation for such services. In fact, the allegation concerning investment advice lumps together all of the Defendants and merely alleges that "Defendants directly or indirectly received compensation or other remuneration for advising Plaintiff Berger and Connecticut subclass members as to the value of the Apple REIT shares and their sale." (Compl. ¶ 262). Because

Plaintiff Burger has failed to allege any facts supporting her contention that the Apple REITs provided services as an investment advisor, or solicited investment advisory services, or that any Apple REIT received compensation for such services, Plaintiff's § 36b-5 claim against the Apple REITs should be dismissed.

> ### D.   Plaintiffs' Florida Securities Act Claim in Count 13 Fails Because Plaintiff Has Not Alleged "Justifiable Reliance."

Under Florida securities law, Plaintiff Murray is required to plead the specific element of "justifiable reliance" in order to sustain a claim, which he has not done.  *See First Union Brokerage v. Milos*, 717 F. Supp. 1519, 1524-1525 (S.D. Fla. 1989) (finding that justifiable reliance is an element of Rule 10b-5 claim and thus a § 517.301 claim); *Kashner Davidson Secs. Corp. v. Desrosiers*, 689 So. 2d 1106, 1107 (Fla. Dist. Ct. App. 2d Dist. 1997) (citing the Florida Supreme Court, *E.F. Hutton & Co. v. Rousseff*, 537 So. 2d 978, 981 (Fla. 1989), for the proposition that reliance is an element of a state securities law claim under Florida law).

Pleading "justifiable reliance" requires Murray to allege that (1) he relied on the misstatement and (2) that the reliance was reasonable.  *First Union*, 717 F. Supp. at 1525 ("In this Court's view, a party must plead reliance upon a misrepresentation or omission, and in addition thereto, aver that such reliance was reasonable.").  Here, Murray has failed to allege reliance as required for a § 517.301 claim.  *In re Sahlen & Assoc., Sec. Litig.*, 773 F. Supp. 342, 371 (S.D. Fla. 1991) (dismissing Florida statutory and common law fraud claim because plaintiffs failed to state "which of them read and relied on which particular statements made by Defendants").  He does not allege if or how he relied on Defendants' purported misrepresentations.

Moreover, even if Murray had identified a misstatement or omission of material fact and alleged reliance on same – which he has not – he has wholly failed to allege that any purported

reliance was "reasonable," nor has he alleged facts in support of any purported "justifiable reliance," as required to state a claim under Florida law.  *Camden Asset Mgmt., L.P. v. Sunbeam Corp.*, 2001 U.S. Dist. LEXIS 11022, at *57 (S.D. Fla. July 3, 2001).

Accordingly, because Plaintiff has not alleged justifiable reliance as is required for a § 517.301 claim under Florida law, the claim should be dismissed.

## IV.   PLAINTIFFS' SECTION 12(A)(2) CLAIMS AGAINST APPLE REIT NINE, AND BREACH OF FIDUCIARY DUTY, AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY, AND STATE SECURITIES LAW CLAIMS ARE TIME-BARRED

Plaintiffs' Section 12(a)(2) claims against Apple REIT Nine, as well as Plaintiffs' breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and state securities law claims against Apple REITs Six through Nine are time-barred because Plaintiffs knew, or should have known, of each of the alleged false or misleading statements well before the applicable statute of limitations expired.

### A.   Plaintiffs' Section 12(a)(2) Claims Against Apple REIT Nine Are Time-Barred for Failure to Sue Within One Year of Being Able to Reasonably Discover the Facts Constituting the Violation.

Plaintiffs' federal securities law claims are governed by Section 13's one-year statute of limitations, which provides that no action may be brought under Sections 11 or 12(a)(2) unless brought within one year after the plaintiff knew or with reasonable diligence should have known of the alleged untrue statement or omission.  15 U.S.C. § 77m; *In re Bear Stearns Mortgage Pass-Through Certificates Litig.*, 2012 WL 1076216, at *11 (S.D.N.Y. Mar. 30, 2012).  While Plaintiffs assert that they did not discover the facts giving rise to their claims until May 27, 2011, (Compl. ¶¶ 195-97), the law presumes that a plaintiff discovered the facts giving rise to a claim when "a reasonably diligent plaintiff could have discovered the facts constituting the violation." *Pontiac Gen. Emp. Ret. Sys. v. MBIA, Inc.*, 637 F.2d 169, 174 (2d Cir. 2011).  On a motion to

dismiss, courts consider the complaint and papers integral to the complaint, including publicly-filed documents with the SEC, to determine if the plaintiff should have known of the facts giving rise to his claim.  *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 412 (2d Cir. 2008); *In re Direxion Shares ETF Trust*, 2012 WL 259384, at *1 (S.D.N.Y. Jan. 27, 2012).

