**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **IN RE APPLE REITs LITIGATION** | ) | **No. 11-cv-02919-KAM-JO** |
| | ) | |
| | ) | |

---

**THE APPLE REIT DIRECTORS, OFFICERS AND AFFILIATES**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

Elizabeth F. Edwards
McGUIREWOODS LLP
One James Center
901 East Cary St.
Richmond, VA 23219-4030
Tel.: (804) 775-4390
eedwards@mcguirewoods.com

Charles Wm. McIntyre
McGUIREWOODS LLP
Washington Square
Washington, D.C. 20006-1040
2001 K St. N.W. Suite 400
Tel.: (202) 857-1742
cmcintyre@mcguirewoods.com

Marshall Beil
McGUIREWOODS LLP
1345 Avenue of the Americas, 7th Floor
New York, NY 10105-0106
Tel.: (212) 548-2100
mbeil@mcguirewoods.com

*Attorneys for Defendants Glenn W. Bunting,*
*Kent W. Colton, Michael S. Waters, Robert M.*
*Wily, Garnett Hall, Jr., Anthony Francis*
*"Chip" Keating, David J. Adams, Glade M.*
*Knight, Bryan Peery, Apple Suites Realty*
*Group Inc., Apple Eight Advisors, Inc., Apple*
*Nine Advisors, Inc., Apple Ten Advisors, Inc.*
*and Apple Fund Management, LLC*

Gregory S. Bruch
Sandra M. Hanna
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC  20006
Tel.: (202) 303-1230
shanna@willkie.com

*Attorneys for Defendants Bruce H. Matson,*
*Ronald A. Rosenfeld, and Lisa B. Kern*

April 18, 2012

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................iii

PRELIMINARY STATEMENT..........................................................1

ARGUMENT ...................................................................................7

I.     PLAINTIFFS DO NOT STATE ANY CLAIM UNDER THE 1933 ACT ..........7

     A.     The Complaint Fails to State A Claim Under Section 11 .........7

     B.     The Complaint Fails to State a Claim Under Section 15...........8

          1.     All control person claims require a primary violation by Apple REITs Nine and Ten; Plaintiffs state no such claim...........8

          2.     The Apple REIT Affiliates Cannot Be Held Liable Under Section 15 ...............9

          3.     The vague assertion of control person liability based on DLA's alleged securities violations fails as a matter of law .......10

II.     PLAINTIFFS HAVE FAILED TO STATE ANY COMMON LAW CLAIMS ...................12

     A.     Choice of Law For the Common Law Claims.........................12

     B.     Plaintiffs' Failure To Suffer Any Damage Is Fatal To Each Tort Claim ...............14

     C.     Plaintiffs' Breach of Fiduciary Duty Claims Fail As A Matter Of Law ...............14

          1.     Plaintiffs fail to state a breach of fiduciary duty claim against the Apple REIT Individual Defendants.........................14

               a.     Breach of fiduciary duty claims must be brought derivatively ................15

               b.     Plaintiffs fail to allege any breach of fiduciary duty ........17

           2.     Plaintiffs fail to state a claim against the Apple REIT Affiliates for aiding and abetting breaches by the Apple REIT Individual Defendants.........................18

          3.     Plaintiffs fail to state a claim against the Apple REIT Individuals and Affiliates for aiding and abetting DLA's alleged breaches of fiduciary duty ................19

     D.     The Unjust Enrichment Claim Fails as a Matter of Law.........................20

     E.     Plaintiffs Fail to State A Claim For Negligence.........................22

          1.     The Apple REIT Individual and Affiliate Defendants are not alleged to have any agency relationship with DLA ..............22

## TABLE OF CONTENTS

**Page**

2.   The Economic Loss Rule bars Plaintiffs' negligence claims .......24

III.   PLAINTIFFS' STATE SECURITIES LAW CLAIMS ARE
INADEQUATE AS A MATTER OF LAW ........................................24

IV.   MANY OF PLAINTIFFS' CLAIMS ARE BARRED BY THE
APPLICABLE STATUTES OF LIMITATIONS ................................27

V.   BECAUSE ADAMS DID NOT SIGN THE OFFERING DOCUMENTS,
HE SHOULD BE DISMISSED ..........................................................27

CONCLUSION ........................................................................................28

CERTIFICATE OF SERVICE ................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Safety Ins. Serv., Inc. v. Griggs*,
   959 So.2d 322 (Fla. Dist. Ct. App. 2007)................................................................21

*Arlington Park Racetrack, Lt. v. SRM Computers, Inc.*,
   674 F. Supp. 986 (E.D.N.Y. 1987)..........................................................................14

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) ..............................................................................................19

*BBS Norwalk One, Inc. v. Raccolta, Inc.*,
   60 F. Supp. 2d 123 (S.D.N.Y. 1999) ......................................................................13

*Calderon v. Saxton*,
   2007 U.S. Dist. LEXIS 69545 (D. Conn. Sept. 21, 2007)................................20, 22

*Coakley v. Jaffe*,
   49 F. Supp. 2d 615 (S.D.N.Y. 1999) .................................................................20, 22

*Dellastatious v. Williams*,
   242 F.3d 191 (4th Cir. 2001) ...................................................................................17

*Dolmetta v. Uintah Nat'l Corp.*,
   712 F.3d 15 (2d Cir. 1983) ..................................................................................20-22

*Emerson Enters., LLC v. Kenneth Crosby New York, LLC*,
   781 F. Supp. 2d 166 (W.D.N.Y. 2011)................................................................23-24

*Fagin v. Gilmarton*,
   432 F.3d 276 (3d Cir. 2005) ....................................................................................13

*Ferens v. John Deere Co.*,
   494 U.S. 516 (1990) .................................................................................................12

*First Union Brokerage v. Milos*,
   717 F. Supp. 1519 (S.D. Fla. 1989).........................................................................27

*Grp. Assets, LLC v. Fortress Inv. Grp.*,
   2010 U.S. Dist. LEXIS 75201 (S.D. Fla. Jun. 22, 2010)..................................20, 22

*Halifax Corp. v. Wachovia Bank*,
   604 S.E.2d 403 (Va. 2004) ......................................................................................18

*Harrison v. Eventure Capital Corp.*,
  666 F. Supp. 473 (W.D.N.Y. 1987)..................................................................11

*In the Matter of Allstate Insurance Company*,
  81 N.Y.2d 219 (N.Y. 1993).............................................................................14

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
  155 F. Supp. 2d 1069 (S.D. Ind. 2001).........................................................12

*In re Deutsche Bank AG Sec. Litig.*,
  2011 WL 3664407 (S.D.N.Y. Aug. 19, 2011) .............................................8-9

*In re Deutsche Telekom AG Sec. Litig.*,
  2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ...................................................9

*In re Global Crossing, Ltd., Sec. Litig.*,
  2005 WL 1907005 (S.D.N.Y. Aug. 8, 2009) .................................................11

*In re Lehman Bros. Mortgage-Backed Sec. Litig.*,
  650 F.3d 167 (2d Cir. 2011) .................................................................8, 9, 10

*In re Propulsid Prods. Liab. Litig.*,
  208 F.R.D. 133 (E.D. La. 2002) ....................................................................12

*In re Rezulin Products Liability Litigation*,
  392 F. Supp.2d 597 (S.D.N.Y. 2005) .......................................................12, 21

*Krause v. Forex Exch. Mkt., Inc.*,
  356 F. Supp. 2d 332 (S.D.N.Y. 2005) ......................................................12, 20

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) .....................................................................19, 20

*Marketvision/Gateway Research, Inc. v. Priority Pay Payroll, LLC*,
  2011 U.S. Dist. LEXIS 46767 (D.N.J., May 2, 2011)..................................23

*P.V. v. Camp Jaycee*,
  962 A.2d 453 (N.J. 2008) ..............................................................................13

*Remora Invs., L.L.C. v. Orr*,
  673 S.E.2d 845 (Va. 2009) ............................................................................15

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ............................................................................9

*Rossman v. Lazarus*,
  2009 U.S. Dist. LEXIS 1741 (E.D. Va. 2009) ..............................................15

*Scottrade, Inc. v. Broco Invs., Inc.*,
  774 F. Supp. 2d 573 (S.D.N.Y. 2011) .................................................................. 19

