**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

————————————————————

)
)
)
**IN RE APPLE REITs LITIGATION**      )       **No. 11-cv-02919-KAM-JO**
)
)
)

————————————————————

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE APPLE REITS'
MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

Elizabeth F. Edwards
McGUIREWOODS LLP
One James Center
901 East Cary St.
Richmond, VA 23219-4030
Tel.: (804) 775-4390
eedwards@mcguirewoods.com

Charles Wm. McIntyre
McGUIREWOODS LLP
Washington Square
2001 K St. N.W. Suite 400
Washington, D.C. 20006-1040
Tel.: (202) 857-1742
cmcintyre@mcguirewoods.com

Marshall Beil
McGUIREWOODS LLP
1345 Avenue of the Americas, 7th Floor
New York, NY 10105-0106
Tel.: (212) 548-2100
mbeil@mcguirewoods.com

*Attorneys for Defendants Apple REIT Six,
Inc., Apple REIT Seven, Inc.,  Apple REIT
Eight, Inc., Apple REIT Nine, Inc., and
Apple REIT Ten, Inc.*

July 13, 2012

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................3

    I.      Plaintiffs' Federal Securities Claims Should be Dismissed ...................................3

           A.      Plaintiffs' Alleged Misrepresentations and Omissions are Insufficient to Support Any of the Securities Claims...............................3

           B.      Plaintiffs Do Not Allege Any Loss Whatsoever .......................................4

           C.      Plaintiffs' Remaining Allegations are Classic "Corporate Mismanagement."..................................................................................4

           D.      Defendants Have Established the Absence of Loss Causation..................5

           E.      Plaintiffs' Section 12(a)(2) Claims against Apple REIT Nine are Barred by Applicable Statutes of Limitations ...........................................7

    II.      Plaintiffs' Common Law Claims Are Also Subject to Dismissal ..........................8

           A.      Plaintiffs' Count 7 – Aiding and Abetting DLA's Breach of Fiduciary Duty – Should Be Dismissed .........................................8

           B.      Plaintiffs' Count 8 – Unjust Enrichment – Should Be Dismissed.............9

           C.      Plaintiffs' Count 9 – Negligence – Should Be Dismissed.......................10

    III.      Plaintiffs' State Securities Claims Should Be Dismissed....................................12

           A.      Connecticut Section 36b-5 Applies Only to "Investment Advisors." ......12

           B.      Plaintiff Murray Fails to Allege "Justifiable Reliance," a Required Element of a Section 517.211(2) Claim ...............................13

           C.      It is Undisputed that Plaintiffs' State Securities Claims are Barred by the Statutes of Limitations ...............................13

    IV.      Plaintiffs Lack Standing to Assert Claims Arising From Apple REITs in Which They Did Not Invest....................................................14

    V.      Plaintiffs' Request for Leave to Amend Should be Denied.................................15

CONCLUSION ...............................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009) ................................................................ 14

*Adams v. Labaton, Sucharow & Rudoff, LLP*,
   2009 U.S. Dist. LEXIS 35085 (S.D.N.Y. Mar. 30, 2009) ..................................... 11

*Amorosa v. AOL Time Warner, Inc.*,
   409 Fed. App'x 412 (2d Cir. 2011) ..................................................................... 6

*Anwar v. Fairfield Greenwich Ltd.*,
   826 F. Supp. 2d 578 (S.D.N.Y. 2011) ................................................................ 13

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ......................................................................................... 3

*Bd. of Trs. of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011) ................................................................ 16

*Brown v. E.F. Hutton Group, Inc.*,
   991 F.2d 1020 (2d Cir. 1993) ............................................................................ 11

*Business Integration Services, Inc. v. AT&T Corp.*,
   251 F.R.D. 121 (S.D.N.Y. 2008) ....................................................................... 11

*E.F. Hutton & Co., Inc. v. Rousseff*,
   537 So. 2d 978 (Fla. 1989) .............................................................................. 13

*First Union Discount Brokerage Servs., Inc. v. Milos*,
   997 F.2d 835 (11th Cir. 1993) .......................................................................... 13

*Grossman v. Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997) ......................................................................... 3

*Heil v. Lebow*,
   1994 U.S. Dist. LEXIS 16236 (S.D.N.Y. Nov. 14, 1994), *aff'd*, 1995 U.S. App.
   LEXIS 39921 (2d Cir. Dec. 12, 1995) ................................................................ 3

*Hevesi v. Citigroup, Inc.*,
   366 F.3d 70 (2d Cir. 2004) ............................................................................... 14

*In re AIG Advisor Group Sec. Litig.*,
   2007 U.S. Dist. LEXIS 30179 (E.D.N.Y. Apr. 25, 2007) ....................................... 15

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
   2005 U.S. Dist. LEXIS 24263 (S.D.N.Y. Oct. 19, 2005)......................................................15

*In re Columbia Entities Litig.*,
   2005 U.S. Dist. LEXIS 33439 (D. Mass. Nov. 30, 2005) .....................................................15

*In re Dreyfus Aggressive Growth Mutual Fund Litigation*,
   2000 U.S. Dist. 13469 (S.D.N.Y. Sept. 19, 2000)................................................................14

*In re Dynex Capital, Inc. Sec. Litig.*,
   2009 U.S. Dist. LEXIS 96527 (S.D.N.Y. Mar. 7, 2011) .......................................................14

*In re Eaton Vance Corp. Sec. Litig.*,
   220 F.R.D. 162 (D. Mass. 2004) ..........................................................................................15

