# BINGHAM

Kenneth I. Schacter
Direct Phone:  212.705.7487
Direct Fax:      212.702.3622
kenneth.schacter@bingham.com

September 14, 2012

**VIA ECF**

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East - Room N406
Brooklyn, New York 11201

**Re:   *In re Apple REITs Litigation*, No. 1:11-cv-02919 (KAM)(JO)**

Dear Judge Matsumoto:

We write on behalf of all Defendants to respond to Plaintiffs' September 7, 2012 letter ("Letter") regarding the Second Circuit's decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, --- F.3d ----, No. 11-2762-CV, 2012 WL 3854431 (2d Cir. Sept. 6, 2012).

In *NECA*, the Second Circuit held that the plaintiff had alleged cognizable losses in connection with its claims under the Securities Act of 1933 where it had alleged:  (i) substantial declines in the value of certificates and in the price that such certificates could be sold on a secondary market which resulted from (ii) "the revelation that borrowers on loans backing the Certificates were less creditworthy than the Offering Documents represented" (iii) which "affected the Certificates' 'value' immediately, because it increased the Certificates' credit risk profile."  *Id.* at *15.  On its face, *NECA* offers no assistance to Plaintiffs here because they (i) allege no loss; (ii) allege no "revelation" of facts contrary to the disclosures in the Apple REITs' offering documents; and (iii) allege no misstatements which even *could* affect the value of the REITs' underlying assets, by which value is determined.  Indeed, *NECA* and the arguments advanced in the Letter further demonstrate that the Complaint should be dismissed.

Plaintiffs first argue that *NECA* disproves "that statements in the offering documents about the value of the Apple REIT shares were subjective opinions 'as a matter of law' because the value of the shares cannot 'be ascertained with empirical certainty.'"  Letter at 1.[1]  This is a straw man.  As Defendants have

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689

T +1.212.705.7000
F +1.212.752.5378
bingham.com

---

[1]  Citing Memorandum of Law in Support of the DLA Defendants' Motion to Dismiss, dated April 18, 2012 (Dkt. 115-1) ("DLA Mem.") at 17-18; Reply in Support of the DLA Defendants' Motion to Dismiss, dated July 13, 2012 (Dkt. 118) ("DLA Reply Mem.") at 8-10.

Honorable Kiyo A. Matsumoto
September 14, 2012
Page 2

explained, Plaintiffs' contention that "it is possible to value the shares"[2] is "presumably as true as it is irrelevant." DLA Reply Mem. at 9.  The point argued in the motions to dismiss – to which Plaintiffs have presented no response and which *NECA* does not address – is different:  that the REITs' offering documents accurately disclosed that the $11 per share price "may not reflect the true value of the Units;" that "investors may be paying more for a Unit than the Unit is actually worth;" and that investors should not "assume that the per-Unit prices reflect the intrinsic or realizable value of the Units or otherwise reflect our value, earnings or other objective measures of worth." *See, e.g.*, DLA Mem. at 17.  Moreover, when an objective valuation methodology (*i.e.*, market price) is not present, then a plaintiff must allege that statements made about value were subjectively false and not believed by defendants to sustain a claim arising from an alleged misrepresentation of value.   Accordingly, there is no misrepresentation or omission claim arising from the $11 price, as Plaintiffs mistakenly contend. *Id.*

Plaintiffs next argue that *NECA* rebuts "defendants['] argu[ment] that … plaintiffs suffered no cognizable loss because plaintiffs received regular distributions." Letter at 1.[3]  Again, Plaintiffs address an argument that Defendants never made. Defendants do not argue that the payment of distributions by the REITs would preclude a finding that they have suffered a loss.  Rather, Defendants addressed *Plaintiffs' argument* that "they have alleged 'cognizable losses' *because* 'defendants pursued a policy of maintaining a steady 7% to 8% rate of distributions without regard to the ability of the REITs to fund the distributions from operating income." DLA Reply Mem. at 12 (quoting Opp. Mem. at 44-45) (emphasis added).  As explained in detail, Plaintiffs' claim is defeated because the REITs explicitly and repeatedly disclosed the manner in which distributions would be paid, and the sources from which they would be paid. *Id. NECA* does not disturb this bedrock principle requiring dismissal here but, instead, affirms it. *See* 2012 WL 3854431, at *15 (finding plaintiffs' loss allegations adequate where they alleged their losses were caused by "the revelation that borrowers on loans backing the Certificates were less creditworthy than the Offering Documents represented [which] affected the Certificates' 'value' immediately, because it increased the Certificates' credit risk profile").

---

[2]  Quoting Plaintiffs' Memorandum of Law In Opposition To Defendants' Motions to Dismiss the Consolidated Class Action Complaint, dated May 25, 2012 (Dkt. 116) ("Opp. Mem.") at 34.

[3]  Citing The Apple REITs' Memorandum of Law In Support of Their Motion to Dismiss the Consolidated Complaint, dated April 18, 2012 ("Apple REIT Mem.") (Dkt. 108) at 17; Reply Memorandum of Law In Support of The Apple REITs' Motion to Dismiss the Consolidated Complaint, dated July 13, 2012 ("Apple REIT Reply Mem.") (Dkt. 111) at 4, 6; DLA Reply Mem. at 12.

Honorable Kiyo A. Matsumoto
September 14, 2012
Page 3

Finally, Plaintiffs fault the Defendants for arguing that news of the FINRA complaint against DLA could not have caused Plaintiffs' hypothetical losses, citing *NECA* for the unremarkable proposition that "[t]he absence of an 'actual market price for [a security] at the time of suit' does not defeat an investor's plausible claim of *injury* from misleading statements contained in that security's offering documents." Letter at 3 (quoting *NECA*, 2012 WL 3854431, at *16 (alterations in original, emphasis added, citation omitted)). The *NECA* decision concerns whether a plaintiff has pled a cognizable loss, not whether the absence of loss causation is established by a pleading that points only to causes ***other than*** alleged misstatements, as is the case with the Complaint here. *See, e.g.*, Am. Compl. ¶ 119 (alleging that "the economy's impact on Apple REIT Eight"), ¶ 163 (alleging that "the value of the shares had been steadily eroded by … the impact of the economy on the hotel industry"). In any case, Defendants do not argue that the absence of a market price for the REIT units *per se* means that loss causation can never be alleged or proved. Rather Defendants have argued that, if there is any depreciation in value, that depreciation "will be the result of the value and performance of the underlying assets" and "[w]ithout allegations of misrepresentations that could somehow have caused those assets to depreciate (and there are none in the Complaint), there is no conceivable way Plaintiffs can establish loss causation." DLA Mem. at 26-27 (citing Am. Compl. ¶¶ 115-47); *see also* Apple REIT Mem. at 19; Apple REIT Reply Mem. at 6; DLA Reply Mem. at 11-14. *NECA* is distinguishable precisely because, there, the alleged misrepresentations concerned the underlying assets of the Certificates – "that borrowers on loans backing the Certificates were less creditworthy than the Offering Documents represented." *NECA*, 2012 WL 3854431, at *15. Here, there are no allegations of misrepresentations concerning the value of the assets underlying the REITs – in part because, at the time of the offerings, the REITs had not yet acquired any assets.

In sum, Plaintiffs' reliance on *NECA* is misplaced. The case does not help their cause but hurts it.

Respectfully,

Kenneth I. Schacter

cc:  Counsel of Record (via ECF)