UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

IN RE APPLE REITs LITIGATION                **MEMORANDUM & ORDER**

                                              11-CV-2919 (KAM)


----------------------------------X


**MATSUMOTO, United States District Judge:**

       Putative class plaintiffs Stanley and Debra Kronberg, Marvin Bendavid, Laura Berger, Barbara Shefsky, and William Murray ("Plaintiffs") commenced this Consolidated Class Action pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. § 77a *et seq.* ("PSLRA") and Federal Rule of Civil Procedure 23 on behalf of themselves and others similarly situated against defendants, alleging claims under the Securities Act of 1933 ("Securities Act"), specifically, 15 U.S.C. § 77k ("section 11"); 15 U.S.C. § 77l(a)(2) ("section 12(a)(2)"); and 15 U.S.C. § 77o ("section 15"); claims alleging common law breach of fiduciary duty, unjust enrichment, and negligence; the Connecticut Uniform Securities Act; and the Florida Securities Investor Protection Act. (*See generally* Amended Consolidated Class Action Complaint ("Compl."), ECF No. 82.)

# BACKGROUND[1]

## I. Procedural History

Plaintiffs filed the instant Complaint on February 17, 2012. Defendants Apple REIT Six, Inc., Apple REIT Seven, Inc., Apple REIT Eight, Inc., Apple REIT Nine, Inc., and Apple REIT Ten, Inc. (collectively, the "Apple REITs"); Glenn W. Bunting, Kent W. Colton, Michael S. Waters, Robert M. Wiley, Bruce H. Matson, Garnett Hill, Jr., Anthony Francis "Chip" Keating, Ronald A. Rosenfeld, David J. Adams, and Lisa B. Kern, Glade M. Knight, Bryan Peery, Apple Fund Management, LLC, Apple Suites Realty Group Inc., Apple Eight Advisors, Inc., Apple Nine Advisors, Inc., and Apple Ten Advisors, Inc., (collectively, "Apple Individuals & Affiliates") (all of the foregoing Apple-related defendants are referred to as "Apple Defendants"); and David Lerner and David Lerner Associates, Inc. ("DLA") (collectively, "DLA Defendants") (all defendants, collectively, "Defendants") moved to dismiss the Complaint on July 13, 2012. (*See* Mot. to Dismiss for Failure to State a Claim by Apple REITs, ECF No. 104; Mot. to Dismiss for Failure to State a Claim by Apple Affiliates, ECF No. 105; Mot. to Dismiss for Failure to State a Claim by DLA Defendants, ECF No. 115.)

---

[1] The court assumes familiarity of the backgrounds facts as set forth in its prior opinion in this case. *See In re Apple REITs Litigation*, No. 11-cv-2919, 2013 WL 1386202 (E.D.N.Y. April 3, 2013).

2

By Memorandum and Order dated April 3, 2013, this court granted defendants' motions to dismiss the Complaint in its entirety. *See In re Apple REITs Litig.*, No. 11-cv-2919, 2013 WL 1386202 (E.D.N.Y. Apr. 3, 2013). Plaintiffs appealed the court's April 3, 2013 order. By Summary Order dated April 23, 2014, the Second Circuit affirmed the court's decision to dismiss Plaintiffs' claims under section 11, section 12(a)(2), and section 15 of the Securities Act (Counts 1-5); the Connecticut Uniform Securities Act (Counts 10-12); and the Florida Securities Investor Protection Act (Count 13) on the grounds that Plaintiffs failed to identify any actionable misstatements or omissions. *See Berger v. Apple REIT Ten, Inc.,* 563 F. App'x. 81 (2d Cir. 2014). The Second Circuit also determined that this court's decision to dismiss Plaintiffs' common law unjust enrichment claims (Count 8) on the ground that the Plaintiffs' "rights to payment were based on the Subscription Agreements and Acknowledgement of Risk forms between the parties" was not challenged on appeal and, thus, was waived. *Id*. at 84 n.1. Finding that the Plaintiffs adequately pleaded a cognizable loss, the Second Circuit vacated the court's decision to dismiss Plaintiffs' claims alleging common law breach of fiduciary duty (Count 6) and aiding and abetting the alleged breach of fiduciary duty (Count 7) and negligence (Count 9), finding that the

plaintiffs adequately alleged a cognizable loss, and remanded for further proceedings. *Id*.