Virtually all of the facts on which Plaintiffs rely to support their claims were known, or should have been known to a reasonably diligent investor, more than one year prior to the June 17, 2011 filing of the initial complaint.  For example, Plaintiffs claim that they did not realize the source or rationale underlying the dividend payments until May 2011.  (Compl. ¶ 8).  However, in the years following Plaintiffs' investments – beginning as early as 2004[16] –  Plaintiffs received regular dividend payments of approximately 7% to 8 %.  (Compl. ¶ 79).  As the prospectuses repeatedly forewarned, and quarterly filings confirmed, the dividend payments were sourced from a combination of operating revenue, debt, and return of investor capital.  (*See* Edwards Decl. Exh. E at Intro p. 1 and pp. 5, 16, 35; Exh. D at Intro p. 1 and pp. 7, 29; Exh. G at 22; Exh. F at 19).  Investors are deemed to have knowledge of the contents of a prospectus.  *See Dodds v. CIGNA Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1933).

In the years following Plaintiffs' initial Apple REIT Nine investments in 2008, the hotel industry experienced "substantial downside risks" and industry reports warned of "bleak prospects."  (Compl. ¶¶ 117, 144).  The Complaint documents numerous public reports from more than one year before the complaint was filed that detail the challenges facing the hotel industry in which the REITs invested throughout the period when Plaintiffs invested in the REITs.  (Compl. ¶¶ 1, 115-18, 133, 144).  The book value of Apple REIT Nine Units has consistently been reported as lower than $11 and has declined from year to year.  (*See, e.g.*,

---

[16] *See* Compl. ¶¶ 15-19.

Edwards Decl. Exh. K at 1, 17 (reflecting $9.50 book value); Exh. L at 18 (reflecting $9.10 book value)).  Throughout this period, the Apple REITs continued to arbitrarily price their Units at $11 and pay dividends of approximately 7% to 8%.  (Compl. 77-79).

Notwithstanding these storm warnings, Plaintiffs' claim that, prior to May 2011, they "believed that the Apple REITs, including the REITs in which they invested or reinvested were performing sufficiently well to justify payments of dividends of 7% to 8%, and that Plaintiffs enjoyed a reasonable prospect of recovering their principal at the term of their investments."  The facts on which they rely to say they were misled as to the objectives, dividends, and share value are the same facts that have been publicly available for years.  Plaintiffs' claims that they were not on notice of these facts is neither factually plausible nor legally sound.  Accordingly, Plaintiffs Bendavid, Berger, and Shefsky knew, or should have known, of each of the alleged false or misleading statements well before June 17, 2010 and their Section 12(a)(2) claims against Apple REIT Nine are time-barred.  *See Dodds v. CIGNA Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993) ("The means of knowledge are the same thing in effect as knowledge itself.").  Moreover, Plaintiff Kronberg, who purchased Apple REIT Nine shares before and after June 17, 2010, is barred from asserting a Section 12(a)(2) claim against Apple REIT Nine stemming from purchases prior to June 17, 2010.

**B.    Plaintiffs' Section 12(a)(2) Claims for Shares Purchased Before June 17, 2008 Are Barred by the Statute of Repose.**

Regardless of when Plaintiffs discovered the alleged false or misleading statements, all Section 12(a)(2) claims must be brought within three years after a security was sold to Plaintiffs. 15 U.S.C. § 77m.  The three-year statute of repose is not subject to tolling.  *Id.*  Because Plaintiffs filed their first complaint on June 17, 2011, Plaintiffs' Section 12(a)(2) claims had to accrue – *i.e.*, Plaintiffs had to purchase their Apple REIT shares – on or after June 17, 2008 to be

timely.  *Id.*  Plaintiff Bendavid, however, purchased Apple REIT Nine shares in May 2008,

(Compl. ¶ 16), which is beyond the three-year statute of repose and therefore time-barred.

Plaintiff Kronberg purchased Apple REIT Nine shares in May and June of 2008, and in 2009 and

2010.  (Compl. ¶ 15.)  Thus, Plaintiffs' Section 12(a)(2) claims arising from shares purchased

before June 17, 2008 are time-barred and must be dismissed.

### C.   The Breach of Fiduciary Duty and State Securities Claims Have Two-Year Statutes of Limitations and Also Are Time-Barred.