*Scribner v. O'Brien, Inc.*,
  363 A.2d 160 (Conn. 1975) ................................................................................ 24

*Shenandoah Assocs. Ltd. P'ship v. Tirana*,
  182 F. Supp. 2d 14 (D.D.C. 2001) ...................................................................... 21

*Simmons v. Miller*,
  544 S.E.2d 666 (Va. 2001) ................................................................................. 15

*Sloan Overseas Fund, Ltd. V. Sapiens Int'l Corp.*,
  941 F. Supp. 1369 (S.D.N.Y. 1996) .................................................................... 11

*Sperry v. Crompton Corp.*,
  810 N.Y.S.2d 498 (N.Y. App. Div. 2006) ............................................................ 21

*St. Paul Fire & Marine Ins. Co. v. Hoskins*,
  2012 U.S. Dist. LEXIS 30770 (W.D. Va. Mar. 7, 2012) ...................................... 18

*Trivedi v. Pathak*,
  2008 U.S. Dist. LEXIS 31494 (E.D. Va. Apr. 16, 2008) ...................................... 16

*Walton v. Morgan Stanley & Co. Inc.*,
  623 F.2d 796 (2d Cir. 1980) ............................................................................... 13

*Zeigler v. Sony Corp. of Am.*,
  849 A.2d 19 (Conn. Super. Ct. 2004) ................................................................. 21

**STATUTES**

15 U.S.C. § 77(o) ....................................................................................................... 8

15 U.S.C. § 77k(a) ..................................................................................................... 7

15 U.S.C. § 78u-4 ...................................................................................................... 1

28 U.S.C. § 1404(a) ................................................................................................. 12

Conn. Stat. Ann. § 36b-29(f) .............................................................................. 25, 26

Conn. Stat. Ann. § 36b-5 ........................................................................................ 26

Fla. Stat. § 517.301 .............................................................................................. 26-27

Fla. Stat. § 607.831(1) ............................................................................................ 24

Va. Code Ann. § 13.1-690 ....................................................................................... 17

Va. Code Ann. § 13.1-672.1 ........................................................................................... 16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ..................................................................................................... 1, 12

Fed. R. Civ. P. 9(b) ............................................................................................... 1, 12

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1

Fed. R. Civ. P. 23.1 ..................................................................................................... 16

W. Keeton, Prosser & Keeton on the Law of Torts, § 1 at 1-7 (5th ed. 1984) .............................. 14

Defendants and Apple REIT board members Glenn Bunting, Kent Colton, Michael Waters, Robert Wily, Bruce Matson, Garnett Hall, Jr., Anthony Francis "Chip" Keating, Ronald Rosenfeld, David J. Adams and Lisa Kern (collectively, the "Apple REIT Directors"), and the Apple REITs' Chairman and CEO, Glade M. Knight, the Apple REITs' CFO Bryan Peery (the "Apple REIT Officers", and together with the Apple REIT Directors, the "Apple REIT Individual Defendants"); Apple Fund Management, LLC, Apple Suites Realty Group Inc., Apple Eight Advisors, Inc., Apple Nine Advisors, Inc. and Apple Ten Advisors, Inc. (collectively, the "Apple REIT Affiliates"), respectfully submit this memorandum in support of their motion to dismiss the Consolidated Class Action Complaint (or "Compl."), pursuant to Rules 12(b)(6), 9(b) and 8(a) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.

## PRELIMINARY STATEMENT

The Apple REIT Individual and Affiliate Defendants join in and incorporate by reference the Memorandum of Law submitted by the Apple REIT Companies, as well as David Lerner Associates, Inc. and David Lerner ("DLA") showing why the Complaint should be dismissed in its entirety.  Their arguments will not be repeated.[1]  This brief will focus on additional reasons why the Complaint should be dismissed as to the Apple REIT Individual and Affiliate Defendants in particular.

The Complaint alleges twelve distinct claims against the Apple REIT Individual and/or Affiliate Defendants as follows:

---

[1] Apple REITs Memorandum of Law in Support of Their Motion to Dismiss the Consolidated Complaint is incorporated herein by reference and referred to herein as "Apple REIT Memo." The DLA Defendants' Memorandum of Law in Support of Their Motion to Dismiss is incorporated herein by reference and referred to herein as "DLA Memo."

Count 1:   Section 11 claim against the Officers and Apple REIT Ten Directors for alleged *material misstatements or omissions* in the Apple REIT Ten registration statement;

Count 3:   Section 15 *control person* claim against the Apple REIT Officers, Apple REIT Nine Directors, Apple Nine Advisors, Apple Suites Realty and Apple Fund Management for alleged primary Section 12(a)(2) violations concerning Apple REIT Nine;

Count 4:   Section 15 *control person* claim against the Apple REIT Officers, Apple REIT Ten Directors, Apple Ten Advisors, Apple Suites Realty and Apple Fund Management for alleged primary Section 11 and Section 12(a)(2) violations concerning Apple REIT Ten;

Count 7:  (a) Breach of fiduciary duty claim against the Apple REIT Individual Defendants, (b) aiding and abetting breach of fiduciary duty claim against the Apple REIT Affiliates (and Apple REITs) for Apple REIT Individual Defendants' alleged primary breach, and (c) aiding and abetting breach of fiduciary duty claim against all Apple REIT Defendants for DLA's alleged primary breach;

Count 8:   Unjust enrichment against all Defendants;

Count 9:   Negligence against all Defendants, claiming all Apple REIT Defendants are jointly and severally liable for DLA's alleged negligence;

Count 10:  Connecticut Uniform Securities Act ("CUSA") claim against Knight (and Apple REIT Companies) for *material misstatements and omissions* in connection with the offer or sale of Apple REIT 8-10 units to Connecticut residents;

Count 11:  CUSA claim against the Apple REIT Individual Defendants for *material misstatements and omissions* in connection with the offer or sale of Apple REITs 8-10 units to Connecticut residents;

Count 12:  CUSA claim against the Apple REIT Individual Defendants as *control persons* of Apple REITs 8-10; and

Count 13:  Florida Securities Investor Protection Act claim against the Apple REIT Individual Defendants for *participating or aiding in* selling Apple REITs 8-10 to Florida residents by means of material misrepresentations or omissions.

Many of these claims also are asserted against the Apple REITs and their "best efforts"

underwriter, DLA.  All counts essentially are rooted in the same underlying premise:  the Apple

REITs and DLA made material misstatements or omissions in the Offering Documents[2] (and, in the case of DLA, other marketing materials) regarding the Apple REITs' objectives, dividend policies, value, and prior performance of other Apple REITs.  As detailed in the Apple REIT Memo and the DLA Memo, the claims against them should be dismissed because Plaintiffs fail to plead facts plausibly alleging (a) any material misstatements or omissions made by the Apple REITs or DLA, and (b) the source, quantity, or cause of any losses Plaintiffs claim to have suffered.  The same defects require dismissal of the claims as to the Apple REIT Individuals and Affiliates.  There are no additional allegations in the Complaint against any Individual or Affiliate that compel a different result.

**Federal Securities Law Claims**

The Section 11 claim against the Apple REIT Ten Directors and Officers fails because the core allegations of misrepresentations and omissions in the registration statement are belied by the Offering Documents themselves and thus are simply implausible on their face.  For example, Plaintiffs claim that the Apple REIT Ten registration statement and prospectuses misstated the value of the units (shares).  But those very same documents warn repeatedly that the price of the units was "arbitrarily set" and "may not reflect the true value of the unit." (Compl. ¶ 109; Edwards Decl.[3] Exh. E at 26, 28).  Similarly, Plaintiffs' theory that the Apple REITs' real but unstated investment objective was not to "maximize shareholder value by achieving long-term growth" as disclosed but, rather, was "to acquire properties at prices that ensured Apple REIT investors would lose a substantial portion of their principal" is completely

---

[2] "Offering Documents" are any documents the Apple REITs filed with the SEC and which are incorporated into the Complaint.  They include Prospectuses and Subscription Agreements (filed with the SEC as exhibits to prospectuses) filed in connection with Apple REITs Six, Seven, Eight, Nine and Ten. (*See* Compl. ¶ 82 and Appendices A-E).