*In re Initial Pub. Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003) .....................................................................................4

*In re Metro. Secs. Litig.*,
   532 F. Supp. 2d 1260 (E.D. Wash. 2007)..............................................................................14

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
   441 F. Supp. 2d 579 (S.D.N.Y. 2006) ...................................................................................15

*In re Sec. Capital Assur. Ltd. Secs. Litig.*,
   2011 U.S. Dist. LEXIS 112926 (S.D.N.Y. Sept. 23, 2011) ....................................................6

*In re State St. Bank & Trust Co. Fixed Income Funds Invs. Litig.*,
   774 F. Supp. 2d 584 (S.D.N.Y. 2011) ................................................................................6, 7

*In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*,
   941 F. Supp. 326 (S.D.N.Y. 1996) .........................................................................................3

*Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.*,
   620 F.3d 137 (2d Cir. 2010) ...............................................................................................5, 6

*Jones v. Childers*,
   No. 88-85-CIV-T-22C, 1992 U.S. Dist. LEXIS 19430 (M.D. Fla. June 26, 1992*),
   aff'd in part, rev'd in part on other grounds*, 18 F.3d 899 (11th Cir. 1994) .........................13

*Kashner Davidson Secs. Corp. v. Desrosiers*,
   689 So. 2d 1106 (Fla. Ct. App. 1997) ..................................................................................13

*Lasker v. N.Y. State Elec. & Gas Corp.*,
   1995 U.S. Dist. LEXIS 21468 (E.D.N.Y. Aug. 22, 1995), *aff'd*, 85 F.3d 55 (2d Cir.
   1996)........................................................................................................................................3

*Lentell v. Merrill Lynch & Co.*,
   396 F. 3d 161 (2d Cir. 2005) ................................................................. 6

*Lucente v. Int'l Bus. Machs. Corp.*,
   310 F.3d 243 (2d Cir. 2002) ................................................................ 16

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
   722 F. Supp. 2d 1157 (C.D. Cal. 2010) ............................................... 15

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   U.S. Dist. LEXIS 47512 (S.D.N.Y. 2010) ........................................... 14

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*,
   478 F. Supp. 2d 496 (S.D.N.Y. 2007) ................................................... 9

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan
   Acceptance Corp.*,
   2012 U.S. Dist. LEXIS 24106 (E.D.N.Y. Feb. 23, 2012) ..................... 15

*Plumbers Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
   632 F.3d 762 (1st Cir. 2011) ................................................................ 15

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co.*,
   75 F.3d 801 (2d Cir. 1996) ..................................................................... 3

*Searls v. Glasser*,
   64 F.3d 1061 (7th Cir. 1995) .................................................................. 3

*Star Energy Corp. v. RSM Top-Audit*,
   2008 U.S. Dist. LEXIS 99825 (S.D.N.Y. Nov. 26, 2008) ..................... 10

*Starr v. Sony BMG Music Entmt.*,
   592 F.3d 314 (2d Cir. 2010) ................................................................... 3

*Waters v. Int'l Precious Metals Corp.*,
   172 F.R.D. 479 (S.D. Fla. 1996) .......................................................... 13

*Winford v. Advest, Inc.*,
   2000 Conn. Super. LEXIS 3598 (Conn. Super. Ct. Dec. 19, 2000) ....... 12

**STATUTES**

15 U.S.C. § 77o ............................................................................................................................5

15 U.S.C. § 77k ...............................................................................................................3, 4, 5, 14

15 U.S.C. § 77l ........................................................................................................................5, 7, 8

CONN. GEN. STAT. § 36b-3 ..............................................................................................................12

CONN. GEN. STAT. § 36b-5(a) .....................................................................................................12, 13

CONN. GEN. STAT. § 36b-29(f) ........................................................................................................13

Fed. R. Civ. P. 23(b)(3) ................................................................................................................14

FLA. STAT. § 517.301 .....................................................................................................................13

**INTRODUCTION**

This case is not about misrepresentations or omissions.  It is not a disclosure of risk case either.  The Complaint, at most, alleges corporate mismanagement.  Such allegations, even if sufficiently alleged (and they are not), do not constitute violations of federal or state securities law.

Plaintiffs' Opposition to the Motions to Dismiss[1] illustrates the fragility and fallibility of their claims.  Plaintiffs attempt to avoid dismissal, not by addressing the legal merits of the various grounds for dismissal raised in defendants' three separate motions, but largely by restating their Complaint in narrative form.  But applying the law to the facts and claims as alleged – whether in numbered paragraphs or otherwise – requires dismissal of the claims.

<u>First</u>, Plaintiffs allege no "loss" whatsoever, a defect fatal to each of their claims.  It is fundamental to any claim that a plaintiff must have suffered some sort of damage.  They have not here.  (*See* Apple REIT Memo. 17-18).

<u>Second</u>, Plaintiffs claim that the Apple REITs' investment objectives were false and misleading.  (*See* Pl. Memo. 23-28).  However, each of the Apple REITs' investment objectives – "achieving long-term growth in cash distribution to shareholders," "acquiring real estate," "acquire fee ownership of our properties," "seek[ing] to maximize current and long-term net income and value of assets," "acquir[ing] assets where opportunity for investment returns exist," and "pursu[ing] our objectives primarily through direct ownership," –  are all broad statements of intent and are consistent with the actions defendants have taken.  Plaintiffs point to no facts that suggest otherwise.  Rather, they claim that defendants should have done better and their choices of investments were not wise.  That is not a securities claim, however.