## II. Plaintiffs' Remaining Claims

The parties do not dispute that, pursuant to the Second Circuit's order, the following claims remain: (1) Count Six, alleging that that DLA Defendants breached their common law fiduciary duties (Compl. ¶¶ 232-36); (2) Count Seven, alleging that the Apple Defendants aided and abetted the DLA Defendants' breach of their fiduciary duties (Compl. ¶ 243)[2]; and Count Nine, alleging common law negligence against all Defendants. (Compl. ¶¶ 251-255.)

Presently before the court are two motions to dismiss by the DLA Defendants and the Apple Defendants. (*See* Mot. to Dismiss Remaining Claims by Apple Defendants ("Apple Defs.' Mot."), ECF No. 147; Mot. to Dismiss Remaining Claims by DLA Defendants ("DLA Defs.' Mot."), ECF No. 154.) For the reasons set forth below, Defendants' motions to dismiss plaintiffs' remaining claims are granted in their entirety.

---

[2] Plaintiffs previously stated that they "do not intend to assert claims against the Apple REITs or their directors, officers and affiliates for breach of fiduciary duty . . . " (ECF No. 116, Pl. Mem. of Law in Opp. filed July 13, 2012) and did not dispute Defendants' assertion that Plaintiffs abandoned these claims. (DLA Defs.' Mot. at 1; Apple Defs.' Mot. at 6.) Accordingly, the court finds that Plaintiffs have voluntarily withdrawn these claims and dismisses Plaintiffs' breach of fiduciary duty claims against the Apple REITs, and their directors, officers, and affiliates. *See Schwapp v. Town of Avon*, 118 F.3d 105, 112 (2d Cir. 1997) (appellant had abandoned claims not supported by any factual or legal arguments in his brief).

**DISCUSSION**

I.  **Standard for Rule 12(b)(6) Motion to Dismiss**

Rule 12(b)(6) provides for the dismissal of a cause of action if plaintiff's complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To determine whether a complaint states a plausible claim for relief, the Supreme Court has suggested a "'two-pronged approach.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). First, a court should begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* A claim is plausible "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The plausibility standard, however, does not require a showing of a "probability" of misconduct, but it does demand more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

A well-pleaded complaint may survive a motion to dismiss even where "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citation and internal quotation marks omitted). This is because the court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

In conducting such an assessment on a Rule 12(b)(6) motion to dismiss, courts must "'accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.'" *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). Further, courts may consider "the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in

6

bringing the suit." *Holmes v. Air Line Pilots Ass'n*, 745 F. Supp. 2d 176, 193 (E.D.N.Y. 2010) (internal quotations marks omitted).

Plaintiffs have stated that they do not assert fraud claims. (*See* Pls.' Mem. of Law in Opp. to Defs.' Mots. to Dismiss ("Pls.' Opp."), ECF No. 150.) Where, as in this case, a plaintiff's claims are not premised on allegations of fraud, (*see generally* Compl.), Rule 8(a) governs the complaint and "notice pleading supported by facially plausible factual allegations is all that is required--nothing more, nothing less." *Id.*

## II. Defendants' Motions to Dismiss

In addition to the parties' previous submissions, the court's April 3, 2013 decision and the Second Circuit's Summary Order dated April 23, 2014, the court has considered Defendants' motions to dismiss the remaining claims and Plaintiffs' opposition thereto and the accompanying exhibits. (*See* Decl. of Samuel E. Bonderoff in Supp. of Pls.' Opp. ("Bonderoff Decl."), ECF No. 151, Ex. A; DLA Defs.' Mot. Addendum A-1 to A-4.)