Plaintiffs' breach of fiduciary duty and aiding and abetting a breach of fiduciary duty

claims, Plaintiff Berger's CUSA claims,[17] and Plaintiff Murray's Florida securities claims are

each subject to a two-year statute of limitation.  *See Jones v. Shooshan*, 2012 U.S. Dist. LEXIS

26512, at *21-23 (E.D. Va. Feb. 29, 2012); Conn. Gen. Stat. § 36b-29(f); Fla. Stat. § 95.11.

In Virginia, a breach of fiduciary duty claim begins to accrue when the alleged breach

occurred, which in securities actions based on false or misleading statements is the date plaintiff

purchased the security.  *Smith v. CAN Fin. Corp.*, 2003 U.S. Dist. LEXIS 28240, at *22-24

(W.D. Va. Nov. 28, 2003).  In this case, Apple REITs Six, Seven, and Eight ceased selling shares

no later than April 2008.  (Compl. ¶¶ 28-30.)  Thus, because any breach of fiduciary duty and

aiding and abetting such a breach of fiduciary duty claim accruing prior to June 17, 2009 is time-

barred, Plaintiffs claims against Apple REITs Six, Seven, and Eight must be dismissed.

Moreover, Plaintiff Berger's CUSA claims were required to be brought within two years

of the purchase.  Conn. Gen. State. § 36b-29(f).  Plaintiff Murray's Florida securities claims

accrued two years from the date he knew or should have known of the alleged false or

misleading statements.  Fla. Stat. § 95.11.  Berger purchased all of her Apple REIT Eight shares

and some of her Apple REIT Nine shares before June 17, 2009 (Compl. ¶ 17), and as noted

---

[17] Berger is not alleged to have purchased Apple REIT Ten shares and, thus, lacks standing to assert a CUSA claim against Apple REIT Ten as discussed in Section III(A), *supra*.

above, Plaintiffs' knew or should have known of the alleged false or misleading statements prior to June 17, 2009.  Thus, Berger's CUSA claims against Apple REIT Eight, as well as those against Apple REIT Nine to the extent purchased before June 17, 2009, are time-barred.  In addition, Murray's Florida securities claims against Apple REIT Eight are also time-barred.

## CONCLUSION

For the reasons stated above, and in the Motions to Dismiss of the Apple REIT Directors, Officers and Affiliates and the DLA Defendants, the Apple REIT Defendants respectfully request the Court dismiss all claims against them with prejudice.

Dated:  April 18, 2012                              Respectfully submitted,


_____/s/_____

Marshall Beil
McGUIREWOODS LLP
1345 Avenue of the Americas, 7th Floor
New York, NY 10105-0106
Telephone: (212) 548-2100


Elizabeth F. Edwards
McGUIREWOODS LLP
One James Center
901 East Cary St.
Richmond, VA 23219-4030
Telephone: (804) 775-4390

Charles Wm. McIntyre
McGUIREWOODS LLP
Washington Square
2001 K St. N.W. Suite 400
Washington, D.C. 20006-1040
Telephone: (202) 857-1742

*Attorneys for Defendants Apple REIT Six, Inc.,
Apple REIT Seven, Inc.,  Apple REIT Eight, Inc.,
Apple REIT Nine, Inc., and Apple REIT Ten, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2012, the foregoing document was served on the following via e-mail:

Daniel C. Girard
Amanda M. Steiner
Christina C. Sharp
Janice S. Yi
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
dcg@girardgibbs.com
chc@girardgibbs.com

Jacob H. Zamansky
Edward H. Glenn, Jr.
Kevin D. Galbraith
**ZAMANSKY & ASSOCIATES, LLC**
50 Broadway, 32nd Floor
New York, NY 10004
jake@zamansky.com

*Lead Plaintiffs' Counsel and
Interim Class Co-Counsel*

David P. Meyer
Matthew R. Wilson
**MEYER WILSON CO., LPA**
1320 Dublin Road, Suite 100
Columbus, OH 43215
dmeyer@meyerwilson.com

*Additional Plaintiffs' Counsel*

Kenneth I. Schacter
Derek Care
**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, NY 10022-4689
kenneth.schacter@bingham.com
derek.care@bingham.com

Michael D. Blanchard
**BINGHAM McCUTCHEN LLP**
One State Street
Hartford, CT 06103-3178
michael.blanchard@bingham.com

*Attorneys for Defendants David Lerner
Associates, Inc. and David Lerner*

Gregory S. Bruch
Sandra M. Hanna
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC 20006
gbruch@willkie.com
shanna@willkie.com

*Attorneys for Defendants Bruce H. Matson,
Ronald A. Rosenfeld, and Lisa B. Kern*

__/s/ Elizabeth F. Edwards__
Elizabeth F. Edwards
McGUIREWOODS LLP
901 East Cary St.
Richmond, VA 23219-4030
eedwards@mcguirewoods.com