[3] The Declaration of Elizabeth F. Edwards filed herewith is referred to as "Edwards Decl."

implausible.  (Compl. ¶¶ 10, 12).  The notion that the Apple REIT Defendants' true purpose was

to raise funds so they could invest them to fail badly – the essence of Plaintiffs' claim – simply

defies belief.  The Section 11 claim fails for the additional reasons that Plaintiffs have suffered

no loss; rather the facts alleged in the Complaint establishes the affirmative defense of "negative

causation" – that any losses were not caused by Defendants' purported misdeeds.  The Apple

REIT Memo and the DLA Memo detail the reasons why these allegations fail to state a Section

11 claim.  Plaintiffs do not allege that the Individual or Affiliate Defendants made any

misstatements or omissions different from those alleged to have been made by Apple REITs in

the Offering Documents, so the same result applies to these Defendants.

Counts 3 and 4 alleging Section 15 control person claims against the Apple REIT

Individual and Affiliate Defendants also fail because the Complaint does not state a claim for a

primary violation of Section 11 or 12(a)(2).  In addition, Plaintiffs do not allege that the Affiliate

Defendants had the requisite control over the Apple REITs sufficient to state Section 15 claims

against the Apple REIT Affiliate Defendants.

**Common Law Claims**

The breach of fiduciary duty claim against the Individual Defendants fails because it is

brought as a direct – rather than derivative – claim.  It also is legally deficient because the

Complaint does not allege that the Directors acted in bad faith or engaged in any conduct not

otherwise protected by the Business Judgment Rule.  Plaintiffs' corresponding aiding and

abetting claim against the Affiliate Defendants likewise fails because there is no underlying

breach of fiduciary duty alleged against the Directors.  Moreover, the Complaint does not allege

that the Affiliates knew about or participated in the supposed breaches of the Apple REIT

Directors, as required to state an aiding and abetting claim.  The claim that all Apple REIT

4

Defendants <u>aided and abetted breaches of fiduciary duty</u> *by DLA* also fails because (a) as shown in the DLA Memo, Plaintiffs fail to state a claim against DLA for breach of fiduciary duty, and (b) Plaintiffs do not allege that the Apple REIT Defendants had the requisite knowledge of or participation in DLA's supposed breach to be liable under any aiding and abetting theory.

The <u>unjust enrichment</u> claim against the Apple REIT Individual and Affiliate Defendants fails to state any, let alone all, elements of such a claim.  For example, the Complaint does not make a single allegation as to any gain or benefit received by the Apple REIT Director Defendants, how any such benefit came at the expense of Plaintiffs, or why it would be unjust to retain such non-existent benefit.

The <u>negligence</u> claim against the Apple REIT Individuals and Affiliates is based on the faulty premises that (a) DLA acted negligently in connection with its sale of Apple REIT shares, and (b) DLA was their agent and was acting within the scope of its authority in connection with those sales efforts.  DLA, however, was not negligent for the reasons stated in the DLA Memo, and the Complaint does not allege any facts to suggest that DLA was the agent of the Individual and Affiliate Defendants.  Nor do Plaintiffs allege that the Apple REIT Individual Defendants had any involvement in or awareness of DLA's alleged misdeeds, as would be required to hold the Apple REIT Individual Defendants responsible for any negligence on the part of DLA.  The negligence claims are also barred by the Economic Loss Doctrine.

**State Securities Law Claims**

The state securities law claims allege both primary (Counts 10, 11, 13) and control person (Count 12) claims against the Apple Individual or Affiliate Directors.  All of the state law securities claims fail for the same reasons the federal claims fail, and for the additional reasons, including:

All state securities law claims fail as to Apple REIT Ten and its officers and directors for lack of standing because neither the Connecticut nor the Florida Plaintiff is alleged to have purchased or own Apple REIT Ten units.

CUSA Count 11 fails to state a claim against the Apple Individuals and Affiliates because they are not alleged to be investment advisors, as is required by the statute Plaintiffs relied on. CUSA Count 12 alleges control person liability and fails for the same reasons the Section 15 claims fail (there is no primary securities law violation by the Apple REITs and, as to the Affiliates, Plaintiffs do not sufficiently allege control).

CUSA Counts 11 and 12 as to Apple REIT Nine and its Officers and Directors are time-barred to the extent they are based on purchases of securities in Connecticut made more than two years prior to the filing of the CUSA claims.  The Connecticut Plaintiff purchased nearly all of her Apple REIT Nine shares more than two years prior to the filing of this action, and CUSA requires that all claims be brought within two years of the purchase (absent allegations of fraud, which are not made here).

The Florida securities claim (Count 13) against the Apple REIT Individuals and Affiliates fails because Plaintiffs do not allege that these Defendants actively participated in or aided in the fraudulent sale of Apple REIT securities to Florida residents, as required by the relevant statute.

**Defendant Adams (Apple REIT Ten Director)**

Finally, the claims against Apple REIT Ten Director Adams fail for the additional reason that he was not a director at the time of any of the alleged misstatements.

For these reasons, and those set forth in the Apple REIT Memo and the DLA Memo, Plaintiffs' claims against the Apple REIT Individual and Affiliate Defendants should be dismissed in their entirety with prejudice.

## ARGUMENT

## I.   PLAINTIFFS DO NOT STATE ANY CLAIM UNDER THE 1933 ACT.

The Complaint asserts claims against the Apple REIT Ten Individual Defendants under Section 11 of the Securities Act of 1933 ("1933 Act") (Count 1) and against the Apple REIT Nine and Ten Individual Defendants and certain of the Apple REIT Affiliates for control person liability under Section 15 (Counts 3 and 4).   In all instances, Plaintiffs fail to allege the essential elements of the claims.   They should be dismissed.

### A.   The Complaint Fails to State A Claim Under Section 11.

Section 11 of the 1933 Act imposes liability on issuers and signers of a registration statement and on underwriters, among others, if the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."   15 U.S.C. § 77k(a).   As shown in detail in the Apple REIT Memo, Plaintiffs do not state a claim under Section 11 because the Complaint fails to allege any actionable material misrepresentation or omission.   While Plaintiffs allege ignorance of various facts, the plain language of the Offering Documents squarely contradicts all of Plaintiffs' claims of misrepresentation.   The Offering Documents, for example, repeatedly warn investors of risks and disclose the sources of dividend payments.[4]   (*See* Apple REIT Memo at Section I; DLA Memo at Section I).   Plaintiffs do not challenge the accuracy of the disclosed sources.   The Section 11 claim also fails because Plaintiffs have suffered no loss and the Complaint establishes the affirmative defense of negative causation.   (*See id.*)   For these

---

[4] *Compare* Compl. at ¶ 8 (claiming that, until May 2011, Plaintiffs believed the dividend payments were based on the REITs' performance) *with* Exhibit G to the Declaration of Kenneth Schacter filed by DLA in Support of its Motion to Dismiss ("DLA Decl.") (compiling scores of disclosures prior to May 2011 that accurately disclosed the source of the dividend payments as including debt and investor capital).

reasons as more fully set forth in the Apple REIT Memo, the Section 11 claims in Count 1 against Apple REIT Ten Individual Defendants Knight, Peery, Colton, Hall, Keating, Rosenfeld and Adams should be dismissed.

**B.      The Complaint Fails to State a Claim Under Section 15.**

Section 15 imposes joint and several liability for "controlling persons" – that is, those who exercise control over primary violators of Sections 11 and 12.  15 U.S.C. § 77(o).  Plaintiffs assert Section 15 claims against the Apple Directors, Officers and Affiliate Defendants, claiming that they controlled either or both of Apple REITs Nine and Ten "and are also liable for the violations of the Securities Act alleged in this complaint."  (Counts 3 and 4, Compl. ¶¶ 222, 226).  The claims fail as a matter of law against all defendants because the Complaint does not state a claim for a primary violation of the Securities Act by the controlled Apple REIT entities, and for additional reasons as to the Apple REIT Affiliate Defendants.  To the extent the vague assertion that the Individuals and Affiliate Defendants are "also liable for the violations of the Securities Act alleged in this complaint" purports to allege control person liability of the Individuals and Affiliates for the conduct of DLA, an entity they are not alleged to control, this also fails to state a claim as a matter of law.