_____
[1] Plaintiffs' Memorandum of Law In Opposition to Defendants' Motions to Dismiss the Consolidated Complaint is cited herein as "Pl. Memo."

Third, Plaintiffs claim that they were not warned of the inherent risks of investing in the Apple REITs (Pl. Memo. 22), yet *each and every risk* Plaintiffs point to was specifically disclosed in the offering documents.  (*See* Apple REIT Memo. 2-3).  These disclosures include that (i) distributions may be paid through sources other than operating income; (ii) prior Apple REITs had paid dividends through sources other than operating income; (iii) the price is arbitrary and shareholders may be paying more than what the shares are actually worth if listed on an exchange; (iv) because the shares do not trade on a market, shareholders will not have reliable information as to the value of shares; (v) the shares are illiquid and long-term growth investments; and (vi) shares may or may not be redeemed depending on market conditions.  (*Id.*)  Plaintiffs are reduced to arguing that when the offering documents said "may" they should have said "would likely" – a distinction without a legal difference.

Fourth, Plaintiffs argue that the purported misstatements and risk disclosures must be viewed "in context" and not as isolated statements.  (Pl. Memo. 22).  However, Plaintiffs then proceed to isolate individual statements they claim to be misleading (*see* Amended Appendix F), ignore the risk disclosures and warnings that were also made, and argue incorrectly and without legal support against the inclusion of any other information and/or material that was made available to shareholders.  (*See* Pl. Memo. 27-30, 33, 38; *see also* Amended Appendix F).

Fifth, Plaintiffs claim that the Apple REITs' true intention was to "increase their own profits" at the expense of shareholders.  (Pl. Memo. 23).  Yet, the Complaint's single theme alleges the opposite:  the Apple REITs paid shareholders *too much* in distributions.  (*Id.*)  The Apple REITs are in the unique position of being sued by shareholders for purportedly paying out excessive distributions while simultaneously being accused of mismanaging the pool of investment capital at the expense of shareholders.  Such a contention is logically untenable.

In the end, the form of plaintiffs' Memorandum is indicative of their strategy.  By responding to three separate and distinct motions to dismiss in a single brief, plaintiffs attempt to blur the lines among the various parties, claims, defenses, and legal issues in the hope that the defects in their claims will escape careful scrutiny.  It does not wash.  Each claim should be dismissed on its merits.[2]

## ARGUMENT

## I.     PLAINTIFFS' FEDERAL SECURITIES CLAIMS SHOULD BE DISMISSED.

### A.     Plaintiffs' Alleged Misrepresentations and Omissions are Insufficient to Support Any of the Securities Claims.

Plaintiffs allege four types of misstatements or omissions in support of their Section 11 and 12 claims, concerning investment objectives, distribution sources, value, and prior performance.  Plaintiffs list and explain these statements on a chart originally attached as Appendix F to their Complaint and then amended and attached as Exhibit A to the Sharp Declaration.  The Apple REITs have annotated plaintiffs' chart to demonstrate that none of the statements upon which plaintiffs rely are sufficient to support any securities law claim.[3]  This chart demonstrates that the statements plaintiffs identify concern information that was fully and completely disclosed or are not otherwise actionable as a matter of law. To summarize:

---

[2] For the Court's convenience, a chart summarizing the grounds for dismissal of each count brought against any of the Apple REIT defendants is attached as Exhibit P to the Declaration of Elizabeth F. Edwards in Support of the Apple REIT Defendants' Reply Memorandum ("Edwards Reply Decl.").

[3] *See* Exh. O to Edwards Reply Decl.  *See also Lasker v. N.Y. State Elec. & Gas Corp.*, 1995 U.S. Dist. LEXIS 21468, at *9 (E.D.N.Y. Aug. 22, 1995), *aff'd*, 85 F.3d 55 (2d Cir. 1996); *In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*, 941 F. Supp. 326, 338-339 (S.D.N.Y. 1996); *see also Heil v. Lebow*, 1994 U.S. Dist. LEXIS 16236, at *16-17 (S.D.N.Y. Nov. 14, 1994), *aff'd*, 1995 U.S. App. LEXIS 39921, at *1 (2d Cir. Dec. 12, 1995); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 811 (2d Cir. 1996); *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir. 1995); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997); *Starr v. Sony BMG Music Entmt.*, 592 F.3d 314, 321 (2d Cir. 2010).

- The investment objectives are not actionable because they are goals – *not* promises – and they are general and indefinite statements.

- The Apple REITs' offering documents clearly, sufficiently – and repeatedly – disclosed that distributions may be funded from sources other than operating income.

- The Apple REITs did not misstate the shares' $11 per share "value" because the price of the shares in this blind pool offering was arbitrarily set, and this fact was disclosed.

- Statements concerning the past performance of earlier Apple REITs were accurate and accompanied by sufficient cautionary language.[4]

**B.      Plaintiffs Do Not Allege Any Loss Whatsoever.**

Plaintiffs continue to dance around the fact that they do not – and cannot – allege a loss. In their Memorandum, they fail to address this issue entirely, instead focusing only on loss *causation*, a wholly separate and different legal inquiry (and an additional and independent basis to dismiss the federal securities claims. (Pl. Memo. 41-46). Ultimately, plaintiffs cannot avoid the fact that they continue to hold their Apple REIT shares and receive regular distributions from their investments. Simply put, they have suffered no damages and there is no loss to allege. Absent such a loss, plaintiffs' claims should be dismissed. *See In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 347 (S.D.N.Y. 2003) ("If a plaintiff has no conceivable damages under Section 11, she cannot state a claim upon which relief can be granted and her Section 11 claims must be dismissed."). This ground alone is a sufficient basis to dismiss the entire Complaint.