### A. Plaintiffs' Breach of Fiduciary Duty and Aiding and Abetting a Breach of Fiduciary Duty Claims

Plaintiffs allege that DLA Defendants owed plaintiffs a fiduciary duty arising from "the relationships between DLA and its customers and DLA's position and status as the underwriter and sole selling agent of Apple REIT securities, as a financial

7

and investment advisor to DLA's customers, and as a registered broker-dealer." (Compl. ¶ 233.) Plaintiffs allege that DLA Defendants used the following marketing tactics to solicit investors:

> DLA sold the Apple REITs through the internet, radio, cold calls, mailings, and open invitation seminars at senior centers, retirement communities, and membership clubs. David Lerner identifies himself as "Poppy" in commercials that pitch seminars about the Apple REITS. The seminars offer door prizes like umbrellas and flat-screen TVs. DLA financial advisors also often make personal visits to customers' homes.

(Compl. ¶ 85.) Plaintiffs also claim that "DLA's customers are individual retail investors, typically retirees, and all, or nearly all, of DLA's sales of the Apple REITs were 'solicited,' meaning that a DLA representative persuaded a DLA customer to buy the shares." (*Id*.) Plaintiffs allege that the "DLA Defendants had a fiduciary duty to deal fairly with Plaintiffs and class members and to communicate promptly to them all material facts they knew or should have known about the nature of the investments in the Apple REITs." (*Id*. at ¶ 254.) The DLA Defendants allegedly "breached the duties and obligations of ordinary care" by:

> offering investments in Apple REITs Six, Seven, Eight, Nine and Ten to DLA's customers without having conducted a reasonable due diligence investigation to understand the potential risks and rewards associated with investment in the Apple REITs; failing to conduct further inquiry when red flags were present; failing to ensure the Apple REITs were suitable investments; failing to disclose material information about the

8

>prior Apple REITs, including the source of their distributions and the value of their shares; not providing a full and fair disclosure of the risks and rewards associated with an investment in the Apple REITs; negligently making numerous false and misleading misrepresentations about the Apple REITs to Plaintiffs and class members about the $11 per share valuation, the expected distributions, the safety and conservative nature of the Apple REITs as an investment, and their true economic performance.

(Compl. ¶ 235.)

DLA Defendants move to dismiss Plaintiffs' claims for breach of fiduciary duty on the grounds that (1) brokers of nondiscretionary accounts do not owe any ongoing fiduciary duties to customers and (2) Plaintiffs' claims are predicated on alleged misrepresentations and omissions that have already been held non-actionable by this court and the Second Circuit. (*See generally* DLA Defs.' Mot. at 8-17.)

Ordinarily, brokers of nondiscretionary accounts do not owe ongoing fiduciary duties to their customers. *See, e.g.*, *De Kwiatkowski v. Bear, Stearns, & Co., Inc.*, 306 F.3d 1293, 1302 (2d Cir. 2002); *Indep. Order of Foresters v. Donaldson, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998). The Second Circuit has explained:

>It is uncontested that a broker ordinarily has no duty to monitor a nondiscretionary account, or to give advice to such a customer on an ongoing basis. The broker's duties ordinarily end after each transaction is done, and thus do not include a duty to offer unsolicited information, advice, or warnings concerning the customer's investments. A nondiscretionary customer by definition keeps control over the account

> and has full responsibility for trading decisions. On a
> transaction-by-transaction basis, the broker owes
> duties of diligence and competence in executing the
> client's trade orders, and is obliged to give honest
> and complete information when recommending a purchase
> or sale. The client may enjoy the broker's advice and
> recommendations with respect to a given trade, but has
> no legal claim on the broker's ongoing attention.

*De Kwiatkowski*, 306 F.3d at 1302.