**1.      All control person claims require a primary violation by Apple REITs Nine and Ten; Plaintiffs state no such claim.**

Section 15(a) of the 1933 Act provides that "[e]very person who, by or through stock ownership, agency, or otherwise . . . controls any person liable under section 11 or 12, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . ."  15 U.S.C. § 77o(a).  To sufficiently plead control person liability, a plaintiff must plead both (1) a primary violation of Section 11 or 12 and (2) control over the primary violator.  *In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650

F.3d 167, 185 (2d Cir. 2011).  Accordingly, "Section 15 claims must be dismissed where a plaintiff fails to plead a primary violation under Section 11 or Section 12."  *In re Deutsche Bank AG Sec. Litig.*, 2011 WL 3664407, at *11 (S.D.N.Y. Aug. 19, 2011); *Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004).

As discussed in Section I(A) above, and in the Apple REIT Memo, Plaintiffs do not state a claim for violation of Sections 11 or 12 by Apple REIT Nine or Ten.  As a result, their Section 15 claims premised on the outside Directors', Officers', and Affiliates' control of these REITs fail as a matter of law.  *Rombach*, 355 F.3d at 177-78.

### 2.    The Apple REIT Affiliates Cannot Be Held Liable Under Section 15.

The Section 15 claims against the Apple REIT Affiliates fail for the additional reason that Plaintiffs do not allege that the Affiliates had sufficient control over Apple REITs Nine and Ten to satisfy the control element of Section 15.

Plaintiffs attempting to state a Section 15 claim must allege that an individual had the requisite power to directly or indirectly control or influence the corporate policy of the primary violator.  *Lehman Bros.,* 650 F.3d at 185.  Plaintiffs have not even attempted to meet this requirement concerning the Apple REIT Affiliates.

Control is an "undisputed element" of Section 15 claims.  To establish "control" in this sense, Plaintiffs must allege that the Individual Defendants and Affiliates had "the power to direct or cause the direction of the management and policies of [a primary violator], whether through the ownership of voting securities, by contract, or otherwise."  *Lehman Bros.*, 650 F.3d at 185-86.  "Actual control" is required, and conclusory allegations will not suffice.  *In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002).

Plaintiffs, however, merely allege that Apple Suites Realty "provides brokerage services to the Apple REITs" (Compl. ¶ 34); that Apple Nine Advisors and Apple Ten Advisors "provide

day-to-day management" of the respective REITs (Compl. ¶¶ 36-37); and that Apple Fund Management, a subsidiary of Apple REIT Six, "supplies officers and employees to the other Apple entities" (Compl. ¶ 38). Plaintiffs further lump all of the Section 15 Apple REIT Defendants together and allege in conclusory fashion that "because of their directorial and/or management positions . . . [t]hey had the power, influence and authority to cause or prevent the wrongful conduct alleged in this Complaint." (Compl. ¶¶ 22, 226).[5]

Plaintiffs do not – and cannot explain how the Affiliates possess "directorial and/or management positions," or how they have "the power, influence and authority to cause or prevent the wrongful conduct alleged in [the] complaint." (Compl. ¶¶ 222, 226). Plaintiffs do not and cannot allege that the REIT Affiliates − Apple REIT Nine Advisors, Apple REIT Ten Advisors, Apple Suites Realty, Apple Fund Management − exercised control over the Apple REIT general corporate policies, let alone that they possessed the power to control the specific corporate policies or transactions on which the Section 11 or 12 claims are predicated. *See Lehman Bros.* at 185. Plaintiffs' conclusory allegations are insufficient to support their claim.

> **3.   The vague assertion of control person liability based on DLA's alleged securities violations fails as a matter of law.**

To the extent Plaintiffs' sweeping claim that the Individual and Affiliate Defendants are "also liable for the violations of the Securities Act alleged in this complaint" is an attempt to

_____

[5] Plaintiffs include directors of Apple REIT Nine − Waters, Wily, Kern and Matson − in the allegations of Count IV, which purports to assert Section 15 claims against certain directors of Apple REIT Ten, not Nine. *Compare* Compl. at ¶ 226 *with* ¶ 227. The Apple REIT Nine Directors were never directors of REIT Ten. (*Id.* at ¶¶ 42, 43, 44, 45.) Plaintiffs also allege that the Apple REIT Ten Directors − Colton, Hall, Keating, Rosenfeld and Adams – are controlling persons of Apple REIT *Nine*. (*Id.* ¶ 226.) The Apple REIT Ten Directors were never directors of Apple REIT Nine. (*Id.* at ¶¶ 43, 46, 47, 48, 49.) To the extent that Plaintiffs attempt in Count IV to assert claims against Apple REIT Nine Directors for conduct of Apple REIT Ten, those claims should be dismissed. To the extent that Plaintiffs attempt in Count VI to claim that the Apple REIT Ten Directors controlled Apple REIT Nine, those claims should also be dismissed.

hold these Defendants liable for the alleged securities violations of DLA, the conclusory allegation is wholly insufficient as a matter of law.  (*See* Compl. ¶¶ 222, 226).  As set forth in Section I(B) above, control is an "undisputed element" of Section 15 claims.  If a plaintiff "seeks to attribute control status to a third party, director, or employee who is not in a control position . . . then further factual allegations beyond a substantial stock relationship or officer/director status must be made to show that in fact such control can be inferred."  *In re Global Crossing, Ltd., Sec. Litig.*, 2005 WL 1907005, at *9 (S.D.N.Y. Aug. 8, 2009) (quoting *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp.*, 941 F. Supp. 1369, 1378 (S.D.N.Y. 1996)).  The Complaint does not even *allege* the Apple REIT Individual or Affiliate Defendants' control of any person other than the REITs, let alone make the "further factual allegations" necessary to avoid dismissal. (Compl. ¶¶ 222, 226).

For example, the Complaint lacks a single factual allegation to support an inference that the Apple REIT Individuals or Affiliates had the power to direct DLA's management or policies. It merely alleges that DLA entered an agency agreement with the Apple REITs to sell Apple REIT units, that DLA was successful in doing so, and that the Apple REITs referred customers to DLA for information.  (*See* Compl. ¶¶ 88, 187-194).   There is no attempt to allege how an individual Director, Officer or Affiliate of an Apple REIT could control the sales practices of an entirely different company, especially one headquartered in a different state and under the direction of its own "controlling owner," David Lerner.  (Compl. ¶¶ 20, 26).  Courts do "not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened." *Harrison v. Eventure Capital Corp.*, 666 F. Supp. 473, 479 (W.D.N.Y. 1987).  This Court should similarly reject Plaintiffs' expansive "control" allegations involving the Individual and Affiliate

Defendants over DLA, if they even exist.  *See Harrison*, 666 F. Supp. at 479 (refusing to impose control person liability when "[t]he degree of control attributed to Mutual Insurance does not 'reasonably follow' from its position as surety.").  Plaintiffs' Section 15 allegations, thus, fail to state a viable claim.

## II.   PLAINTIFFS HAVE FAILED TO STATE ANY COMMON LAW CLAIMS.

Plaintiffs assert three counts raising state common law claims against the Apple REIT Defendants:  Count Seven, for breach of fiduciary duty and aiding and abetting breach of fiduciary duty; Count Eight, for unjust enrichment; and Count Nine for negligence.[6]

### A.   Choice of Law For the Common Law Claims

New Jersey choice of law rules apply to the common law claims.  Plaintiffs originally filed the common law claims in the District of New Jersey in the *Kronberg* case before that case was transferred to this Court.  When a case is transferred pursuant to 28 U.S.C. § 1404(a), the transferee court is bound to apply the choice of law rules of the transferor court in deciding state law claims.  *Ferens v. John Deere Co.*, 494 U.S. 516 (1990).  Thus, this Court should apply the New Jersey rules in determining which state's law applies to each common law claim.[7]

However, as discussed below, even if this court decided to apply New York choice of law rules, those rules are consistent with the New Jersey rules for the issues raised by this motion.

---

[6] To the extent that Plaintiffs' common law claims sound in fraud, they are subject to the Rule 9(b) pleading standard.  *See Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 338-339 (S.D.N.Y. 2005).  Plaintiffs' conclusory allegations are wholly inadequate and fail to survive even Rule 8 scrutiny.