**C.      Plaintiffs' Remaining Allegations are Classic "Corporate Mismanagement."**

Plaintiffs do not dispute that claims of corporate mismanagement are not actionable under the federal securities laws, nor do they dispute that the bulk of their allegations are claims of

---

[4] As discussed more fully in DLA's Reply, plaintiffs' argument that the Apple REIT offering documents "do not comply" with Guide 5 of the Securities Act Industry Guidelines ("Guide 5") is irrelevant because Guide 5 has been held to impose no legal obligations on the REITs and, notwithstanding this fact, the Apple REIT offering documents fully comply with Guide 5. (*See* DLA Reply 10 fn. 11).

corporate mismanagement.  (*See* Pl. Memo. 39-40).  Instead, plaintiffs argue that allegations of corporate mismanagement do not defeat an otherwise properly pleaded federal securities claim based on an actionable misrepresentation or omission.  (Pl. Memo. 40).  However, plaintiffs have not pleaded an actionable, material misrepresentation or omission under the federal securities laws.  Stripped of its purported "misrepresentation" allegations, all that remains in the Complaint are allegations of corporate mismanagement, including complaints that the hotels purchased by the Apple REITs did not generate sufficient income, their cap rates were too low, and the purchase prices were too high.  (Compl. ¶¶ 120-140, 150-160, 165-166).  At best, plaintiffs allege that defendants did not do their jobs well,[5] but that does not violate the securities laws.  Defendants' alleged failure to implement their intentions to plaintiffs' satisfaction does not make their statements of intention misstatements, nor in any way actionable.  (*See* Apple REIT Memo. 16-17).

As plaintiffs concede, allegations of corporate mismanagement – by themselves – are insufficient to sustain a claim under the federal securities laws.  (Pl. Memo. 39-41).  Because plaintiffs have not alleged an actionable misstatement or omission, and because their remaining allegations are only claims of mismanagement, plaintiffs' federal securities claims should be dismissed.

**D.      Defendants Have Established the Absence of Loss Causation.**

Plaintiffs' claims should be dismissed because the defendants have shown that the absence of loss causation is apparent on the face of the Complaint.[6]  (Apple REIT Memo. 18-20;

---

[5] For example, the Offering Documents explicitly provide that "distributions will be at the discretion of our board of directors," but the crux of plaintiffs' complaints is that the directors used this discretion to make distributions to shareholders that were too high.  (Pl. Memo. 3-4, 10-14, 23, 29-31, 36-37, 45; *compare* Exh. O to Edwards Reply Decl.).

[6] Contrary to plaintiffs' position (Pl. Memo. 42), federal securities claims are often dismissed on the basis of a showing of the absence of loss causation.  *See, e.g., Iowa Pub. Emps.' Ret. Sys. v.*

DLA Memo. 26-29).  In this Circuit, "our precedents make clear that loss causation has to do with the relationship between the plaintiff's investment loss and the information misstated or concealed by the defendant."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005). In this case, there can be no such relationship.

First, plaintiffs have alleged no loss and suffered no damages – therefore, there is no loss to have been *caused.*

Second, as plaintiffs allege, there is no trading market to set the value of the Apple REIT shares.  (Compl. ¶¶ 3, 112).  Rather, the Apple REITs are illiquid, long term investments whose values derive from the values of the underlying hotel businesses the REITs hold.  (*Id.*; *see also* Apple REIT Memo. 4, 19).  These facts alleged by plaintiffs establish the utter lack of loss causation because none of the purported misstatements or omissions alleged by plaintiffs – which concern investment objectives, source of distributions, initial purchase price and past performance of earlier REITs – are related to the value of the underlying hotels.  Thus, any such misstatements or omissions could not have *caused* a loss in the value of these hotels.  The very nature of plaintiffs' claim thus establishes the affirmative defense of the absence of loss causation.

---

*MF Global, Ltd.*, 620 F.3d 137, 139, 145 (2d Cir. 2010) (affirming grant of motion to dismiss Section 11, Section 12(a)(2), and Section 15 claims because defendant demonstrated the absence of loss causation as an affirmative defense); *Amorosa v. AOL Time Warner, Inc.*, 409 F. App'x 412, 414, 416-17 (2d Cir. 2011) (affirming dismissal of Section 11 claim at motion to dismiss stage because absence of loss causation was evident on the face of the complaint); *In re Sec. Capital Assur. Ltd. Secs. Litig.*, 2011 U.S. Dist. LEXIS 112926, at *23-24 (S.D.N.Y. Sept. 23, 2011) (granting motion to dismiss Section 11, Section 12(a)(2), and Section 15 claims for same); *In re State St. Bank & Trust Co. Fixed Income Funds Invs. Litig.*, 774 F. Supp. 2d 584, 585, 595-96 (S.D.N.Y. 2011) (granting motion to dismiss Sections 11, 12(a)(2), and 15 securities claims because defendants satisfied "their burden of pleading facially apparent negative loss causation").