Plaintiffs, however, contend that they have alleged sufficient facts to support their breach of fiduciary duty claims based on special circumstances. Under New York law[3], "[a] fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Krys v. Butt*, 486 F. App'x 153, 155 (2d Cir. 2012) (quoting *EBC I, Inc. v. Goldman Sachs & Co.*, 832 N.E.2d 26 (N.Y. 2005)). "Such a relationship, necessarily fact-specific, is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." *Id*. For a fiduciary relationship to exist, "a party must repose confidence in another and reasonably rely on the other's superior

---

[3] DLA Defendants argue, and Plaintiffs do not dispute, that the court should apply New York substantive law. (*See* DLA Defs.' Mot. at 7.) Given that DLA is a corporation organized under the laws of the state of New York with its principal place of business in New York, two of the named Plaintiffs reside in New York, and the facts supporting Plaintiffs' tort claims are alleged to have substantially occurred in New York, the court agrees that New York law governs the Plaintiffs' tort claims. *See Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 306 n.16 (S.D.N.Y. 1998) (finding that tort claim is governed by New York substantive law, because the action was brought in New York federal court by and against entities and individuals located in New York and based on facts alleged to have occurred in New York).

expert knowledge." *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 866 F. Supp. 2d 257, 270 (S.D.N.Y. 2012).

To overcome the general rule that a broker does not owe an investor a fiduciary duty with respect to a nondiscretionary account, the plaintiff must adequately allege "special circumstances that transformed the parties' business relationship to a fiduciary one." *Legend Autorama, Ltd. v. Audi of Am., Inc.*, 954 N.Y.S.2d 141, 144 (N.Y. App. Div. 2012). "The transformative 'special circumstances' recognized in the cases are circumstances that render the client dependent-a client who has impaired faculties, or one who has a closer than arms-length relationship with the broker, or one who is so lacking in sophistication that *de facto* control of the account is deemed to rest in the broker. The law thus imposes additional extra-contractual duties on brokers who can take unfair advantage of their customers' incapacity or simplicity." *De Kwiatkowski*, 306 F.3d at 1308.

"[I]n order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) (internal quotation and citation omitted). No fiduciary duty is owed where explicit contractual disclaimers of fiduciary

duty apply. *See, e.g.*, *Cooper v. Parsky*, 140 F.3d 433, 439 (2d Cir. 1998) (upholding disclaimer where contract stated "the Voters shall not be held by this Agreement to any specified standard of care on [*sic*] fiduciary responsibility"); *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 12-cv-7311, 2014 WL 1303133 (S.D.N.Y. Mar. 31, 2014) ("Simply put, effective disclaimers must explicitly reference fiduciary duties.")

As a threshold matter, the court has reviewed the Acknowledgement of Risk documents signed by each Plaintiff in connection with his or her investment in the Apple REITs and did not find any explicit disclaimers of fiduciary duty. (*See* ECF No. 117-6, Decl. of Michael D. Blanchard Exh. F.) Nor have the defendants identified any contractual disclaimer of a fiduciary duty. Consequently, the court proceeds to analyze whether plaintiffs have adequately alleged "special circumstances" to overcome the general rule that in a broker-client relationship involving a nondiscretionary account, the broker owes no fiduciary duty to the customer beyond the duty of consummating each individual transaction authorized by the customer. *See, e.g., De Kwiatkowski*, 306 F.3d at 1302.

Here, Plaintiffs make general allegations that the DLA Defendants used certain marketing techniques, including conducting seminars at senior centers and retirement communities, offering door prizes, and making personal visits to customers'