[7] Plaintiffs' filing of an amended complaint does not alter this conclusion.  Although no circuit court has decided whether the law of the transferor jurisdiction continues to apply following the filing of a consolidated complaint, district courts have tended to answer that question in the affirmative.  *See, e.g., In re Rezulin Products Liability Litigation*, 392 F. Supp.2d 597 (S.D.N.Y. 2005) (holding that amendment does not affect the choice of law analysis in the MDL context); *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 140-41 (E.D. La. 2002) (same); *contra In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1078 (S.D. Ind. 2001) (holding that rules of transferee jurisdiction apply).

With respect to breach of fiduciary duty claims against the directors and officers of a corporation, New Jersey applies the substantive law of the state of incorporation. *Fagin v. Gilmarton*, 432 F.3d 276, 282 (3d Cir. 2005); *Walton v. Morgan Stanley & Co. Inc.*, 623 F.2d 796, 798 n. 3 (2d Cir. 1980) (holding that New York follows same rule). Because the Apple REITs are Virginia corporations (Compl. ¶¶ 28-32), Virginia law governs the breach of fiduciary duty claims against the Apple REIT Directors, and claims of aiding and abetting such alleged breach. *See BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999) (finding breach of fiduciary duty claims against directors and related aiding and abetting claims governed by internal affairs doctrine).[8]

With respect to the two remaining common law claims – unjust enrichment and negligence – the Court should apply the substantive law of each plaintiff's state of residence. New Jersey's choice of law rule for these torts is the "most significant relationship" test. *P.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008); *see also In the Matter of Allstate Insurance Company*, 81 N.Y.2d 219, 225 (N.Y. 1993) (holding that New York follows similar rule). When applying the "most significant relationship" test, a court determines whether a conflict of law exists, and if so, which state has the most significant relationship with the occurrence and the parties. *See Camp Jaycee*, 962 A.2d at 461. For tort claims, New Jersey courts generally apply the law of the state where the injury occurred. *Id.; see also Allstate*, 81 N.Y.2d at 225. Accordingly, in this case, the law of each Plaintiff's state of residency – where the Plaintiffs'

---

[8] New York law governs Plaintiffs' claim that the Apple REIT Defendants aided and abetted DLA's alleged breach of fiduciary duty to its clients (Count 7), because the primary breach of fiduciary duty claim against DLA (Count 6) is governed by New York law, pursuant to the written agreements between DLA and its clients with exclusive New York choice of law provisions. *BBS Norwalk One,* 60 F. Supp. 2d at 129 (finding same law governs breach of fiduciary and related aiding and abetting claims). In any event, the laws of the relevant jurisdictions regarding elements of a breach of fiduciary duty are substantially the same.

economic harm allegedly occurred – governs the unjust enrichment and negligence claims. *Id*.
However, the substantive law of New Jersey, New York, Connecticut and Florida are consistent
with respect to the issues raised by this motion, and as discussed below, each state's law
mandates dismissal of Plaintiffs' claims.

**B.      Plaintiffs' Failure To Suffer Any Damage Is Fatal To Each Tort Claim.**

As discussed in Section I(B) of the Apple REIT Memo, Plaintiffs have suffered no loss.
Because the common law claims each require an element of loss, these claims must be dismissed
against all of the Apple REIT Defendants. *See, e.g.*, *Arlington Park Racetrack, Lt. v. SRM
Computers, Inc.*, 674 F. Supp. 986, 994 (E.D.N.Y. 1987) (harm or loss to plaintiff is a necessary
element of all torts); *see generally* W. Keeton, Prosser & Keeton on the Law of Torts, § 1 at 1-7
(5th ed. 1984) (stating that torts are generally comprised of (1) a breach of a legally-imposed
duty, and (2) an injury proximately caused by that breach).

**C.      Plaintiffs' Breach of Fiduciary Duty Claims Fail As A Matter Of Law.**

In Count Seven, Plaintiffs assert three distinct claims:  (1) the Apple REIT Individual
Defendants breached fiduciary duties purportedly owed to the shareholders (Compl. ¶ 240); (2)
the Apple REIT Affiliates aided and abetted the Apple REIT Individual Defendants' breach of
fiduciary duties (Compl. ¶ 242); and (3) all of the Apple REIT Defendants aided and abetted
DLA's breach of fiduciary duties (Compl. ¶ 243).  Each claim fails as a matter of law.

**1.      Plaintiffs fail to state a breach of fiduciary duty claim against the
Apple REIT Individual Defendants.**

Plaintiffs cannot assert claims of breach of fiduciary duty directly against the Apple REIT
Directors and Officers.  Defendants owe a fiduciary duty to the corporations, not individual
shareholders.  Thus, any breach of duty claim can only be brought as a derivative action

14

following a written demand on the corporation.  Even if Plaintiffs somehow were permitted to assert a breach of fiduciary duty directly, they do not state a claim as a matter of law.

          a.          **Breach of fiduciary duty claims must be brought derivatively.**

Plaintiffs assert a breach of fiduciary duty claim directly against all of the Apple REIT Individual Defendants, despite the fact that Plaintiffs have no direct fiduciary relationship with the Directors and Officers.  Under Virginia law, directors owe fiduciary duties to the corporation, not to the shareholders, and shareholders may bring claims against directors for breach of fiduciary duty only as derivative actions, not as direct actions.  *Simmons v. Miller,* 544 S.E.2d 666 (Va. 2001) (describing "overwhelming majority rule" that "an action for injuries to a corporation cannot be maintained by a shareholder on an individual basis and must be brought derivatively").  Where, as here, a plaintiff attempts to bring a direct action against a director for damages allegedly suffered by all shareholders, the claim must be dismissed.  *See, e.g., Remora Invs., L.L.C. v. Orr*, 673 S.E.2d 845, 849 (Va. 2009) (affirming dismissal of claim brought directly against a member of a limited liability company because such a claim must be brought derivatively).

To establish a fiduciary relationship in this case, where there is no fiduciary duty recognized by statute or common law, Plaintiffs must identify a specific contractual provision that would give rise to such a duty, but Plaintiffs have failed to do so.  *Rossman v. Lazarus*, 2009 U.S. Dist. LEXIS 1741 at *25 (E.D. Va. 2009) (dismissing claim where plaintiff failed to identify common law rule, or contractual language, establishing fiduciary duty).  Plaintiffs incorrectly claim that two documents – the Apple REITs' bylaws and a policy statement from the North American Securities Administrators Association ("NASAA") – establish a fiduciary relationship between the Apple REIT shareholders and the Individual Apple REIT Defendants. (Compl. ¶ 240).

The plain language of the bylaws, however, states that they do not create any fiduciary duties beyond those recognized by Virginia common law.  *See* Edwards Decl. Exh. N ("The directors of the Company have a fiduciary relationship to the Shareholders as provided in applicable Virginia law.").  The NASAA policy statement also does not create a fiduciary duty.  Far from a "contractual provision," the NASAA policy statement is a set of suggested standards that some state administrators, including those in Virginia, voluntarily follow when deciding whether to register Real Estate Investment Trusts.  *See* NASAA Stmt. at I(A)(1).  Its suggested standards are not binding on any parties – including the state administrators who choose to adopt them, *id.* at I(A)(2) (stating that the standards can be "modified or waived" in where appropriate) – and there is nothing in the Apple REITs' bylaws that adopts or incorporates these standards.  Accordingly, the shareholders' direct claims against the Apple REIT Individual Defendants cannot proceed.

In addition to seeking improperly to assert derivative claims in their own names, Plaintiffs do not meet the statutory prerequisites for bringing a derivative action.  Before a shareholder may bring suit on behalf of the corporation, he must prove that a demand has been made upon the board of directors that the corporation institute proceedings on the part of the corporation against the wrongdoers, or show that demand has been excused.  Va. Code Ann. § 13.1-672.1(B); Fed. R. Civ. P. 23.1(b)(3).  Plaintiffs have not fulfilled these requirements.  (*See* Compl. ¶¶ 239-244).  The failure to comply with the demand requirement is an independent basis for dismissal.  Va. Code Ann. § 13.1-672.1(B); *Trivedi v. Pathak*, 2008 U.S. Dist. LEXIS 31494, *4-9 (E.D. Va. Apr. 16, 2008) (dismissing claim for failure to meet derivative requirements and observing that "[i]n Virginia, the derivative claim rule is strictly followed").