Plaintiffs urge this Court to "lend little credence" to *In re State St. Bank & Trust Co. Fixed Income Funds Invs. Litig.*, 774 F. Supp. 2d 584, 596 (S.D.N.Y. 2011), in favor of the analyses of district courts in Colorado, California, and Massachusetts.  (Pl. Memo. 42-44).  In *State Street*, Judge Holwell carefully analyzed loss causation, concluding that "Both *Lentell* and *Dura*, however, articulate that the disclosure of facts hidden by the material misstatement, whether by a 'corrective disclosure' theory or by a 'materialization of the risk' theory, must negatively affect the value of the security."  *Id.* at 590.  He then held that "where the [value of the security] does not react to any misstatements in the [security's] prospectus, no connection between the alleged material misstatement and a diminution in the security's value has been or could be alleged."  *Id.* at 596.  Judge Holwell considered the reasoning of the cases advanced by plaintiffs and found it flawed:  "It is the causal connection between the misrepresentation and the drop in the value of the security that Congress put in the statutes' text, and the policy arguments advanced by *Schwab* and its progeny are unavailing in the face of that text."  *Id.* at 595.  As in *State Street,* there can be no connection between the misstatements or omissions alleged by plaintiffs here and any purported loss in value of the Apple REITs due to the lack of any trading market to set values and react to "corrective disclosures."  Accordingly, the affirmative defense of the absence of loss causation is established from the face of plaintiffs' Complaint.

### E.       Plaintiffs' Section 12(a)(2) Claims against Apple REIT Nine are Barred by Applicable Statutes of Limitations.

Plaintiffs seek to impose an exact, clear-cut – and obviously convenient – date on which their claims accrued for purposes of the statute of limitations:  May 27, 2011, the date the FINRA complaint was filed.  However, to apply this opportune date requires ignoring myriad information in various forms that were available to plaintiffs and which would have put a reasonably diligent investor on notice of his or her claims.  (*See* Apple REIT Memo. 30-32).  As

described in detail in the Apple REITs' Memorandum, as early as 2004, plaintiffs were on notice that: (i) they received regular dividends of approximately 7-8%; (ii) the dividend payments were sourced through a combination of operating revenue, debt, and return of investor capital, pursuant to the prospectuses; (iii) the hotel industry, which served as the primary if not sole source of REIT investments, was experiencing economic challenges as a whole; (iv) the book value of Apple REIT Nine shares had consistently been reported as less than $11 per share; and (v) the Apple REITs maintained an $11 share purchase price.  (Apple REIT Memo. 31-32). Because these facts were or should have been well-known to plaintiffs well in advance of the filing of the FINRA complaint, and certainly more than one year before their first complaint was filed, plaintiffs' Section 12(a)(2) claims are barred as untimely.

Furthermore, plaintiffs do not even address the Apple REITs' argument that the statute of repose bars plaintiffs' Section 12(a)(2) claims for shares purchased before June 17, 2008, which includes shares purchased by plaintiffs Bendavid and Kronberg.  (Apple REIT Memo. 32-33). Because plaintiffs do not dispute that the statute of repose bars their Section 12(a)(2) claims for shares purchased before June 17, 2008, those claims should be dismissed.

## II.  PLAINTIFFS' COMMON LAW CLAIMS ARE ALSO SUBJECT TO DISMISSAL.

### A.  Plaintiffs' Count 7 – Aiding and Abetting DLA's Breach of Fiduciary Duty – Should Be Dismissed.

As discussed in the Reply of the Apple REIT Directors, Officers and Affiliates, as well as in the opening memoranda, the Complaint does not state a claim against any Apple REIT defendant for aiding and abetting DLA's purported breach of fiduciary duty.  Accordingly, Count 7 should be dismissed.[7]  (*See* Apple REIT Indiv. Reply 6-8).

---

[7] Additionally, plaintiffs do not dispute that their aiding and abetting DLA's purported breach of fiduciary duty claim is subject to a 3-year statute of limitations and, accordingly, this claim

**B.      Plaintiffs' Count 8 – Unjust Enrichment – Should Be Dismissed.**

The unjust enrichment claims in Count 8 should be dismissed because plaintiffs do not allege that the Apple REITs received any unjust benefit.  Plaintiffs' only allegation regarding any purported unjust enrichment is Paragraph 246 of the Complaint which states simply that "[b]y their wrongful acts and omissions alleged above, Defendants were unjustly enriched at the expense of and to the detriment of Plaintiffs and the class."  Outside of Paragraph 246, the Complaint alleges nothing more than that the Apple REITs received payment for shares from plaintiffs.

Additionally, plaintiffs' unjust enrichment claim fails because there can be no such claim based on an implied contract theory when an express contract governs the relationship of the parties.  (Apple REIT Memo. 21-22).  Plaintiffs cite multiple cases for the proposition that an unjust enrichment claim may lie even where an express contract exists; however, all of plaintiffs' cases involved instances where "the [express] contract does not govern the basis for the claim." (*See* Pl. Memo. 67).  Here, the relationships between plaintiffs and the defendants are governed *entirely by express contracts*.  (Apple REIT Memo. 21; DLA Memo. 33).  Each plaintiff entered into a Customer Agreement with DLA, as well as a Subscription Agreement with one or more of the Apple REITs.  Thus, because the bases of plaintiffs' claims are governed by the contracts between the parties, an implied contract theory is not available.  *See, e.g., Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 504-05 (S.D.N.Y. 2007) (holding that unjust enrichment theory is not available where express contract governed the subject matter, even "where one of the parties was not a party to the contract").

should be dismissed as time-barred against Apple REIT Six, Apple REIT Seven, Apple REIT Eight, and as to shares of Apple REIT Nine purchased before June 20, 2008.  (*See* DLA Memo. 32, fn. 41).