12

homes in order to solicit customers. (*See* Compl ¶ 85.) Yet, Plaintiffs fail to set forth, with particularity, any factual basis to plausibly allege that the named Plaintiffs shared a fiduciary relationship with DLA Defendants. *See Europacific Asset Mgmt. Corp. v. Tradescape Corp.*, No. 03 Civ. 4556, 2005 WL 497787, at *9 (S.D.N.Y. Mar. 2, 2005) ("[F]inding a breach of fiduciary duty requires finding that a fiduciary relationship existed *between the parties.*" (emphasis added)). The Complaint does not allege that the named Plaintiffs were so lacking in sophistication, suffering from impaired faculties, or were incapacitated, vulnerable, or in a close relationship with DLA, such that DLA had *de facto* control over their accounts. The Complaint also does not specify whether the named Plaintiffs attended DLA's seminars, whether DLA representatives visited Plaintiffs' homes, or whether Plaintiffs read DLA's advertisements and promotional materials. Even if Plaintiffs alleged that they attended DLA's seminars and read DLA's promotional materials, these allegations, alone, are insufficient to allege a fiduciary relationship. *See, e.g.*, *DeBlasio v. Merrill Lynch & Co.*, No. 07 Civ. 318, 2009 WL 2242605, at *30 (S.D.N.Y. July 27, 2009) ("[N]o reasonable investor would expect these vague and general advertisements created any sort of extra-contractual relationship extending beyond the terms specified in Plaintiffs' account agreements."); *Stewart v. J.P. Morgan Chase &*

*Co.*, No. 02 Civ. 1936, 2004 WL 1823902, at *12 (S.D.N.Y. Aug. 16, 2004) ("[T]he fact that the broker offers advice to the client or represents, as part of his sales pitch, that he is particularly well qualified to do so does not alter the limited scope of the broker's legally enforceable obligations.") (citing *De Kwiatkowski*, 306 F.3d at 1302-03)).

The two cases to which Plaintiffs cite to support their breach of fiduciary claim are easily distinguishable from the facts before this court. In *Anwar v. Fairfield Greenwich Ltd.*, 745 F. Supp. 2d 360, 376-77 (S.D.N.Y. 2010), the district court applied Florida law and found that the plaintiffs adequately alleged a breach of fiduciary claim against brokers when at least one plaintiff claimed that his account was discretionary, unlike the nondiscretionary accounts at issue here, and a high-ranking executive admitted that no diligence had been performed on the relevant fund, which invested in Bernard Madoff's Ponzi scheme. In *Scott v. Dime Savings Bank of New York, FSB*, 886 F. Supp. 1073, 1078 (S.D.N.Y. 1995), the district court, applying New York law and ruling on post-trial motions, found that there was sufficient evidence in the record to sustain a breach of fiduciary duty claim, because the creditor bank "encouraged the [plaintiffs] to borrow $100,000 when they only wanted to borrow $5,000." Here, Plaintiffs do not dispute that they had nondiscretionary accounts with DLA and do not allege any specific

facts suggesting that special circumstances existed that induced them to repose closer than arms-length trust in DLA.

Consequently, the court finds that, even accepting as true all well-pleaded allegations and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs fail to allege special circumstances creating a fiduciary relationship between the parties. A claim for aiding and abetting a breach of fiduciary duty must, as a matter of law, fail where no underlying breach of fiduciary duty claim lies. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006); *Schandler v. New York Life Ins. Co.*, No. 09 Civ. 10463, 2011 WL 1642574 (S.D.N.Y. Apr. 26, 2011). Therefore, Plaintiffs' claims against DLA Defendants for breach of fiduciary duty and Apple Defendants for aiding and abetting a breach of fiduciary duty are dismissed.

**B.  Claims Against All Defendants for Negligence**

Plaintiffs pleaded, in the alternative, that DLA Defendants negligently breached their duty of care when offering and selling the Apple REIT shares to Plaintiffs. Plaintiffs' Complaint alleges substantially the same duties for the negligence claim as was alleged for the breach of fiduciary duty claim, i.e., "[t]o perform a reasonable review and due diligence of the Apple REITs; [t]o conduct further inquiry if any red flags

15

were present . . . ." (Compl. ¶ 253.)[4]  Plaintiffs also alleged that the Apple REIT Defendants "are jointly and severally liable for the DLA Defendants' negligence because the DLA Defendants were agents of and acting in the scope of their agency with the Apple REIT Defendants when they offered and sold the Apple REITs to plaintiffs and Class members." (Compl. ¶ 255.)

"Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002). The court has already found that Plaintiffs have failed to allege sufficient facts plausible to sustain their claim that DLA Defendants owed Plaintiffs any fiduciary duties. Instead, the DLA Defendants, as a nondiscretionary broker, owe the ordinary duties of "diligence and competence in executing the client's trade orders, and [are] obliged to give honest and complete information when recommending a purchase or sale." *De Kwiatkowski*, 306 F.3d at 1302. Here, Plaintiffs have not alleged any breach of these duties of ordinary care. Consequently, the court dismisses all negligence claims against the defendants.

---

[4] Plaintiffs' negligence claim asserts an additional duty "[t]o comply with federal and state law, and applicable industry rules, regulations and regulatory notices issued by FINRA or its predecessor, NASD, including FINRA Rules 2010, 2020, 2710 and NASD 2210 and 2310." (Compl. ¶ 253.)

16

## III. Plaintiffs' Request for Leave to Amend

"'[I]t is within the sound discretion of the district court to grant or deny leave to amend.'" *Wilson v. Merrill Lynch & Co.*, 671 F.3d at 139 (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "[W]here amendment would be futile, denial of leave to amend is proper." *Id.* at 140 (quotation marks omitted). The Second Circuit has affirmed this court's previous denial of Plaintiffs' request for leave to amend. *Berger v. Apple REIT Ten, Inc.*, 563 F. App'x. at 85; *In re Apple REITs Litig.*, 2013 WL 1386202, at *22. Plaintiffs again request leave to amend on the ground that since the court's previous decision dismissing Plaintiffs' claims, the Securities and Exchange Commission ("SEC") announced the institution of cease-and-desist proceedings against certain Apple REITs and Glade Knight and Bryan Peery. (*See* Pls.' Opp. at 20-21).[5] Plaintiffs, however, have not explained how the SEC proceedings have any bearing on the remaining common law breach of fiduciary duty and negligence claims, nor have Plaintiffs explained why despite the prior opportunities to allege sufficient claims they have failed to do so. In particular, Plaintiffs have not explained how the SEC findings would cure Plaintiff's failure to

---

[5] In their request for leave to amend, Plaintiffs also raise, again, the settlement between DLA Defendants and FINRA. (*See* Pls.' Opp. at 21.) The court previously declined to take judicial notice of this settlement, *see In re Apple REITs Litigation*, 2013 WL 1386202, at *4, and also declines to consider it in its present decision for the same reasons.

17

adequately plead special circumstances from which a fiduciary relationship between DLA Defendants and Plaintiffs may arise. "In the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile." *Bd. of Trs. of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 883 (S.D.N.Y. 2011). Plaintiffs' request for leave to amend the complaint is therefore denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the remaining claims in their Amended Consolidated Class Action Complaint with prejudice are granted in their entirety. The Clerk of the Court is respectfully directed to enter judgment in favor of defendants Apple REIT Six, Inc., Apple REIT Seven, Inc., Apple REIT Eight, Inc., Apple REIT Nine, Inc., and Apple REIT Ten, Inc., Glenn W. Bunting, Kent W. Colton, Michael S. Waters, Robert M. Wiley, Bruce H. Matson, Garnett Hill, Jr., Anthony Francis "Chip" Keating, Ronald A. Rosenfeld, David J. Adams, and Lisa B. Kern, Glade M. Knight, Bryan Peery, Apple Fund Management, LLC, Apple Suites Realty Group Inc., Apple Eight Advisors, Inc., Apple Nine Advisors, Inc., Apple Ten Advisors, Inc., David Lerner, and David Lerner Associates, Inc., and to close the case.

**SO ORDERED.**

Dated: Brooklyn, New York
March 25, 2015

                                                                       _____ \_/s/_____
                                                                       KIYO A. MATSUMOTO
                                                                       United States District Judge