**b.**      **Plaintiffs fail to allege any breach of fiduciary duty.**

The Court need not analyze the substance of Plaintiffs' fiduciary duty claims against the

Apple REIT Individual Defendants because such claims are barred by Virginia's law requiring

such claims to be brought derivatively.  However, even if Plaintiffs could assert the claims

directly, they do not plead facts that could sustain a claim against the Apple REIT Individual

Defendants for breach of fiduciary duty as a matter of law.

Plaintiffs' claim that the Apple REIT Individual Defendants supposedly breached a

fiduciary duty is based on the same facts Plaintiffs rely on to allege a material misstatement or

omission (in particular, that the Individuals "fail[ed] to disclose material information about the

prior Apple REITs . . . and negligently ma[de] numerous false and misleading misrepresentations

about the Apple REITs.").  (Compl. ¶ 240).  As stated above and in the Apple REIT Memo, the

Complaint fails to allege that any of the Apple REIT Defendants made any material

misrepresentations or omissions to investors.  As such, a breach of fiduciary duty claim against

the Individuals based on these same facts also fails.

To the extent that Plaintiffs' claim is based on the Apple REIT Individual Defendants'

decisions regarding dividend payments and real estate investment decisions, such claims are

barred by Virginia's business judgment rule.  Under Virginia law, a director owes the

corporation a fiduciary duty to act "in accordance with his good faith business judgment of the

best interests of the corporation."  Va. Code Ann. § 13.1-690(A).  The business judgment rule in

Virginia "provides a 'safe harbor' that shields a director from liability" so long as he complies

with the provisions of the statute while in office.  *Dellastatious v. Williams*, 242 F.3d 191, 195-

96 (4th Cir. 2001); *see* Va. Code Ann. § 13.1-690(C) ("A director is not liable for any action

taken as a director, or any failure to take action, if he performed the duties of his office in

compliance with this section").  Plaintiffs here have not alleged any facts to support a claim that the Directors acted in bad faith or contrary to the best interests of the corporation.

Accordingly, the breach of fiduciary duty claims against the Apple REIT Individual Defendants should be dismissed.

> **2.      Plaintiffs fail to state a claim against the Apple REIT Affiliates for aiding and abetting breaches by the Apple REIT Individual Defendants.**

Because Plaintiffs fail to state a claim against the Individual Defendants for breach of fiduciary duty, the claim against the Affiliate Defendants for aiding and abetting a non-existent breach necessarily fails.  *Halifax Corp. v. Wachovia Bank*, 604 S.E.2d 403, 411-12 (Va. 2004) (stating that that aiding and abetting requires underlying breach).

In addition, in order to plead a claim for aiding and abetting common law breach of fiduciary duty, a plaintiff must allege that the defendant had actual knowledge of another's breach of fiduciary duty and knowingly participated in such breach.  *Halifax,* 268 Va. 641 at 659-60 (assuming without deciding that Virginia recognizes such a claim).  "The word 'participate' in this context implies purposeful conduct, which means that the defendant 'actually knows a breach of fiduciary duty is occurring and participates with *mens rea* in the consummation of the breach . . . [in order to be] held liable for aiding and abetting the breach.'" *St. Paul Fire & Marine Ins. Co. v. Hoskins*, No. 5:10-cv-087, 2012 U.S. Dist. LEXIS 30770 at *16 (W.D. Va. Mar. 7, 2012) (quoting *Halifax Corp.*, 604 S.E.2d at 411-12).

Here, Plaintiffs fail to allege that the Apple REIT Affiliates had actual knowledge of and participated in the Apple REIT Individual Defendants' purported breach of fiduciary duty. Plaintiffs merely make the conclusory allegation that "[t]he Apple REIT Entity Defendants aided and abetted the Individual Apple REIT Defendants' breach of fiduciary duties to Plaintiffs and class members, in that they knew about and substantially assisted in or encouraged the breach."

18

(Compl. ¶ 242).  Plaintiffs allege no facts concerning who supposedly did what to participate in the purported breach.  For example, there is no allegation of any purposeful conduct by Apple Suites Realty Group, which "provides brokerage services to the Apple REITs" (Compl. ¶ 14), in furtherance of the alleged breach of fiduciary duty.  Plaintiffs do not explain what the real estate brokerage company did to "assist or encourage" the officers and directors in "failing to disclose information about the prior Apple REITs . . . and negligently making numerous false and misleading misrepresentations . . . about the $11 per share valuation, the expected distributions, and the REITs' true economic performance."  (Compl. ¶ 240).  Without specific allegations of how Apple Suites Realty participated in the alleged breach, the aiding and abetting claim should be dismissed against this defendant.  Similarly, specific allegations of purposeful conduct by the other entity defendants are absent.  Plaintiffs' "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" are insufficient to state a claim.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *see also Scottrade, Inc. v. Broco Invs., Inc.*, 774 F. Supp. 2d 573, 577 (S.D.N.Y. 2011).

> **3.      Plaintiffs fail to state a claim against the Apple REIT Individuals and Affiliates for aiding and abetting DLA's alleged breaches of fiduciary duty.**

To state a claim that all Apple REIT Defendants aided and abetted DLA's alleged breaches of fiduciary duty, Plaintiffs must allege that each Apple REIT Defendant had actual knowledge of and participated in DLA's purported breach of fiduciary duty.  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006).  Plaintiffs attempt to meet this requirement by alleging, in conclusory fashion, only that "[t]he Apple REIT Defendants also aided and abetted the DLA Defendants' breach of fiduciary duties to Plaintiffs and class members, in that they knew about and substantially assisted in or encouraged the breach."  (Compl. ¶ 243).  On this basis, Plaintiffs seek to hold liable each and every Apple REIT Defendant for alleged breach of

fiduciary duty by the DLA Defendants.  However, simply alleging knowledge of the breaches of fiduciary duty in this conclusory fashion is not sufficient.  *Lerner*, 459 F.3d at 292-93; *Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 339 (S.D.N.Y. 2005) (plaintiff must allege aider-abettor's actual knowledge).

Plaintiffs fail to plead adequately that any Apple REIT Defendant had actual knowledge of the breach of fiduciary duty alleged to have been committed by the DLA Defendants, much less that any Apple REIT  Defendant participated in the alleged breach.  Accordingly, Plaintiffs' claim against the Apple REIT Defendants for aiding and abetting DLA's alleged breach of fiduciary duty should be dismissed.

### D.     The Unjust Enrichment Claim Fails as a Matter of Law.

Plaintiffs level their unjust enrichment claim (Count 8) against all "Defendants." (Compl. ¶¶ 245-50).  To successfully plead it, they must allege that (1) each defendant obtained some benefit, (2) at Plaintiffs' expense, and (3) the defendants' continued retention of that benefit would be unjust.  *Dolmetta v. Uintah Nat'l Corp.*, 712 F.3d 15, 20 (2d Cir. 1983); *Calderon v. Saxton,* No. 3:03-cv-1566 (CFD), 2007 U.S. Dist. LEXIS 69545, at *15-16 (D. Conn. Sept. 21, 2007); *Grp. Assets, LLC v. Fortress Inv. Grp.*, No. 8:09-cv-1530-T-33EAJ, 2010 U.S. Dist. LEXIS 75201, at *12-13 (S.D. Fla. Jun. 22, 2010).  Plaintiffs fail to allege each element of this cause of action.

First, it is axiomatic that an unjust enrichment claim requires an allegation that the defendant obtained "enrichment" or some other benefit *from the plaintiff*.  Plaintiffs fail to allege certain defendants received any benefit at all in connection with the sale of units.[9]  There is no

---

[9] Plaintiffs' summary allegation that "Defendants" were unjustly enriched (Compl. ¶ 246) cannot support their claim by itself.  *See Coakley v. Jaffe*, 49 F. Supp. 2d 615, 624 n.6 (S.D.N.Y. 1999) (similar allegations too vague to state a claim).

allegation that any Director Defendant received anything from anyone, let alone an unjust benefit from Plaintiffs. (Compl. at ¶¶ 40-49). Plaintiffs also neglect to allege that Bryan Peery, Apple REITs' CFO, received any benefit from them or anyone else. (*Id*. at ¶ 39). Having failed to allege that these defendants received any benefit whatsoever from Plaintiffs, the unjust enrichment claims against the Directors and Peery cannot leave the starting gate.