### C.   Plaintiffs' Count 9 – Negligence – Should Be Dismissed.

Plaintiffs try – and fail – to make the Apple REIT Defendants liable for the alleged negligence of DLA through theories of implied authority, apparent authority, and ratification.

DLA did not have implied authority to make the representations allegedly giving rise to negligence in this case.[8]  Plaintiffs were informed of DLA's actual authority to act for the Apple REITS and, therefore, could not reasonably rely on any statements DLA allegedly made that were allegedly limited or contradicted by the Offering Documents.  (*See* Apple REIT Memo. 22-23).

Nor is there an issue of apparent authority.  The Apple REITs discuss at length in their memorandum why DLA did not have apparent authority to make the representations allegedly giving rise to negligence.  (*See* Apple REIT Memo. 22-23).  In response, plaintiffs only point to four allegations, which they claim are enough to establish apparent authority:  that (1) DLA was the exclusive seller of the Apple REITs; (2) DLA and the Apple REITs integrated their presentation to the public; (3) the Apple REITs' websites link to DLA's website; and (4) DLA and the Apple REITs have a "long, interdependent history of selling and profiting" from the Apple REITs.  (Pl. Memo. 74).

These allegations are wholly insufficient to establish that DLA had authority to make the alleged misrepresentations.  As with actual authority, a *principal's* acts, not the agent's, must give rise to apparent authority.  *Star Energy Corp. v. RSM Top-Audit*, 2008 U.S. Dist. LEXIS 99825, *7 (S.D.N.Y. Nov. 26, 2008); *see* Apple REIT Memo. 22-25.  Plaintiffs' allegations, if

---

[8] Implied authority is merely a type of actual authority.  *Star Energy Corp. v. RSM Top-Audit*, 2008 U.S. Dist. LEXIS 99825, at *7 (S.D.N.Y. Nov. 26, 2008) (explaining that actual authority may be express or implied).  As with express actual authority, it is dependent on acts by the principal that reasonably give the appearance of authority.  *Id.*  (Implied actual authority "exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." (quotation omitted)).

anything, only confirm that DLA has authority to sell Apple REITs.  They do not establish that the *Apple REITs' actions* created the appearance that DLA had broad, unfettered authority to make the alleged misrepresentations.[9]

Plaintiffs cite *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1033 n.4 (2d Cir. 1993), for the proposition that information outside prospectuses may be material and justify reliance despite statements that no one is authorized to make statements or give information other than what is in the prospectus.  (Pl. Memo. 74).  But this proposition has no application to this case because plaintiffs have affirmatively represented that their federal claims are not based on any oral statements of DLA (*see* Pl. Memo. 23 n.6).

Plaintiffs also try but fail to allege that the Apple REIT Defendants are liable for DLA's acts on the basis of ratification.  (Pl. Memo. 73).  They acknowledge that ratification occurs only when one has "full knowledge of all the material facts" before sanctioning the unauthorized conduct, *Business Integration Services, Inc. v. AT&T Corp.*, 251 F.R.D. 121, 125 (S.D.N.Y. 2008) (quotation omitted), but do not sufficiently allege that defendants meet this standard.  As in the case of apparent authority, plaintiffs' allegations, if anything, only confirm that DLA has authority to sell Apple REITs.  This is inapposite to *Brown* where the court found ratification of an unauthorized disclosure based on detailed and specific facts in the record indicating that the principal "obviously has been aware [of the unauthorized disclosure] for a long time."  (*Id*. at 128).  Having failed to plead sufficient facts in support of ratification, plaintiffs cannot rely on this theory to avoid dismissal.  Finally, as discussed in the Apple REIT Indiv. Reply 8-9, the economic loss doctrine bars plaintiffs' claim in Count 9.

---

[9] Plaintiffs have also failed to show that any reliance on these representations was reasonable, as they are required to do.  *Adams v. Labaton, Sucharow & Rudoff, LLP*, 2009 U.S. Dist. LEXIS 35085, at *9-10 (S.D.N.Y. Mar. 30, 2009).

III.   **PLAINTIFFS' STATE SECURITIES CLAIMS SHOULD BE DISMISSED.**

Plaintiffs have failed to allege a misrepresentation or omission actionable under Florida or Connecticut state securities laws for the reasons discussed in Section I.  Moreover, the state securities claims should be dismissed for the additional reasons set forth below.

A.   **Connecticut Section 36b-5 Applies Only to "Investment Advisors."**

Section 36b-5 applies only to investment advisors and, therefore, is completely inapplicable to the Apple REIT defendants.[10]  Section 36b-5 "prohibits certain activities of investment advisors and persons who solicit advisory business on behalf of investment advisors." *Winford v. Advest, Inc.*, 2000 Conn. Super. LEXIS 3598, *10 (Conn. Super. Dec. 19, 2000). Remarkably, plaintiffs chastise the Apple REITs for their decision to rely on "only the language of the statute itself in support of th[eir] contention."  (Pl. Memo. 55).  The statute is titled "Prohibited activities of investment advisers and persons who solicit advisory business on behalf of investment advisers" and requires that plaintiffs plead that the Apple REITs "directly or indirectly receive[d] compensation or other remuneration for advising [Plaintiff Berger] as to the value of securities or their purchase or sale."  CONN. GEN. STAT. § 36b-5(a).  Plaintiffs have not and cannot do so.  In fact, there are *no* allegations that the Apple REITs engaged in investment advisory activities, that they solicited business on behalf of an investment advisor, or that they received any compensation for any advisory activities.  While plaintiffs point to the allegation that the Apple REITs "received money for shares" (Pl. Memo. 56 citing Am. Compl. ¶¶ 29-32), this allegation establishes at most that the Apple REITs sold *shares*, not advisory services, and is wholly insufficient to allege that the Apple REITs received compensation for providing