Second, to sustain an unjust enrichment claim, any benefit must also be conferred upon the defendant from the plaintiff. *See In re Rezulin Prods. Liab. Litig*., 392 F. Supp. 2d 597, 619 (S.D.N.Y. 2005); *Sperry v. Crompton Corp*., 810 N.Y.S.2d 498, 500 (N.Y. App. Div. 2006), *aff'd*, 863 N.E.2d 1012, 1018 (N.Y. 2007); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So.2d 322 (Fla. Dist. Ct. App. 2007); *Zeigler v. Sony Corp. of Am.*, 849 A.2d 19, 25 (Conn. Super. Ct. 2004); *Shenandoah Assocs. Ltd. P'ship v. Tirana*, 182 F. Supp. 2d 14, 24 (D.D.C. 2001) (applying Virginia law). Plaintiffs have not alleged that they dealt directly with any Individual or Affiliate Defendant, or that any Individual or Affiliate Defendant received any benefit from any Plaintiff.

Third, even in the few instances where the Complaint succeeds in pleading that a defendant obtained a benefit, it fails in pleading that the benefit was obtained unjustly. Plaintiffs allege, for instance, that Apple Suites Realty receives 2% commission on purchases of properties, but there is no allegation that this benefit was not fairly earned for services actually rendered. (Compl. at ¶¶ 96, 121). Similarly, there is no allegation that Glade Knight, Apple REITs' founder and CEO, received any unjust benefit. (*Id*. at ¶¶ 33, 96).

Finally, Plaintiffs cannot allege that the Apple REIT Defendants were enriched "at the plaintiff[s'] expense" because Plaintiffs have not alleged any losses. *Dolmetta*, 712 F.3d at 20 (applying New York law and dismissing unjust enrichment claim based on plaintiffs' failure to

allege that the defendants were enriched at plaintiffs' expense); *see also Calderon,* 2007 U.S. Dist. LEXIS 69545 at *15-16 (D. Conn. Sept. 21, 2007) (noting elements of unjust enrichment claim and dismissing plaintiff's unjust enrichment claim because Plaintiff received what he bargained for); *Grp. Assets, LLC*, 2010 U.S. Dist. LEXIS 75201, at *12-13 (dismissing unjust enrichment claim because Plaintiffs did not allege which defendant received a benefit or that Plaintiffs actually conferred a benefit on defendants).

All told, Plaintiffs do not allege (1) that certain defendants were enriched, (2) that Plaintiffs bestowed any benefit on any Individual or Affiliate Defendant, (3) that defendants obtained any benefit unjustly, and (4) that any benefit was obtained at Plaintiffs' expense.  These failures require dismissal of Count 8 with regard to each Individual and Affiliate Defendant.

**E.      Plaintiffs Fail to State A Claim For Negligence.**

Plaintiffs allege that DLA was negligent in selling Apple REIT Units and that all of the Apple REIT Defendants are jointly and severally liable "because the DLA Defendants were agents of and acting within the scope of their agency with the Apple REIT Defendants when they offered and sold the Apple REITs to Plaintiffs and Class members."  (Compl. ¶ 255).  Standing alone, this allegation is too nebulous to support an inference of an agency relationship between DLA and the Individual or Affiliate Defendants, *see Coakley v. Jaffe*, 49 F. Supp. 2d 615, 624 n.6 (S.D.N.Y. 1999) (allegations too vague to state a claim), and there is no support for the existence of such a relationship from the other allegations in the Complaint.  Plaintiffs' negligence claims (Count 9) are also barred by the economic loss rule, as discussed below.

**1.      The Apple REIT Individual and Affiliate Defendants are not alleged to have any agency relationship with DLA.**

The allegation that the Apple REIT Individual and Affiliate Defendants are responsible for DLA's supposed negligence is based on the faulty premises that (a) DLA acted negligently

and (b) DLA was the agent of the Apple REIT Individual or Affiliate Defendants.[10]  The

negligence claim fails for the additional reason that the Apple REIT Individual Defendants

cannot be jointly and severally liable for alleged negligence of DLA absent allegations of

knowledge or participation by the Apple REIT Individual or Affiliate Defendants.

     First, the Complaint does not state a claim against DLA for negligence for the reasons set

forth in detail in the DLA Memo at Section IV.

     Second, although DLA was the agent of various Apple REITs, there are no allegations in

the Complaint to suggest that DLA was the agent of the Apple REIT Individual or Affiliate

Defendants.  (*See, e.g.* Compl. ¶¶ 184, 187-194).  No direct relationship between the Apple REIT

Individual or Affiliate Defendants and DLA is alleged.  Indeed, Plaintiffs allege only that the

Apple REIT Individual and Affiliate Defendants controlled the Apple REITs, not DLA.  (*Id.* ¶¶

222, 226).  Because DLA is not alleged to be the agent or under the control of the Apple REIT

Individual or Affiliate Defendants, allegations of DLA's supposed misconduct cannot give rise

to any liability for the Apple REIT Individuals or Affiliates.

     Third, the agency relationship between DLA and the Apple REITs does not extend

derivative liability to the Apple REIT Individual or Affiliate Defendants.  The law is clear in all

the relevant jurisdictions that directors and officers have no personal liability even for the

negligence of their own corporation (much less for the negligence of an agent of their

corporation) without a showing that the individual was a direct participant in the corporation's

wrongful conduct.  *See Marketvision/Gateway Research, Inc. v. Priority Pay Payroll, LLC,* 2011

U.S. Dist. LEXIS 46767, *30 (D.N.J., May 2, 2011); *Emerson Enters., LLC v. Kenneth Crosby*

---

[10] Also, Plaintiffs Bendavid, Berger, Shefsky and Murray never invested in REITs Seven and
Eight, and Berger and Murray never invested in REIT 10, so there could be no derivative liability
of those REITS to the non-investing Plaintiffs.

*New York, LLC*, 781 F. Supp. 2d 166, 180 (W.D.N.Y. 2011) (applying "well-settled" New York law); *Scribner v. O'Brien, Inc.*, 363 A.2d 160, 168 (Conn. 1975); Fla. Stat. Ann. § 607.831(1). Here, the Apple REIT Individual Defendants are not alleged to have participated (directly or otherwise) in any supposed negligence of DLA, the Apple REITs' agent.  Plaintiffs have not alleged that any Apple REIT Individual or Affiliate Defendant directly participated in DLA's offer and sale of units, or had any dealings with DLA whatsoever.  Without allegations of personal involvement, the Apple REIT Individuals and Affiliates cannot be held liable for DLA's alleged negligence even if DLA was acting as the REITs' agent.[11]  Accordingly, Count 9 should be dismissed as to the Apple REIT Individual and Affiliate Defendants because the Complaint fails to plead an agency relationship between these defendants and DLA.

### 2.    The Economic Loss Rule bars Plaintiffs' negligence claims.

The economic loss rule bars recovery of purely economic loss in negligence actions.  As set forth in Apple REIT Memo at Section II(D)(2), Plaintiffs' claims in Count 9 are barred by the economic loss rule.

## III.    PLAINTIFFS' STATE SECURITIES LAW CLAIMS ARE INADEQUATE AS A MATTER OF LAW

The Connecticut and Florida state securities law claims asserted against the Apple REIT Individual and Affiliate Defendants are a mixed bag of claims asserting both primary and control person liability.  All of the claims should be dismissed for the same reasons the federal securities claims should be dismissed, plus a handful of additional reasons including standing (as to state law claims against Apple REIT Ten) and the fact that some of the state law claims are akin to

---

[11] The Complaint does not even establish that this relationship covers *DLA's* alleged conduct.  As explained in the Apple REIT Memo, the alleged behavior is expressly outside the scope of DLA's agency.  (*See* Apple REIT Memo at Section II(C)(1)).

federal 10(b)(5) claims, which require Plaintiffs to plead additional elements that have not been pleaded.

First, Counts 10, 11 and 13[12] assert primary securities law violations by the Individual and Affiliate Defendants.  All of these state securities law claims fail because they are based on the same alleged "misrepresentations" asserted in support of the federal securities law claims in Counts 1-3.  Because none of the alleged "misrepresentations" or omissions are actionable, Counts 10-13 also fail.  (Apple REIT Memo at Section III(B)).