---

[10] The term "investment advisor" is defined in CUSA § 36b-3, in pertinent part, as follows: "'Investment adviser' means any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing or selling securities . . . ."  *See also Winford v. Advest, Inc.*, 2000 Conn. Super. LEXIS 3598, *9 (Conn. Super. Ct. Dec. 19, 2000).

investment advice as required by the statute.  (*Id.*)  For these reasons, Plaintiff Berger's Section 36b-5 claim should be dismissed.

> **B.    Plaintiff Murray Fails to Allege "Justifiable Reliance," a Required Element of a Section 517.211(2) Claim.**

Plaintiff Murray hangs his hat on a single case – *Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479 (S.D. Fla. 1996)[11] – for the proposition that pleading justifiable reliance is not required.  (Pl. Memo. 58).  The weight of authority, however, makes clear that plaintiffs must plead justifiable reliance as part of their § 517.301 claim.  *See Kashner Davidson Secs. Corp. v. Desrosiers*, 689 So. 2d 1106, 1107 (Fla. Ct. App. 1997) (requiring reliance as element of FSIPA claim); *First Union Discount Brokerage Servs., Inc. v. Milos*, 997 F.2d 835, 844-845 (11th Cir. 1993); *Anwar v. Fairfield Greenwich Ltd.*, 826 F. Supp. 2d 578, 585 (S.D.N.Y. 2011).  Plaintiffs have neither alleged "reliance," nor the heightened standard of "justifiable" reliance, and this failure is dispositive of Plaintiff's Florida securities claim.[12]  (*See* Apple REIT Memo. 29-30).

> **C.    It is Undisputed that Plaintiffs' State Securities Claims are Barred by the Statutes of Limitations.**

Plaintiffs do not dispute that Plaintiff Berger's CUSA claim and Plaintiff Murray's Florida securities claim for shares purchased in Apple REIT Eight and Apple REIT Nine before June 17, 2009 are time-barred as a result of the applicable two-year statutes of limitations.  *See* Apple REIT Memo. 32-33; *see also* CONN. GEN. STAT. § 36b-29(f); FLA. STAT. § 95.11. Because Plaintiffs do not dispute that these claims are time-barred, these claims should be dismissed.

---

[11] Plaintiffs cite a case from Florida's Supreme Court – *E.F. Hutton & Co., v. Rousseff*, 537 So. 2d 978, 981 (Fla. 1989) – in support of their argument, but the court did not address the element of justifiable reliance in that case.  (Pl. Memo. 59).

[12] Plaintiffs cite to *Jones v. Childers*, No. 88-85-CIV-T-22C, 1992 U.S. Dist. LEXIS 19430, *16, (M.D. Fla. June 26, 1992*), aff'd in part, rev'd in part on other grounds*, 18 F.3d 899 (11th Cir. 1994), but ignore the fact that the court in *Jones* suggested that failure to read private placement memoranda is evidence that reliance was *not* reasonable.  (*Id.* at *16).

## IV.   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS ARISING FROM APPLE REITS IN WHICH THEY DID NOT INVEST.

Plaintiffs urge this Court to rewrite the law of standing as understood up until now in the federal courts, and allow plaintiffs to assert claims against Apple REITs in which the plaintiffs did not invest.  (Pl. Memo. 75-76).  This violates fundamental principles of standing, as recognized even in cases cited by plaintiffs in other sections of their memorandum.  *See, e.g.,* *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.,* U.S. Dist. LEXIS 47512, *10 (S.D.N.Y. 2010) ("A lead plaintiff asserting Section 11 claims concerning mortgage-backed securities from an issuing trust lacks standing to sue on claims arising from trust offerings which he did not purchase."); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 169 (S.D.N.Y. 2009) (noting that a plaintiff bringing claims on the basis of the purchase or sale of securities must actually be a purchaser of the securities at issue to have standing); *In re Metro. Secs. Litig.*, 532 F. Supp. 2d 1260, 1280-81 (E.D. Wash. 2007) (same).

Plaintiffs cite two unpublished cases for this revolution in constitutional jurisprudence. The first case, *In re Dreyfus Aggressive Growth Mutual Fund Litigation*, 2000 U.S. Dist. LEXIS 13469, *8 (S.D.N.Y. Sept. 19, 2000), does not address standing, but instead deals with the typicality requirement of Fed. R. Civ. P. 23(b)(3).  Similarly, in *In re Dynex Capital, Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 96527, *9-10 (S.D.N.Y. Mar. 7, 2011), the court was addressing typicality for purposes of class certification, not constitutional requirements of standing. Plaintiffs also cite *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004), a case addressing the criteria for lead plaintiffs under the PSLRA.  (Pl. Memo. 75).

None of these cases stand for the proposition that the constitutional requirements for standing in the federal courts should be ignored in the instant case.  It is a wholly unremarkable position that each plaintiff must posses the claims they seek to assert against each defendant.