Second, Count 12 asserts a control person claim against the Individual Defendants for alleged primary violations of the Apple REITs.  For the same reasons that the Section 15 control person claims fail, Count 12 should be dismissed as to the Individual Defendants.  (*See, supra*, Section I(B)).  And as with the Section 15 claims, to the extent that Count 12 attempts to hold the Individual Apple REIT Defendants liable for alleged violations of DLA and David Lerner, it should be dismissed, because like Section 15, Conn. Stat Ann. § 36b-29 also applies only where a defendant "directly or indirectly controls" a person liable for the primary violation.  *See, supra*, Section II(C)(4).

Third, the Connecticut and Florida plaintiffs both purport to bring the state securities law claims based on Apple REIT Ten purchases, but neither Laura Berger (Connecticut) nor William Murray (Florida) is alleged ever to have purchased or own Apple REIT Ten shares.  Plaintiffs Berger and Murray simply cannot maintain causes of action against the Directors of a REIT in

---

[12] Plaintiffs' Count 13 states in the heading that the count applies to Apple REIT Eight, Apple REIT Nine, Apple REIT Ten, Knight, DLA, and David Lerner.  However, Paragraph 280 appears to encompass *all* of the Individual Apple REIT Defendants: "As a directors [sic] and officers who participated in or aided in selling the Apple REITs, the Individual Apple REIT Defendants are jointly and severally liable to Plaintiff Murray and the Florida subclass."  (Am. Compl. ¶ 280.)  To the extent Count 13 includes the Individual Apple REIT Defendants, this claim should be dismissed.  (Apple REIT Memo at Section III (B, E)).

which they never invested.  Thus, the claims in Counts 11, 12 and 13 against the Apple REIT

Ten Directors should be dismissed.  (Apple REIT Memo at Section III(A)).

      <u>Fourth,</u> Count 11 should be dismissed as to the Individual Apple REIT Defendants

because the Directors and Officers are not subject to claims under Conn. Stat. Ann. § 36b-5.

Section 36b-5 applies only to "investment advisers and persons who solicit advisory business on

behalf of investment advisers."  Conn. Stat. Ann. § 36b-5.  None of the Apple REIT Individual

Defendants is alleged to have provided services as an investment advisor or solicited investment

advisory services or received compensation for such services.  (Apple REIT Memo at Section

III(D)).

      <u>Fifth,</u> the Connecticut claims asserted against the Apple REIT Individual Defendants

(Counts 10, 11, 12) also should be dismissed because they are time-barred to the extent they are

based on purchases made more than two years before the filing of the CUSA claims.[13]  Conn.

Stat. Ann. § 36b-29(f) states that a plaintiff must file a CUSA claim within two years from the

date of the investment contract.  Plaintiff Berger (the only plaintiff asserting claims in Counts 10,

11, 12) "purchased Apple REIT Eight shares in March and April 2008, and Apple REIT Nine

shares in July and August 2008 and in June, July and December 2009."  (Compl. ¶ 17).  Thus,

the Connecticut claims relating to Apple REIT Eight were all filed more than two years after the

purchases and are time-barred.  And the CUSA claims relating to Berger's purchases of Apple

REIT Nine occurring prior to June 18, 2009 also are time-barred.

      Finally, Plaintiffs' Florida Securities Act Claim in Count 13 fails because Plaintiffs have

not alleged "justifiable reliance," which is a requirement to sustain a claim under Fla. Stat.

---

[13] The CUSA and FSIPA claims were first asserted on October 10, 2011.  *See* Am. Compl. filed
10/10/2011, *Kronberg v. David Lerner Associates, Inc., et al.,* 11-cv-03558-KSH-PS (D.N.J.
June 20, 2011).  However, for purposes of this motion, we assume, arguendo, that the CUSA and
FSIPA claims relate back to the June 17, 2011 filing of the initial complaint in this matter.

§ 517.301.  *See First Union Brokerage v. Milos*, 717 F. Supp. 1519, 1524-1525 (S.D. Fla. 1989);

Apple REIT Memo at Section III(E).

## IV.  MANY OF PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.

As discussed in the Apple REIT Memo, certain Plaintiffs' Section 12(a)(2) claims against

Apple REIT Nine, as well as Plaintiffs' breach of fiduciary duty, aiding and abetting a breach of

fiduciary duty, and certain state securities law claims are time-barred because Plaintiffs knew, or

should have known, of each of the alleged false or misleading statements well before the

applicable statute of limitations expired.  Accordingly, the Section 15 claims in Count 3,

premised upon a Section 12(a)(2) violation, are also time-barred.  In addition, Plaintiffs' Section

12(a)(2) claims arising from shares purchased before June 17, 2008 are time-barred and should

be dismissed.  (Apple REIT Memo Section IV(B)).

## V.  BECAUSE ADAMS DID NOT SIGN THE OFFERING DOCUMENTS, HE SHOULD BE DISMISSED.

David J. Adams was not named in the original complaints and did not become an Apple

REIT Ten director until July 2011.  (Compl. ¶ 49).  He is alleged to have signed two Post-

Effective Amendments to the Apple REIT Ten Prospectus.  Nothing in these supplements is

alleged as the basis for any of Plaintiffs' claims.  Accordingly, Adams can have no liability for

any of the claims asserted and should be dismissed from the Complaint.

## CONCLUSION

For the reasons stated above, and in the Motions to Dismiss of the Apple REIT Defendants and the DLA Defendants, the Apple REIT Individual and Affiliate Defendants respectfully request the Court dismiss all claims against them with prejudice.

Dated:  April 18, 2012                     Respectfully submitted,


                              _____/s/_____
                              Marshall Beil
                              McGUIREWOODS LLP
                              1345 Avenue of the Americas, 7th Floor
                              New York, NY 10105-0106
                              Telephone: (212) 548-7004

                              Elizabeth F. Edwards
                              McGUIREWOODS LLP
                              One James Center
                              901 East Cary St.
                              Richmond, VA 23219-4030
                              Telephone: (804) 775-4390

                              Charles Wm. McIntyre
                              McGUIREWOODS LLP
                              Washington Square
                              2001 K St. N.W. Suite 400
                              Washington, D.C. 20006-1040
                              Telephone: (202) 857-1742

                              *Attorneys for Defendants Glenn W. Bunting, Kent*
                              *W. Colton, Michael S. Waters, Robert M. Wily,*
                              *Garnett Hall, Jr., Anthony Francis "Chip"*
                              *Keating, David J. Adams, Glade M. Knight, Bryan*
                              *Peery, Apple Suites Realty Group, Inc., Apple Eight*
                              *Advisors, Inc., Apple Nine Advisors, Inc., Apple*
                              *Ten Advisors, Inc. and Apple Fund Management,*
                              *LLC*

_____/s/_____
Gregory S. Bruch
Sandra M. Hanna
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC 20006
Telephone:  (202) 303-1230

*Attorneys for Defendants Bruce H. Matson and
Ronald A. Rosenfeld and Lisa B. Kern*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2012, the foregoing document was served on the following via e-mail:

Daniel C. Girard
Amanda M. Steiner
Christina C. Sharp
Janice S. Yi
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
dcg@girardgibbs.com
chc@girardgibbs.com

Jacob H. Zamansky
Edward H. Glenn, Jr.
Kevin D. Galbraith
**ZAMANSKY & ASSOCIATES, LLC**
50 Broadway, 32nd Floor
New York, NY 10004
jake@zamansky.com

*Lead Plaintiffs' Counsel and Interim Class Co-Counsel*

David P. Meyer
Matthew R. Wilson
**MEYER WILSON CO., LPA**
1320 Dublin Road, Suite 100
Columbus, OH 43215
dmeyer@meyerwilson.com

*Additional Plaintiffs' Counsel*

Kenneth I. Schacter
Derek Care
**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, NY 10022-4689
kenneth.schacter@bingham.com
derek.care@bingham.com

Michael D. Blanchard
**BINGHAM McCUTCHEN LLP**
One State Street
Hartford, CT 06103-3178
michael.blanchard@bingham.com

*Attorneys for Defendants David Lerner Associates, Inc. and David Lerner*

__/s/ Elizabeth F. Edwards__
Elizabeth F. Edwards
McGUIREWOODS LLP
901 East Cary St.
Richmond, VA 23219-4030
eedwards@mcguirewoods.com