*See, e.g., Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp.*, 2012 U.S. Dist. LEXIS 24106, at \*15, 22, 67 (E.D.N.Y. Feb. 23, 2012) (holding that "each named plaintiff in a class [ ] must allege and show that [he or she] personally [has] been injured" because "stylizing a complaint as a class action adds nothing to the question of standing") (internal quotation marks omitted); *In re AIG Advisor Group Sec. Litig.*, 2007 U.S. Dist. LEXIS 30179, at \*10, 19 (E.D.N.Y. Apr. 25, 2007) (dismissing claims related to mutual funds in which the named plaintiffs had not invested).[13]

Accordingly, the following claims should be dismissed because they arise from Apple REITs in which plaintiffs never owned shares and, therefore, lack standing to assert:

(i)     Plaintiff Bendavid's claims against Apple REITs Six, Seven and Eight;

(ii)    Plaintiff Berger's claims as to Apple REITs Six, Seven and Ten;

(iii)   Plaintiff Shefsky's claims as to Apple REITs Six, Seven and Ten; and

(iv)    Plaintiff Murray's claims as to Apple REITs Six, Seven and Ten.

**V.     PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED.**

This Court should not grant plaintiffs' request for leave to amend because it is apparent from the face of the Complaint that the multiple deficiencies in the Complaint cannot be cured

---

[13] *See also In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006) ("With regard to the sixty-eight funds of which Plaintiffs own no shares, Plaintiffs do not have standing to assert any claims because Plaintiffs cannot satisfy the standing requirements."); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2005 U.S. Dist. LEXIS 24263, \*9 (S.D.N.Y. Oct. 19, 2005) (no standing unless plaintiff owns share in a particular fund); *In re Columbia Entities Litig.*, 2005 U.S. Dist. LEXIS 33439 (D. Mass. Nov. 30, 2005) (same); *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 169 (D. Mass. 2004) (same); *Plumbers Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 770 (1st Cir. 2011) ("Every court to address the issue in a mortgage-backed security class action has concluded that a plaintiff lacks standing under U.S. Const. art. III to represent the interests of investors in mortgage-backed securities offerings in which the named plaintiffs did not themselves buy.") (quoting *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1163 (C.D. Cal. 2010).

through any further amendment. *See Bd. of Trs. of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 882 (S.D.N.Y. 2011) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)") (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). Notably, plaintiffs do not identify how or in what manner leave to amend would cure the obvious deficiencies in their Complaint. *See Mechel OAO*, 811 F. Supp. 2d at 883 ("[i]n the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile.") (internal quotation omitted). No amendment can save plaintiffs from the facts of this case. Therefore, the Apple REITs respectfully request that plaintiffs' request for leave to amend be denied.

## CONCLUSION

For the reasons stated above, and in the Reply briefs of the Apple REIT Individual and Affiliate Defendants and the DLA Defendants, the Apple REIT Defendants respectfully request the Court dismiss all claims against them with prejudice, and deny Plaintiffs' Request for Leave to Amend.

Dated:  July 13, 2012                         Respectfully submitted,


                                   _____/s/_____
                                   Marshall Beil
                                   McGUIREWOODS LLP
                                   1345 Avenue of the Americas, 7th Floor
                                   New York, NY 10105-0106
                                   Telephone: (212) 548-2100

                                   Elizabeth F. Edwards
                                   McGUIREWOODS LLP
                                   One James Center
                                   901 East Cary St.
                                   Richmond, VA 23219-4030
                                   Telephone: (804) 775-4390

Charles Wm. McIntyre
McGUIREWOODS LLP
Washington Square
2001 K St. N.W. Suite 400
Washington, D.C. 20006-1040
Telephone: (202) 857-1742

*Attorneys for Defendants Apple REIT Six, Inc.,*
*Apple REIT Seven, Inc.,  Apple REIT Eight, Inc.,*
*Apple REIT Nine, Inc., and Apple REIT Ten, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2012, the foregoing document was served on the

following via e-mail:

Daniel C. Girard
Amanda M. Steiner
Christina C. Sharp
Janice S. Yi
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
dcg@girardgibbs.com
chc@girardgibbs.com

Jacob H. Zamansky
Edward H. Glenn, Jr.
Kevin D. Galbraith
**ZAMANSKY & ASSOCIATES, LLC**
50 Broadway, 32nd Floor
New York, NY 10004
jake@zamansky.com

*Lead plaintiffs' Counsel and*
*Interim Class Co-Counsel*

David P. Meyer
Matthew R. Wilson
**MEYER WILSON CO., LPA**
1320 Dublin Road, Suite 100
Columbus, OH 43215
dmeyer@meyerwilson.com

*Additional plaintiffs' Counsel*

Kenneth I. Schacter
Derek Care
**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, NY 10022-4689
kenneth.schacter@bingham.com
derek.care@bingham.com

Michael D. Blanchard
**BINGHAM McCUTCHEN LLP**
One State Street
Hartford, CT 06103-3178
michael.blanchard@bingham.com

*Attorneys for Defendants David Lerner*
*Associates, Inc. and David Lerner*

Gregory S. Bruch
Sandra M. Hanna
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC 20006
gbruch@willkie.com
shanna@willkie.com

*Attorneys for Defendants Bruce H. Matson,*
*Ronald A. Rosenfeld, and Lisa B. Kern*

__/s/ Elizabeth F. Edwards__
Elizabeth F. Edwards
McGUIREWOODS LLP
901 East Cary St.
Richmond, VA 23219-4030
eedwards@mcguirewoods.com